
**TRAVELERS**

June 6, 2011

305 EAST 24TH OWNERS CORP
C/O NARDONI REALTY, INC.
305 EAST 24TH STREET
NEW YORK, NY 10010

RE: Risk Management PLUS+ Online® from Travelers Bond & Financial Products
(www.rmplusonline.com)

Thank you for choosing Travelers Bond & Financial Products for your insurance needs. Travelers is a
market leader in providing management liability coverage that is in-synch with your community
association.  As your risks evolve, so do we through our ability to provide you with responsive risk
management services.

Travelers Bond & Financial Products is pleased to provide you with Risk Management PLUS+ Online, the
industry's most comprehensive program for mitigating your management liability exposures. The site
includes risk management tools for the following coverage related exposures:

- Employment Practices Liability
- Fiduciary Liability
- Non-Profit Directors & Officers Liability
- Crime
- Kidnap and Ransom
- Identity Fraud Expense Reimbursement

Risk Management PLUS+ Online is a flexible, comprehensive loss prevention program specifically
designed for Travelers Bond & Financial Products customers and is available to you at no additional cost.
Included in the site is a library of articles, checklists and training on relevant risk mitigation topics for the
management liability areas mentioned above.

Highlights of Risk Management PLUS+ Online services include:
- Web-based risk management training
- Weekly articles on current issues
- Model policies and forms for downloading or printing that cover major risks associated with the
  workplace

The attached Risk Management PLUS+ Online Registration Instructions contain easy, step-by-step
instructions to register for this valuable tool. For more information, call 1-888-712-7667 and ask for your
Risk Management PLUS+ Online representative. It's that simple.

We strongly encourage you to take full advantage of this program. Once again, thank you for choosing
Travelers Bond & Financial Products.

KDRM-LTR1 (06/08)

1

Instructions for Registration & Orientation to Risk Management PLUS+ Online®

*Registration for Site Administrators:*
The Site Administrator is the person in your organization who will oversee Risk Management PLUS+ Online for the organization. The Site Administrator is typically a person who leads human resources and/or financial functions or is responsible for legal matters pertaining to personnel. The Site Administrator may add other Site Administrators later to assist with their responsibilities. To register:

1. Go to www.rmplusonline.com.
2. In the Sign-In box, click **Register**.
3. Enter the password/passcode: TRVP140000  (Please note there are 4 letters followed by 6 numbers in the code)
4. Fill in the Registration Information and click **Submit**.
5. Your organization is registered, and you are registered as Site Administrator.

*Learning to Navigate the Site:*
1. Go to www.rmplusonline.com. On each page, you will see a box outlined in blue that contains the instructions for use of that page.
2. If you have any questions, just click on **Contact Us** on the front page. Enter your question in the form provided, and the System Administrator will get back to you quickly with the answer.
3. You can also schedule a live walk-through of the site by sending a request for a walk-through via the contact link on the front page.



KDRM-LTR1 (06/08)

2


**TRAVELERS**

Stacy Smith
Kevin Davis Insurance Services
P.O. Box 55012 - CA License # 0C97532
LOS ANGELES. CA 90055
Phone:(213) 833-6195
Fax:(213) 626-1060
Email:SSMITH20@Travelers.com

June 6. 2011

PHIL BERTRAND

WELLS FARGO INS SVCS USA (0PY693)
330 MADISON AVE 7TH FL
NEW YORK, NY 10017

**This is an Agency Billed Policy.**

This is the  Renewal for:

> **305 EAST 24TH OWNERS CORP**
> **C/O NARDONI REALTY, INC.**
> **305 EAST 24TH STREET**
> **NEW YORK, NY 10010**

Product Type: D&O - HOA/Condo
Policy Number: 104938605
Total Policy Premium: $5,712.00

Policy Period: June 14, 2011    to   June 14, 2012
Billing Period: June 14, 2011    to   June 14, 2012
Trans Effective Date: June 14, 2011
Commission-Percentage: 12.5%
Special Commission: $0.00

Countersignature Commission: $0.00
Countersignature Rate: 0%

| Coverage | Liability | Deductible | Year 1 | Premium Years Year 2 | Year 3 |
|---|---|---|---|---|---|
| D&O - HOA/Condo | $1,000,000 | $5,000 | $5,712.00 | N/A | N/A |

|  |  | Year 1 | Year 2 | Year 3 |
|---|---|---|---|---|
| Surcharge: | | $0.00 | $0.00 | $0.00 |
| Tax: | | $0.00 | $0.00 | $0.00 |
| **Combined Premium:** | | $5,712.00 | $0.00 | $0.00 |

Comments:
  Thank you for placing your business with us.

PE-004 (1-98)

# POLICY DISCLOSURE NOTICE -
# TERRORISM RISK INSURANCE ACT OF 2002

On December 26, 2007, the President of the United States signed into law amendments to the Terrorism Risk Insurance Act of 2002 (the "Act"), which, among other things, extend the Act and expand its scope.  The Act establishes a program under which the Federal Government may partially reimburse "Insured Losses" (as defined in the Act) caused by "acts of terrorism".  An "act of terrorism" is defined in Section 102(l) of the Act to mean any act that is certified by the Secretary of the Treasury - in concurrence with the Secretary of State and the Attorney General of the United States - to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States Mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The Federal Government's share of compensation for Insured Losses is 85% of the amount of Insured Losses in excess of each Insurer's statutorily established deductible, subject to the "Program Trigger", (as defined in the Act).  In no event, however, will the Federal Government or any Insurer be required to pay any portion of the amount of aggregate Insured Losses occurring in any one year that exceeds $100,000,000,000, provided that such Insurer has met its deductible.  If aggregate Insured Losses exceed $100,000,000,000 in any one year, your coverage may therefore be reduced.

Please note that no separate additional premium charge has been made for the terrorism coverage required by the Act.  The premium charge that is allocable to such coverage is inseparable from and imbedded in your overall premium, and does not include any charge for the portion of losses covered by the Federal Government under the Act.  The charge is no more than one percent of your premium.

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **104938605**

ILT-1018 Rev. 01-08  Printed in U.S.A.

Page 1 of 1

©2008 The Travelers Companies, Inc. All Rights Reserved

 **TRAVELERS**

**NON-PROFIT MANAGEMENT AND ORGANIZATION LIABILITY INSURANCE POLICY**

**DECLARATIONS**        **POLICY NO. 104938605**

Travelers Casualty and Surety Company of America
Hartford, CT 06183
(Herein, the "Insurer")

**THIS IS A CLAIMS MADE POLICY WITH DEFENSE COSTS INCLUDED IN THE LIMIT OF LIABILITY.
PLEASE READ THE ENTIRE POLICY CAREFULLY.**

NOTICE: THIS IS A CLAIMS-MADE POLICY. IF THE POLICY CONTAINS A RETROACTIVE DATE, THEN THE POLICY PROVIDES NO COVERAGE FOR CLAIMS FOR ANY "WRONGFUL ACT" COMMITTED PRIOR TO THE INCEPTION DATE OR THE RETRO ACTIVE DATE. THIS POLICY APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE "INSUREDS" DURING THE "POLICY PERIOD" OR ANY APPLICABLE "DISCOVERY PERIOD" AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED AS "DEFENSE COSTS." ANY "DEFENSE COSTS" THAT ARE INCURRED SHALL BE APPLIED AGAINST THE APPLICABLE RETENTION. THE INSURER SHALL HAVE THE RIGHT AND DUTY TO DEFEND ANY CLAIM AGAINST THE INSUREDS UNDER THIS POLICY.

COVERAGE FOR THE POLICY CEASES UPON THE POLICY TERMINATION DATE EXCEPT FOR THE AUTOMATIC DISCOVERY PERIOD, UNLESS AN OPTIONAL DISCOVERY PERIOD IS PURCHASED. THE OPTIONAL DISCOVERY PERIOD, INCLUDING THE AUTOMATIC DISCOVERY PERIOD, IS LIMITED TO THREE YEARS FROM THE POLICY TERMINATION DATE. POTENTIAL COVERAGE GAPS MAY ARISE UPON EXPIRATION OF THE OPTIONAL DISCOVERY PERIOD. IN GENERAL, THE NATURE OF CLAIMS-MADE COVERAGE IS SUCH THAT, DURING THE FIRST SEVERAL YEARS OF THE CLAIMS-MADE RELATIONSHIP, CLAIMS-MADE RATES ARE GENERALLY LOWER THAN OCCURRENCE RATES (ASSUMING THAT COVERAGE ON AN OCCURRENCE BASIS IS AVAILABLE FOR THE INSURANCE IN QUESTION), AND THE INSURED COMPANY MAY EXPECT SUBSTANTIAL ANNUAL PREMIUM INCREASES, INDEPENDENT OF OVERALL RATE LEVEL INCREASES, UNTIL THE CLAIMS-MADE RELATIONSHIP REACHES MATURITY.

**ITEM 1.**      **PARENT ORGANIZATION'S NAME and PRINCIPAL ADDRESS:**

         305 EAST 24TH OWNERS CORP
         C/O NARDONI REALTY, INC.
         305 EAST 24TH STREET
         NEW YORK, NY 10010

**ITEM 2.**      **POLICY PERIOD:**

       (a) From June 14, 2011        (b) To June 14, 2012      at 12:01 a.m. Local Time both dates at the Principal Address stated in ITEM 1.

**ITEM 3.**      **LIMIT OF LIABILITY (Inclusive of Defense Costs):**

       $1,000,000.00 maximum aggregate Limit of Liability for all Claims first made in the Policy Period.

**ITEM 4.**      **RETENTION:**

       (a) $100 each of the Insured Person, each Claim for Non-Indemnified Loss; not to exceed
       (b) $1,000 in the aggregate, each Claim for Non-Indemnified Loss.
       (c)         $5,000.00   each Claim for all Indemnified Loss.

**ITEM 5.**      **INSURED PERCENTAGE:**

       (a) 99.90% of Non-Indemnified and Indemnified Loss; the remaining .10 % of Non-Indemnified and Indemnified Loss shall be uninsured.

**ITEM 6.**      **PREMIUM:**

       $5,712.00 prepaid premium for the Policy Period.

**ITEM 7.**      **PREMIUM FOR DISCOVERY PERIOD:** $7,140.00

CIRI 72000 NY (06/98)        Page 1 of 2

**ITEM 8.**     <u>LENGTH OF DISCOVERY PERIOD:</u>     3 years.

**ITEM 9.**     NOTICE REQUIRED TO BE GIVEN TO THE INSURER SHALL BE ADDRESSED To:

*Notice of Claim or Wrongful Acts:*        *All Other Notices:*

Travelers Casualty and Surety Company of America    Travelers Casualty and Surety Company of America
One Tower Square, 2S2                     Commercial Risk
Hartford, CT 06183                       One Tower Square, 3PB
                                           Hartford, CT 06183

**ITEM 10.**     <u>PENDING AND PRIOR LITIGATION DATE:</u> June 14, 2007

**ITEM 11.**     <u>ENDORSEMENTS ATTACHED AT ISSUANCE:</u>

ILT-1018 01-08, 73037 07-02, ILT-1021 10-04, 73040 04-02, ILT-1070 03-09, ILT-1067 01-08, 70072NY 02-02, 70007 02-02, 70004NY 03-04, 70064NY 10-00, 70008 12-02, 72047 08-96

These Declarations, the completed signed Application and their attachments and any materials submitted therewith, and Policy form 72001 NY (06/98) with Endorsements shall constitute the contract among the Insurer and the Insureds ("Policy").



Countersigned By (if required)

CIRI 72000 NY (06/98)                                        Page 2 of 2

**Travelers Casualty and Surety Company of America**
**Hartford. CT 06183**
(Herein, the "Insurer")

THIS IS A CLAIMS MADE AND REPORTED POLICY
WITH DEFENSE COSTS INCLUDED IN THE LIMIT OF LIABILITY.
PLEASE READ THE ENTIRE POLICY CAREFULLY.

NON-PROFIT MANAGEMENT AND ORGANIZATION LIABILITY INSURANCE POLICY
**NEW YORK RENEWAL CERTIFICATE**

POLICY NO. **104938605**

NOTICE:  THIS IS A CLAIMS-MADE POLICY.  IF THE POLICY CONTAINS A RETROACTIVE DATE, THEN THE POLICY PROVIDES NO COVERAGE FOR CLAIMS FOR ANY "WRONGFUL ACT" COMMITTED PRIOR TO THE INCEPTION DATE OR THE RETRO ACTIVE DATE.  THIS POLICY APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE "INSUREDS" DURING THE "POLICY PERIOD" OR ANY APPLICABLE "DISCOVERY PERIOD" AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN.  THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED AS "DEFENSE COSTS."  ANY "DEFENSE COSTS" THAT ARE INCURRED SHALL BE APPLIED AGAINST THE APPLICABLE RETENTION.  THE INSURER SHALL HAVE THE RIGHT AND DUTY TO DEFEND ANY CLAIM AGAINST THE INSUREDS UNDER THIS POLICY.

COVERAGE FOR THE POLICY CEASES UPON THE POLICY TERMINATION DATE EXCEPT FOR THE AUTOMATIC DISCOVERY PERIOD, UNLESS AN OPTIONAL DISCOVERY PERIOD IS PURCHASED.  THE OPTIONAL DISCOVERY PERIOD, INCLUDING THE AUTOMATIC DISCOVERY PERIOD, IS LIMITED TO THREE YEARS FROM THE POLICY TERMINATION DATE.  POTENTIAL COVERAGE GAPS MAY ARISE UPON EXPIRATION OF THE OPTIONAL DISCOVERY PERIOD.  IN GENERAL, THE NATURE OF CLAIMS-MADE COVERAGE IS SUCH THAT, DURING THE FIRST SEVERAL YEARS OF THE CLAIMS-MADE RELATIONSHIP, CLAIMS-MADE RATES ARE GENERALLY LOWER THAN OCCURRENCE RATES (ASSUMING THAT COVERAGE ON AN OCCURRENCE BASIS IS AVAILABLE FOR THE INSURANCE IN QUESTION), AND THE INSURED COMPANY MAY EXPECT SUBSTANTIAL ANNUAL PREMIUM INCREASES, INDEPENDENT OF OVERALL RATE LEVEL INCREASES, UNTIL THE CLAIMS-MADE RELATIONSHIP REACHES MATURITY.

ITEM 1.  **INSURED ORGANIZATION'S NAME and PRINCIPAL ADDRESS:**
305 EAST 24TH OWNERS CORP
C/O NARDONI REALTY, INC.
305 EAST 24TH STREET
NEW YORK, NY 10010

ITEM 2.  **POLICY PERIOD:**

(a) From June 14, 2011        (b) To June 14, 2012        at 12:01 a.m.
Local Time both dates at the Principal Address stated in ITEM 1

ITEM 3.  **PREMIUM:** $5,712.00        prepaid premium for the **Policy Period.**

ITEM 4.  **PREMIUM FOR DISCOVERY PERIOD:** $7,140.00

ITEM 5.  **ENDORSEMENTS ATTACHED TO THIS POLICY AT RENEWAL:**
ILT-1018 01-08, 73037 07-02, ILT-1021 10-04, 73040 04-02, ILT-1070 03-09, ILT-1067 01-08, 70072NY 02-02, 70007 02-02, 70004NY 03-04, 70064NY 10-00, 70008 12-02, 72047 08-96

In consideration of the stated renewal premium, the policy is renewed for the **Policy Period** indicated.

CIRI 70035 NY (08/98)

**TRAVELERS**

**DIRECTORS & OFFICERS NON-PROFIT MANAGEMENT AND ORGANIZATION LIABILITY INSURANCE POLICY**

Travelers Casualty and Surety Company of America
Hartford. CT 06183
(Herein, the "Insurer")

**THIS IS A CLAIMS MADE POLICY WITH DEFENSE COSTS INCLUDED IN THE LIMIT OF LIABILITY.  ANY "DEFENSE COSTS" THAT ARE INCURRED SHALL BE APPLIED AGAINST THE APPLICABLE RETENTION.
PLEASE READ THE ENTIRE POLICY CAREFULLY.**

In consideration of the payment of the premium and in reliance on all statements made and information furnished to the Insurer, including the statements made in the Application and its attachments and any materials submitted therewith, all of which are made a part hereof, the Insurer and the Insureds agree as follows:

## I. INSURING AGREEMENTS

### Liability Coverage

A.  The Insurer will pay on behalf of the Insureds Loss up to the available maximum aggregate Limit of Liability set forth in Item 3 of the Declarations which is incurred by the Insureds as the result of any Claim first made against the Insureds during the Policy Period or any applicable Discovery Period for a Wrongful Act.

### Defense Coverage

B.  The Insurer shall have the right and duty to defend any Claim covered by this Policy, even if any of the allegations are groundless, false or fraudulent.  The Insured shall have the option to select the defense attorney, or to consent to the Insurer's choices of defense attorney, which consent shall not be unreasonably withheld.  The Insurer's duty to defend shall cease upon exhaustion of the Limit of Liability set forth in Item 3 of the Declarations.

The Insureds agree to provide the Insurer with all information, assistance and cooperation which the Insurer reasonably requests and agree that in the event of a Claim the Insureds will do nothing that may prejudice the Insurer's position or its potential or actual rights of recovery.

The Insureds agree not to settle any Claim, incur any Defense Costs or otherwise assume any contractual obligation or admit any liability with respect to any Claim without the Insurer's written consent, which shall not be unreasonably withheld.  The Insurer shall not be liable for any settlement, Defense Costs, assumed obligation or admission to which it has not consented.

The Insurer may, with the written consent of the Insureds, which consent shall not be unreasonably withheld, make any settlement of a Claim it deems expedient.  If the Insureds unreasonably withhold consent to such settlement, the Insurer's liability for all Loss on account of such Claim shall not exceed the amount for which the Insurer could have settled such Claim plus Defense Costs accrued as of the date such settlement was proposed in writing by the Insurer.

1.  **Transfer of Duties When A Limit of Insurance Is Used Up**

   1.  If the Insurer concludes that, based on Claims or suits which have been reported to the Insurer and to which this insurance may apply, the Non-Profit Management and Organization Liability Insurance Policy limit is likely to be used up in the payment of judgments, settlements or Defense Costs (if applicable), the Insurer will notify the first Named Insured, in writing, to that effect.

   2.  When a limit of insurance described in paragraph 1 above has actually been used up in the payment of judgments, settlements or defense expenses (if applicable):

      (a)    The Insurer will notify the first Named Insured, in writing, as soon as practicable, that:

         i.   Such a limit has actually been used up; and
         ii.  The Insurer's duty to defend suits seeking damages subject to that limit has also ended.

      (b)    The Insurer will initiate, and cooperate in, the transfer of control, to any appropriate Insured, of all Claims and suits seeking damages

CIRI 72001 NY (06/98)                              Page 1 of 10

which are subject to that limit and which are reported to the Insurer before that limit is used up. That Insured must cooperate in the transfer of control of said Claims and suits.

The Insurer agrees to take such steps, as the Insurer deems appropriate, to avoid a default in, or continue the defense of, such suits until such transfer is completed, provided the appropriate Insured is cooperating in completing such transfer.

The Insurer will take no action what so-ever with respect to any Claim or suit seeking damages that would have been subject to that limit, had it not been used up, if the Claim or suit is reported to the Insurer    after that limit of insurance has been used up.

(c)   The first Named Insured, and any other Insured involved in a suit seeking damages subject to that limit, must arrange for the defense of such suits within such time period as agreed to between the appropriate Insured and the Insurer. Absent any such agreement, arrangements for the defense of such suit must be made as soon as practicable.

3.    The first Named Insured will reimburse the Insurer for expenses the Insurer incurs in taking those steps the Insurer deems appropriate in accordance with 2(b) above.

The duty of the first Named Insured to reimburse the Insurer will begin on:

(a) The date on which the applicable limit of insurance is used up, if the Insurer sent notice in accordance with paragraph 1 above; or

(b) The date on which the Insurer sent notice in accordance with paragraph 2(a) above, if the Insurer did not send notice in accordance with paragraph 1 above.

4.    The exhaustion of any limit of insurance by the payments of judgments, settlements or Defense Costs (if applicable), and the resulting end of our duty to defend, will not be affected by our failure to comply with any of the provisions of this condition.

## II. DEFINITIONS

A.   Application means all signed, written applications including any attachments thereto and materials submitted therewith, for this Policy and for any Policy in an uninterrupted series of policies issued by the Insurer of which this Policy is a renewal or replacement, all of which shall be deemed attached hereto and incorporated herein.

B.   Claim means:

1)   a written demand for monetary damages;

2)   a civil proceeding commenced by the service of complaint or similar pleading.

C.   Defense Costs means that part of Loss consisting of reasonable costs, charges and expenses (including but not limited to attorney fees) incurred in defending or investigating Claims, including appeals therefrom. Defense Costs does not include salaries, wages, overhead or benefit expenses of any Insured Person.

D.   Discovery Period means that period described in Section III(C)(1) of this Policy and Item 8 of the Declarations.

E.   Financial Insolvency means the status of the Insured Organization as a result of the appointment of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to control, supervise, manage or liquidate the Insured Organization, or the Insured Organization becoming a debtor in possession.

F.   Indemnified Loss means (1) Loss which the Insured Organization becomes legally obligated to pay as the result of Claims made against the Insured Organization, and (2) Loss for which the Insured Organization grants indemnification to any Insured Person.

G.   Insured(s) means the Insured Organization and the Insured Persons.

H.   Insured Organization means the Parent Organization and its Subsidiaries.

I.   Insured Persons means any persons who were, now are, or shall become:  (1) duly elected or appointed directors, trustees or officers of any Insured Organization; or (2) employees, members of duly constituted committees or volunteers of any Insured Organization that is a non-profit entity.

J.   Loss means the total amount excess of the applicable retention which any Insured becomes legally obligated to pay as the result of all Claims first made against any Insured during the Policy Period for Wrongful Acts including, but not

CIRI 72001 NY (06/98)                    Page 2 of 10

limited to, damages, judgments, settlements and Defense Costs. Loss does not include (1) punitive or exemplary damages, (2) the multiple portion of any multiple damage award, (3) criminal or civil fines or penalties imposed by law, (4) taxes, (5) any amount not indemnified by the Insured Organization for which the Insured is absolved from payment by reason of any covenant, agreement or court order, and (6) matters uninsurable under the law pursuant to which this Policy is construed.

K.  Non-Indemnified Loss means all Loss other than Indemnified Loss.

L.  Parent Organization means the organization designated in Item 1 of the Declarations.

M.  Policy Inception Date means the date stated in Item 2(a) of the Declarations.

N.  Policy Termination Date means the date stated in Item 2(b) of the Declarations or the date of any cancellation or non-renewal of this Policy, whichever is earlier.

O.  Policy Period means the period between the Policy Inception Date and the Policy Termination Date.

P.  Pollutants means any substance located anywhere in the world exhibiting any hazardous characteristics as defined by or identified on a list of hazardous substances issued by the United States Environmental Protection Agency or a state, county, municipality or locality counterpart thereof. Such substances shall include, but not be limited to, solids, liquids, gaseous or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials. Pollutants shall also mean any other air emissions, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products, electric or magnetic or electromagnetic fields and any noise.

Q.  Public Entity shall mean a Public Entity as defined in Section 107(a)(51) of the New York Insurance Law.

R.  Related Wrongful Acts means Wrongful Acts that arise out of, are based on, relate to or are in consequence of, the same facts, circumstances or situations.

S.  Subsidiary means:

1)  any non-profit entity with respect to which the Insured Organizations, directly or indirectly, in any combination, had on or prior to the Policy Inception Date the ability to control or direct its managerial decisions or to select a majority of its trustees or directors, whether through operation of law or by reason of membership, securities ownership, agreement, charter, certificate of incorporation, or by-laws;

2)  any non-profit entity with respect to which the Insured Organizations, directly or indirectly, in any combination, acquires by purchase, creation or

otherwise during the Policy Period the ability to control or direct its managerial decisions, or to select a majority of its trustees or directors, whether through operation of law or by reason of membership, securities ownership, agreement, charter, certificate of incorporation, or by-laws.

If the annual revenues for the most recent fiscal year of any non-profit entity described in paragraph (2) above exceed 20% of the consolidated revenues for the most recent fiscal year of the Parent Organization and its Subsidiaries, the Parent Organization shall give written notice of such acquisition to the Insurer as soon as practicable, but in no event later than ninety (90) days after the effective date of such acquisition, together with such information as the Insurer may require. This Policy shall not afford any coverage with respect to such non-profit entity and its Insured Persons following such ninety (90) day period unless (a) the Insurer in its sole discretion agrees by endorsement to this Policy to afford such coverage, and (b) the Insureds pay any additional premium and accept any special Policy terms and conditions required by the Insurer.

T.  Wrongful Act means any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed or attempted, or allegedly committed or attempted, by the Insured Organization or by one or more Insured Persons, individually or collectively, in their respective capacities as such, including but not limited to any Wrongful Employment Practices.

U.  Wrongful Employment Practices means any actual or alleged: (1) wrongful dismissal, discharge or termination of employment; (2) employment related misrepresentation; (3) violation of employment laws; (4) sexual or workplace harassment of any kind; (5) failure to provide adequate workplace or employment policies and

procedures; (6) wrongful failure to employ or promote; (7) wrongful discipline; (8) wrongful deprivation of career opportunity including a wrongful failure to hire or promote; (9) failure to grant tenure; (10) negligent employment evaluation; and/or (11) employment discrimination, however, employment discrimination shall include only such acts or allegations based upon disparate impact or vicarious liability. Employment discrimination does not include disparate treatment discrimination of any kind or intentional sexual or other harassment in the work place that is alleged or committed in fact.

### III. EXTENSIONS

A. **ESTATES, HEIRS, LEGAL REPRESENTATIVES, ETC.**

In the event of the death, incapacity or bankruptcy of any Insured Person, any Claim against his or her estate, heirs, legal representatives or assigns based on actual or alleged Wrongful Acts of such Insured Person shall be deemed to be a Claim against such Insured Person for the purposes of this Policy.

B. **MARITAL ESTATE**

Subject otherwise to the terms hereof, this Policy shall cover Loss arising from any Claim made against the lawful spouse (whether such status is derived by reason of statutory, common or other law of any applicable jurisdiction in the world) of an Insured Person for Claims arising solely out of his or her capacity as the spouse of an Insured Person, including such Claims that seek damages recoverable from marital community property, property jointly held by the Insured Person and the spouse, or property transferred from the Insured Person to the spouse; provided, however, that this extension shall not afford coverage for any Claim for any actual or alleged Wrongful Act of the spouse. All terms, conditions and other provisions of this Policy, inclusive of any provision relative to the applicable retention, which would be applicable to Loss incurred by the Insured Person in such Claim shall also apply to Loss incurred by the spouse in such Claim.

C. **DISCOVERY PERIOD**

1.   If (a) the Insurer or the Parent Organization cancels this Policy pursuant to Section V (F) of this Policy, or (b) the Insurer refuses to renew this Policy, or (c) the Insurer offers to renew this Policy on terms that involve a decrease in the Limits of Liability, reduction of coverage, increase in the retention amount, new exclusion, or any other change in coverage less favorable to the Parent Organization (hereafter "Reduction of Coverage Renewal"), then the Insureds shall have the right to an Automatic Discovery Period or an Optional Discovery Period as follows:

   a.   Automatic Discovery Period

      i.      There shall be an extension of the coverage granted by this Policy for any Claim first made against any Insureds during the period of sixty (60)

days, ninety (90) days if the Parent Organization is a Public Entity after the effective date of such cancellation, non-renewal or "Reduction of Coverage" Renewal, herein called the Automatic Discovery Period, but only with respect to any actual or alleged Wrongful Act committed or allegedly committed before the effective date of such cancellation, non-renewal or "Reduction of Coverage" Renewal and otherwise covered by this Policy.

      ii.     The Insurer must advise the Parent Organization in writing of the Automatic Discovery Period, the availability of, the premium for and the importance of purchasing the Optional Discovery Period. This notice must be sent within thirty (30) days after such cancellation, non-renewal or "Reduction of Coverage" Renewal.

   b.   Optional Discovery Period

The Parent Organization shall have the right, upon payment of the required additional premium shown in Item 7 of the Declarations, to an extension of the coverage granted by this Policy in respect of any Claim which is first made against the Insureds during the period of three (3) years after the effective date of such cancellation, non-renewal or "Reduction of Coverage" Renewal, herein called the Optional Discovery Period, but only in respect of any Wrongful Act committed or allegedly committed before the effective date of such cancellation, non-renewal or "Reduction of Coverage" Renewal and otherwise covered by this Policy.

This right shall terminate, however, unless written notice of such election together with payment of the required additional premium due is received by the Insurer not

CIRI 72001 NY (06/98)                         Page 4 of 10

later than sixty (60) days after the effective date of cancellation, non-renewal or "Reduction of Coverage" Renewal, or thirty (30) days from the date of mailing or delivery of the advice required by (a)(ii) of this section.

Upon such cancellation, non-renewal or "Reduction of Coverage" Renewal, any return premium due the Parent Organization shall be applied to the premium for the Optional Discovery Period if the Parent Organization elects to purchase such coverage. Where premium is due to the Insurer, any payment received by the Insurer from the Parent Organization as payment for the Optional Discovery Period shall be first applied to any premium due for the Policy.

If the Policy is cancelled by the Insurer due to non-payment of premium on the part of the Insureds, the Insurer shall not be required to provide a premium quotation unless requested by the Insureds.

In the event the Parent Organization is placed in liquidation or bankruptcy or permanently ceases operations and the Parent Organization or its designated trustee does not purchase the Optional Discovery Period then the Insured Person(s) have the right, upon payment of the required additional premium, to request in writing the election of the Optional Discovery Period within one hundred twenty (120) days of the Policy Termination Date. The Insurer shall have no obligation to provide any notice to any Insured Person(s) of the availability of the Optional Discovery Period.

If this Policy is cancelled by the Insurer because of non-payment of premium, and at the effective date of such cancellation the Insurer has provided this insurance to the Parent Organization on a Claims-made basis continuously without interruption for less than one year, there shall be no right to elect and purchase an Optional Discovery Period.

The first sixty (60) days (ninety (90) days if the Parent Organization is a Public Entity) of the Optional Discovery Period, if it becomes effective, shall run concurrently with the Automatic Discovery Period.

2.   The Discovery Period shall not be cancelable, and the additional required premium for the Optional Discovery Period shall be fully earned at its inception.

3.   The Limit of Liability during the extended reporting period, including both the automatic sixty (60) day extension and the three (3) year extended reporting period, if purchased by the Insureds, shall be either:
(A) 100 percent of the Limit of Liability as set forth in Item 3 of the DECLARATIONS, if the Insurer has provided coverage to the Insured substantially similar to the coverage provided by this Policy for at least

three (3) consecutive years immediately preceding the inception date of this Policy; or

(B) If the Insurer has provided to the Insured coverage substantially similar to the coverage provided by this Policy for less than three (3) consecutive years immediately preceding the inception date of this Policy, the greater of: (1) to the extent there is any limit remaining, the amount remaining under the Limit of Liability as set forth in Item 3 of the DECLARATIONS, or (2) fifty (50%) percent of the aggregate Limit of Liability as set forth in Item 3 of the DECLARATIONS

4.   If the Insured does not purchase the Optional Discovery Period, the Limit of Liability for the Automatic Discovery Period shall be equal to the amount of coverage remaining in the Policy's aggregate Limit.

## IV. EXCLUSIONS

The Insurer shall not be liable to make any payment for Loss in connection with any Claim made against any of the Insureds:

1)   for;

(a)  bodily injury, sickness, disease or death of any person, or any damage to or destruction of any tangible property including loss of use thereof; or

(b)  mental anguish or emotional distress, however this subpart (b) shall not apply with respect to any Claim for Wrongful Employment Practices;

CIRI 72001 NY (06/98)          Page 5 of 10

2)  based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance or situation which has been the subject of any notice given under any other Policy of which this Policy is a renewal or replacement;

3)  based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving (a) the actual, alleged or threatened discharge, release, escape or disposal of Pollutants into or on real or personal property, water or the atmosphere; or (b) any direction or request that the Insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize Pollutants, or any voluntary decision to do so; including but not limited to any Claim for financial loss to the Insured Organization, its members or security holders or its creditors based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the matters described in (a) or (b) of this exclusion;

4)  for an actual or alleged violation of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974 and amendments thereto or similar provisions of any federal, state or local statutory law or common law upon fiduciaries of any pension, profit sharing, health and welfare or other employee benefit plan or trust established or maintained for the purpose of providing benefits to employees of the Insured Organization;

5)  based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any litigation against any Insured on or prior to the Pending and Prior Litigation Date set forth in Item 10 of the Declarations, or any fact, circumstance or situation underlying or alleged therein;

6)  brought or maintained by or on behalf of the Insured Organization, except a Claim that is brought and maintained totally independently of, and totally without the solicitation, assistance, participation, or intervention of any officer, director or trustee of the Insured Organization;

7)  for Wrongful Acts by any Insured Person as a director, officer or employee of any entity other than the Insured Organization, even if such service is directed or requested by the Insured Organization;

8)  for any Wrongful Act committed or allegedly committed by any Insured Organization or its Insured Persons while such Insured Organization was not a Subsidiary; however, if before or during the Policy Period an organization ceases to be a Subsidiary, coverage with respect to such Subsidiary and its Insured Persons shall continue until termination of this Policy but only with respect to Claims for Wrongful

Acts taking place while such organization was a Subsidiary;

9)  for liability under or breach of any oral, written or implied contract or agreement, or for liability of others assumed by the Insured under any such contract or agreement; however, this exclusion shall not apply to the extent (a) the Insured would have been liable in the absence of such contract or agreement; or (b) the Claim is a Claim for Wrongful Employment Practices;

10)  brought about or contributed to by any deliberately fraudulent or dishonest act or omission or any willful violation of any statute or regulation by such Insured;

11)  for such Insured gaining in fact any profit, remuneration or advantage to which such Insured was not legally entitled; or

12)  based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the ownership, control, management or operations of any for-profit Subsidiary of the Insured Organization; however, this exclusion shall not apply with respect to any for-profit Subsidiary that is an Insured Organization pursuant to an endorsement to this Policy.

No fact pertaining to or knowledge or information possessed by any Insured Person shall be imputed to any other Insured Person for purposes of applying any Exclusion in Section IV.  Only facts pertaining to or knowledge or information possessed by an officer, director or trustee of the Insured Organization shall be imputed to the Insured Organization for purposes of applying any Exclusion in Section IV.

CIRI 72001 NY (06/98)                                    Page 6 of 10

## V. GENERAL CONDITIONS AND LIMITATIONS

### A. LIMIT OF LIABILITY, RETENTION AND COINSURANCE

1) The Insurer shall pay Loss in excess of the applicable Retention set forth in Item 4 of the Declarations up to the maximum aggregate Limit of Liability set forth in Item 3 of the Declarations for the Policy Period set forth in Item 2 of the Declarations.

2) With respect to all Claims for which this Policy provides coverage, the Insured shall share 0.10% of the first $1,000,000 of all Loss, in excess of the retention. The Company's obligation to pay its percentage of Loss is subject to this Section V. A. The Insured's percentage shall be deemed uninsured and at its own risk.

3) Losses based upon or arising out of the same Wrongful Act or Related Wrongful Acts of one or more of the Insureds shall be considered a single Loss incurred as a result of a single Claim, which Claim shall be deemed to have been made on the date the first Claim for such Wrongful Act or for one or more of such Related Wrongful Acts is made against any of the Insureds, whether such date is before or after the Policy Inception Date. The applicable Retention shall apply only once to each such single Claim.

4) If the Insured Organization is permitted or required by common or statutory law to ultimately indemnify the Insured Persons for any Loss, or to advance Defense Costs on their behalf, and does not in fact do so other than for reasons of Financial Insolvency, then any payment of such Loss or any advancement of such Defense Costs by the Insurer shall not be subject to any Retention amount. In that event, the Insured Organization shall reimburse and hold harmless the Insurer for such Loss up to the Retention amount set forth in Item 4(c) of the Declarations. For purposes of this Section V(A), the resolutions of the Insured Organization shall be deemed to provide indemnification for Loss to the fullest extent permitted by common or statutory law.

5) If Loss resulting from a Claim is subject in part to no Retention and in part to the Retention for Indemnified Loss, the Retention set forth in Item 4(c) of the Declarations shall be applied only to that part of the Loss which is Indemnified Loss.

6) Defense Costs shall be part of and not in addition to the maximum aggregate Limit of Liability set forth in Item 3 of the Declarations, and Defense Costs shall reduce the maximum aggregate Limit of Liability.

7) The amount set forth in Item 3 of the Declarations shall be the maximum aggregate Limit of Liability of the Insurer under the Policy for the Policy Period for all Loss resulting from all Claims, regardless of the time of payment by the Insurer.

### B. NOTICE

1) If during the Policy Period or Discovery Period, if purchased, any Claim is first made against any Insured, the Insureds shall give to the Insurer written notice of any such Claim as soon as practicable. The Insured shall give the Insurer such information and cooperation as it may reasonably require.

2) If during the Policy Period or Discovery Period, if purchased, the Insureds shall become aware of any Wrongful Act which may subsequently give rise to a Claim and shall give written notice to the Insurer as soon as practicable during the Policy Period or Discovery Period, if purchased, then any Claim subsequently made against the Insureds arising out of such Wrongful Act shall be deemed to have been made during the Policy Period. Such notice must articulate the full particulars as to the nature of the potential Claim, the date of the Wrongful Act, the persons involved and the reasons for anticipating a Claim.

3) All notice under this subsection V.B. given to any agent of the Company in New York State, with particulars sufficient to identify the Insured, shall be considered to be notice to the Company.

4) The failure to give the Company prompt written notice of the particulars of such Claim or suit or to send the Company copies of any demand, notice, summons or other legal papers received will not invalidate any Claim made by the Insured or free the Company from any responsibility in any suit if it can be shown not to have been reasonably possible to give the

notice or forward the documents promptly, and that notice was given or the documents were sent as soon as reasonably practicable.

C.   **ACQUISITION OF PARENT ORGANIZATION**

If during the Policy Period (1) the Parent Organization is acquired by merger into or consolidation with another entity, or (2) another entity, or person or group of entities and/or persons acting in concert acquires securities or voting rights which result in ownership or voting control by the other entity(ies) or person(s) of more than fifty percent (50%) of the outstanding securities representing the present right to vote for the election of directors of the Parent Organization, then coverage under this Policy shall terminate pursuant to Section V.F, and the provisions of Section III.C. shall apply.

As soon as the Parent Organization becomes aware of a pending merger, consolidation or acquisition, it shall give written notice thereof to the Insurer.

D.   **SUBROGATION**

If any payment is made under this Policy, the Insurer shall be subrogated to the extent of such payment to all of the Insureds' rights of recovery, including without limitation the Insured Persons' rights to indemnification or advancement from the Insured Organization. The Insureds shall execute all papers required and do everything necessary to secure such rights and to enable the Insurer to bring suit in their name.

E.   **AUTHORIZATION AND NOTICES**

By acceptance of this Policy, the Insureds agree that the Parent Organization will act on behalf of the Insureds with respect to:

1) the giving of all notices to the Insurer as provided herein,

2) the receiving of all notices from the Insurer,

3) the payment of premiums,

4) the receiving of any return premiums that may become due under this Policy,

5) the cancellation of this Policy, and

6) the negotiation, agreement to and acceptance of any endorsements or additional terms and conditions to this Policy.

F.   **CANCELLATION**

1.   This Policy may be cancelled by the Insurer for non-payment of a premium when due, provided the Insurer gives written notice by certified mail to the Parent Organization stating when, not less than

fifteen (15) days thereafter, such cancellation shall be effective.

2.   In the event of a change in the risk Insured as provided in Section V. C, this Policy may be cancelled by the Insurer, provided the Insurer gives written notice by certified mail to the Parent Organization stating when, not less than twenty (20) days thereafter, such cancellation shall be effective.

3.   By acceptance of this Policy, the Insureds grant the exclusive power and authority to cancel this Policy on their behalf to the Parent Organization, which may cancel this Policy by mailing to the Insurer written notice stating when thereafter such cancellation shall be effective. The mailing of such notice shall be sufficient notice, and the effective date of cancellation stated in the notice shall become the Policy Termination Date.

4.   If this Policy is cancelled pursuant to Section V(F)(3), the earned premium shall be computed in accordance with the customary short rate table and procedure. If this Policy is cancelled pursuant to V(F)(1 or 2), the earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effective or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

5.   Copies of the cancellation notice shall also be mailed to the insurance agent or broker of record on this Policy.

G.   **NON-RENEWAL; RENEWAL CHANGES**

1.   The Insurer may (a) non-renew this Policy, or (b) offer a Conditional Renewal of this Policy, by mailing to the Parent Organization at least sixty (60) days but not more than one hundred twenty (120) days in advance of the Policy Termination Date, a notice containing the specific reason or reasons for

CIRI 72001 NY (06/98)                    Page 8 of 10

non-renewal or Conditional Renewal setting forth the amount of any premium increase and the nature of any other proposed changes.

2. Copies of notices as required in Section V(G)(1) of this Policy shall also be mailed to the insurance agent or broker of record on this Policy.

3. Section V(G)(1) of this Policy shall not apply when the Parent Organization or another agent of the Parent Organization has mailed written notice that this Policy has been replaced or is no longer desired.

4. If prior to the Policy Termination Date an incomplete or late Conditional Renewal notice or a late non-renewal notice is provided by the Insurer, coverage shall remain in effect at the same terms and conditions as expiring and at the lower of the current rates or the rates for the prior period until sixty (60) days after such notice is mailed unless the Parent Organization elects to accept terms, conditions, and rates of the Conditional Renewal notice and renewal of this Policy on that basis, then such terms, conditions and rates shall govern this Policy upon expiration of such sixty (60) day period.

5. If the Insurer does not provide timely and substantially complete notice of non-renewal or Conditional Renewal prior to the Policy Termination Date, coverage shall remain in effect on the same terms and conditions as this Policy for another Policy Period at the lower of the current or prior Policy Period Premium rates.

6. The Limit of Liability shown under Item 3 of the Declarations shall not be increased by any non-renewal or Conditional Renewal notification requirements except that it shall be increased in proportion to the extension of this Policy.

7. A notice of non-renewal shall advise the Parent Organization of any rights to coverage and the duration thereof.

8. If the Insurer provides notice of non-renewal and subsequently extends the Policy Period for ninety (90) days or less, an additional notice of non-renewal is not required under Section V(G)(4) of this Policy.

9. Delivery of written notice shall be equivalent to mailing.

10. "Conditional Renewal" shall mean renewal of this Policy by the Insurer conditioned upon change of limits, change in type of coverage, reduction of coverage, increased retention, addition of exclusion, or an increase in premium in excess of 10% exclusive of any increase as a result of increased exposure or due to and commensurate with Insured value added or as a result of experience rating,

retrospective rating or audit.

**H.   ACTION AGAINST INSURER**

No action shall lie against the Insurer unless, as a condition precedent thereto, there shall have been full compliance by the Insureds with all of the terms of this Policy; nor shall any such action lie until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against an Insured or by written agreement of the Insured, the Claimant and the Insurer.  No person or organization shall have any right under this Policy to join the Insurer as a party to any action against the Insureds to determine the Insurer's liability, nor shall the Insurer be impleaded by the Insureds or their legal representatives.

**I.   ACCEPTANCE**

By acceptance of this Policy, the Insureds agree that this Policy constitutes the entire agreement existing between them and the Insurer relating to this insurance.

**J.   ALTERATION & ASSIGNMENT**

No change in, modification of, or assignment of interest under this Policy shall be effective except when made by written endorsement to this Policy signed by an authorized employee or representative of the Insurer.

**K.   OTHER INSURANCE**

If any Loss otherwise covered under this Policy is Insured under any other valid and collectible Policy or policies, then this Policy shall apply only in excess of the amount of any deductibles, retentions and limits of liability under such other

CIRI 72001 NY (06/98)                    Page 9 of 10

insurance, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written specifically excess of this Policy by reference in such other Policy to the Policy Number of this Policy.

## VI. WARRANTIES AND COVENANTS

The Insureds warrant and agree as a condition to the Insurer's obligations hereunder, as follows:

1)  The statements and representations made in the Application are the Insureds' statements and representations and are true.  This Policy is issued in reliance upon the truth of such statements and representations.

2)  No misrepresentation shall be deemed material unless knowledge by the Insurer of the facts misrepresented

would have led to a refusal by the Insurer to make such contract.  In the event of a material misrepresentation, this Policy shall be void and of no effect whatsoever, but only with respect to:

(a)   any Insured Person who had knowledge or information as of the Policy Inception Date of the facts that were not truthfully disclosed, and;

(b)   the Insured Organization if the person who signs the Application had knowledge or information as of the Policy Inception Date of the facts that were not truthfully disclosed.

Whether an Insured Person had such knowledge or information shall be determined without regard to whether the Insured Person actually knew the Application contained such untrue statement or representation.

IN WITNESS WHEREOF, the Company has caused this Policy to be signed by its authorized Company officers at Hartford, CT.

Executive Vice President

Corporate Secretary



### IMPORTANT NOTICE REGARDING COMPENSATION DISCLOSURE

For information about how Travelers compensates independent agents, brokers, or other insurance producers, please visit this website: www.travelers.com/w3c/legal/Producer_Compensation_Disclosure.html

If you prefer, you can call the following toll-free number: 1-866-904-8348. Or you can write to us at Travelers, Enterprise Development, One Tower Square, Hartford, CT 06183.



 **TRAVELERS**

Notice for New York
Applicants and Insureds

**This notice contains important information about the Policy.**
**This Notice will be physically attached to all applications and Policy declarations.**
**This is a Claims Made Policy.**
**Please read it carefully.**

1. This Policy, subject to its terms applies only to any **Claim** first made against the **Insured** during the **Policy Period** or any applicable Discovery Period.

2. The Policy provides no coverage for **Claims** arising out of incidents, occurrences or alleged **Wrongful Acts** which took place prior to any retroactive date stated in the Policy.

3. The premium charge for the optional Discovery Period, if purchased, will be as stated in Item 7 of the Declarations. The cost for the optional Discovery Period is based on rates in effect as of the inception date of the Policy.

4. During the first several years of a claims-made relationship, claims-made rates are comparatively lower than occurrence rates. The **Insured** can expect substantial annual premium increases, independent of overall rate level increases, until the claims-made relationship reaches maturity.

5. All coverage for the Policy ceases upon the Policy termination date, except for the sixty (60) day automatic Discovery Period (ninety (90) day automatic Extended Reporting Period for a public entity), unless an additional Discovery Period is purchased; such Discovery Period, including the automatic Extended Reporting Period, is limited to three years from the Policy termination date. Potential coverage gaps may arise upon expiration of the Discovery Period.

6. The **Insured** acknowledges that the aggregate limit of liability contained in this Policy shall be reduced and may be completely exhausted, by **Defense Costs.** The Company shall not be liable for **Defense Costs** plus the amount of any judgment or settlement exceeding the aggregate limit of liability of this Policy. **Defense Costs,** however, will be applied against the retention amount.

7. The **Insured** shall have the option to: (1) select the defense attorney or to consent to the Company's choice of defense attorney, which consent shall not be unreasonably withheld; (2) participate in, and assist in the direction of, the defense of any **Claim;** (3) consent to a settlement, which consent shall not be unreasonably withheld.

8. The **Insured** has the right to obtain, upon written request, an accounting of legal defense costs actually expended in the event of **Claim.**



CIRI-73037 (07-02)

**ISSUED BY: Travelers Casualty and Surety Company of America**          **POLICY NO: 104938605**

**ISSUED TO: 305 EAST 24TH OWNERS CORP**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

#### ADD/DELETE ENDORSEMENT

In consideration of the payment of the **0**          premium of **$0.00;**

The following endorsement(s) have been added to the policy:

**73040**

The following endorsement(s) have been deleted from the policy:

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein.  This endorsement is part of such policy and incorporated therein.

This endorsement is effective at the Inception Date stated in the Declarations or effective at 12:01 A.M. on **June 14, 2011,** if indicated herein.  Complete the following only when this endorsement is not prepared with the policy or is to be effective on a date other than the Inception Date of the policy.

Accepted by:    _____

On behalf of the entity named in
ITEM 1 of the Declarations.

_____

Authorized Company Representative

ILT-1021 (10-04)

**ISSUED BY**: **Travelers Casualty and Surety Company of America**          **POLICY NO**: **104938605**

**ISSUED TO**: **305 EAST 24TH OWNERS CORP**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### NEW YORK – DEFENSE ONLY COVERAGE ENDORSEMENT

In consideration of the payment of the premium:

1.      Section **II. DEFINITIONS** U.(11) is deleted and replaced with the following:

  (11) employment discrimination.

2.      Section **IV EXCLUSIONS** 10) is deleted.

3.      The Insurer shall not be liable to make any payment for Loss, other than Defense Expenses, in connection with any Claim made against any of the Insureds:

  a.      for disparate treatment employment discrimination of any kind or intentional sexual or other harassment in the work place; or

  b.      brought about or contributed to in fact by any deliberately fraudulent or dishonest act or omission or any willful violation of any statute or regulation by such Insured.


Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein.  This endorsement is part of such policy and incorporated therein.

This endorsement is effective at the Inception Date stated in ITEM 2 of the Declarations or effective at 12:01 A.M. on **June 14, 2011** , if indicated herein.  Complete the following only when this endorsement is not prepared with the policy or is to be effective on a date other than the Inception Date of the policy.

Accepted by:      _____
     On behalf of the entity named in
     ITEM 1 of the Declarations.


     _____
     Authorized Company Representative

CIRI-73040 (04-02)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**NEW YORK TIMELY NOTICE AND DIRECT ACTION ENDORSEMENT**

It is agreed that the following conditions are added:

WHEN FAILURE TO GIVE TIMELY NOTICE MAY AFFECT COVERAGE

Notwithstanding anything to the contrary, the failure to give notice to the insurer as soon as practicable as required under this policy will not invalidate coverage for any claim unless the failure to provide such timely notice has prejudiced the insurer. However, coverage for any claim will not be invalidated on such grounds if it is shown that it was not reasonably possible to give such timely notice and that notice was given as soon as reasonably possible thereafter.

DIRECT ACTION AGAINST THE INSURER FOR DENIAL BASED ON FAILURE TO PROVIDE TIMELY NOTICE

Notwithstanding anything to the contrary, with respect to any claim covered by this policy arising out of death or personal injury of any person, if the insurer disclaims liability or denies coverage based upon the failure to provide timely notice, then the injured person or other claimant may maintain an action directly against the insurer, provided that the sole question is whether the insurer's disclaimer of liability or denial of coverage is based on the failure to provide timely notice, unless within 60 days of such disclaimer or denial, the insurer or the insured:



    a.   initiates an action to declare the rights of the parties under this policy; and
    b.   names the injured person or other claimant as a party to the action.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein.  This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **104938605**

ILT-1070 Ed. 03-09 Printed in U.S.A.                                                                                 Page 1 of 1
©2009 The Travelers Companies, Inc. All Rights Reserved

**ISSUED BY: Travelers Casualty and Surety Company of America**          **POLICY NO:** 104938605

**ISSUED TO: 305 EAST 24TH OWNERS CORP**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM ENDORSEMENT

It is agreed that:

1.  The following section is added to this Policy:

    **CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM**

    If aggregate insured losses attributable to **Certified Acts of Terrorism** exceed $100 billion in a program year (January 1 through December 31) and the insurer issuing this Policy has met the deductible under the Terrorism Risk Insurance Act:

    a.  the insurer will not be responsible for the payment of any portion of the amount of such losses that exceeds $100 billion; and

    b.  insured losses up to $100 billion will be subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

    The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Policy.

2.  The following is added to the Definitions section of this Policy:

    **"Certified Act of Terrorism"** means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act.  The criteria contained in the Terrorism Risk Insurance Act for a **Certified Act of Terrorism** include the following:

    a.  the act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

    b.  the act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein.  This endorsement is part of such policy and incorporated therein.

This endorsement is effective at the Inception Date stated in ITEM 2 of the Declarations or effective at 12:01 A.M. on       **June 14, 2011** , if indicated herein.  Complete the following only when this endorsement is not prepared with the policy or is to be effective on a date other than the Inception Date of the policy.

Accepted by:        _____

On behalf of the entity named in
ITEM 1 of the Declarations.


_____

Authorized Company Representative

© 2008 The Travelers Companies, Inc. All Rights Reserved
ILT-1067   Ed. 01/08

**ISSUED BY:** Travelers Casualty and Surety Company of America          **POLICY NO:** 104938605

**ISSUED TO:** 305 EAST 24TH OWNERS CORP

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### SEPARATE RETENTION FOR WRONGFUL EMPLOYMENT PRACTICES CLAIMS

In consideration of the payment of the premium, and solely with respect to any **Claim** for any **Wrongful Employment Practice**(s), ITEM 4 of the Declarations is deleted and replaced with the following:

**ITEM 4.** **RETENTION:**

(a)  $10,000.00 for each **Insured Person** for each **Claim** for **Non-Indemnified Loss**, not to exceed
(b)  $10,000.00 in the aggregate for all **Claims** for **Non-Indemnified Loss**.
(c)  $10,000.00 each **Claim** for all **Indemnified Loss**.



Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

This endorsement is effective at the Inception Date stated in ITEM 2 of the Declarations or effective at 12:01 A.M. on
**June 14, 2011**, if indicated herein.  Complete the following only when this endorsement is not prepared with the policy or is to be effective on a date other than the Inception Date of the policy.

Accepted by:   _____
                     On behalf of the entity named in
                     ITEM 1 of the Declarations.

                     _____
                     Authorized Company Representative

CIRI-70072 NY (02-02)

**ISSUED BY:** Travelers Casualty and Surety Company of America          **POLICY NO:** 104938605

**ISSUED TO:** 305 EAST 24TH OWNERS CORP

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### AMENDED BI/PD EXCLUSION

In consideration of the payment of the premium:

1.  Section IV. **EXCLUSIONS** 1) is deleted and replaced by the following:

    1)   based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving bodily injury, sickness, mental anguish, emotional distress, disease or death of any person, provided, that this exclusion shall not apply to allegations of mental anguish or emotional distress if and only to the extent that such allegations are made as part of a **Claim** for **Wrongful Employment Practices**;

2.  Section **IV. EXCLUSIONS** is amended by adding the following exclusion:

    for or arising out of any damage, destruction, loss of use or deterioration of any tangible property including without limitation, construction defects, whether or not as a result of faulty or incorrect design or architectural plans, improper soil testing, inadequate or insufficient protection from soil and/or ground water movement, soil subsidence, mold, toxic mold, spores, mildew, fungus, or wet or dry rot, or the supervision of actual construction, manufacturing or assembly of any tangible property;

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein.  This endorsement is part of such policy and incorporated therein.

This endorsement is effective at the Inception Date stated in ITEM 2 of the Declarations or effective at 12:01 A.M. on **June 14, 2011** , if indicated herein.  Complete the following only when this endorsement is not prepared with the policy or is to be effective on a date other than the Inception Date of the policy.

Accepted by:   _____

On behalf of the entity named in
ITEM 1 of the Declarations.

_____

Authorized Company Representative

CIRI-70007 (02-02)

**ISSUED BY: Travelers Casualty and Surety Company of America**        **POLICY NO:  104938605**

**ISSUED TO: 305 EAST 24TH OWNERS CORP**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### NON-PROFIT CHANGE ENDORSEMENT NEW YORK

In consideration of the payment of the premium,

1.  Section **I. INSURING AGREEMENTS, Liability Coverage** A. is deleted and replaced with the following:

    A.    The Insurer will pay on behalf of the Insureds Loss up to the available maximum aggregate Limit of Liability set forth in **ITEM 3** of the Declarations which is incurred by the Insureds as the result of any Claim first made against the Insureds during the Policy Period or the Discovery period, if purchased, for a Wrongful Act.

2.  Section **II. DEFINITIONS**, B. Claim, is deleted and replaced with the following:

    B.    Claim means:

        1)   a written demand for monetary or non-monetary relief; or

        2)   a civil proceeding commenced by the service of a complaint or similar proceeding,

        against an Insured for a Wrongful Act, including an appeal there from.

3.  Section **IV.  EXCLUSIONS** 6) is deleted.

4.  Section **IV.  EXCLUSIONS** 9) is deleted and replaced with the following:

    9)    for liability under or breach of any oral, written or implied contract or agreement, or for liability of others assumed by the Insured under any such contract or agreement; provided, however, this Exclusion shall not apply to (a) the Insurer's duty to defend and to pay Defense Costs regarding such Claim; (b) the extent the Insured would have been liable in the absence of such contract or agreement; or, (c) the extent the Claim is a Claim for Wrongful Employment Practices;

5.  Section **IV. EXCLUSIONS** is amended by adding the following exclusion:

    The Insurer shall not be liable to make any payment for Loss, other than Defense Costs, in connection with any Claim made against any of the Insureds which constitutes costs and expenses incurred or to be incurred to comply with an order, judgment or award of injunctive or other equitable relief of any kind, or that portion of a settlement encompassing injunctive or other equitable relief, including but not limited to actual or anticipated costs and expenses associated with or arising from an Insured's obligation to provide reasonable accommodations under, or otherwise comply with, the Americans with Disabilities Act or the Rehabilitation Act of 1973, including amendments thereto and regulations thereunder, or any related or similar law or regulation.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

This endorsement is effective at the Inception Date stated in ITEM 2 of the Declarations or effective at 12:01 A.M. on **June 14, 2011** , if indicated herein. Complete the following only when this endorsement is not prepared with the policy or is to be effective on a date other than the Inception Date of the policy.

Accepted by:  _____
On behalf of the entity named in
ITEM 1 of the Declarations.

_____
Authorized Company Representative



ISSUED BY: Travelers Casualty and Surety Company of America          POLICY NO: 104938605

ISSUED TO: 305 EAST 24TH OWNERS CORP

<u>AMENDED DEFINITION OF INSURED TO INCLUDE PROPERTY MANAGER</u>

This endorsement modifies insurance provided under the following:
**Non-Profit Management and Organization Liability Insurance Policy**

In consideration of the payment of premium:

1.       Section II. **DEFINITIONS,** sub-paragraph **G. Insured** is amended to include:

      a.       any independent management organization under a written contractual agreement solely with the **Insured Organization** (a "Property Manager") and

      b.       any director, officer or employee of a Property Manager

but only while performing property management services for the **Insured Organization** which are enumerated in such written contractual agreement.

2.       Section **IV. EXCLUSIONS** is amended by adding the following:

brought or maintained by or on behalf of the **Insured Organization** against any **Insured** added pursuant to paragraph 1 of this endorsement;

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein.  This endorsement is part of such policy and incorporated therein.

This endorsement is effective at the inception date stated in Item 2 of the Declarations or effective at 12:01 A.M. on
    **June 14, 2011** , if indicated herein.  Complete the following only when this endorsement is not prepared with the policy or is to be effective on a date other than the inception of the policy.

Accepted by:       _____
                   On behalf of the entity named in
                   ITEM 1 of the Declarations.
                   _____
                   Authorized Company Representative



CIRI 70064 NY (10-00)

**ISSUED BY:** Travelers Casualty and Surety Company of America          **POLICY NO:** 104938605

**ISSUED TO:** 305 EAST 24TH OWNERS CORP

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### CLAIMS AGAINST BUILDER/DEVELOPER

This endorsement modifies insurance provided under the following:
**Non-Profit Management and Organization Liability Insurance Policy**

In consideration of the premium charged,

1.   For purposes of this endorsement, the following terms have the following meanings:

    a.   "Builder/Developer Board Member" means any person appointed or elected to serve on the board of directors of the **Parent Organization** by the builder, developer or sponsor of the **Parent Organization**, and who was both a director or officer of the **Parent Organization** and a director, officer, employee or agent of such builder, developer, or sponsor of the **Parent Organization**;

    b.   "Policy Year" means each year of the **Policy Period** beginning with the **Policy Inception Date** and ending one year thereafter and each successive year until canceled or non-renewed.

2.   The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any Builder/Developer Board Member after the end of the Policy Year in which such Builder/Developer Board Member ceases to serve on the board of directors of the **Parent Organization**.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein.  This endorsement is part of such policy and incorporated therein.

This endorsement is effective at the inception date stated in Item 2 of the Declarations or effective at 12:01 A.M. on
    **June 14, 2011** , if indicated herein.  Complete the following only when this endorsement is not prepared with the policy or is to be effective on a date other than the inception of the policy.

Accepted by:   _____

    On behalf of the entity named in
    ITEM 1 of the Declarations.

    _____

    Authorized Company Representative

CIRI 70008 (12-02)

**ISSUED BY:** Travelers Casualty and Surety Company of America

**POLICY NO:**    104938605

**ISSUED TO: 305 EAST 24TH OWNERS CORP**

<u>NUCLEAR BROAD FORM EXCLUSION</u>

This endorsement modifies insurance provided under the following:
**Non-Profit Management and Organization Liability Insurance Policy**

A.    This Policy does not apply:

    1.    To **Loss**

        a.    with respect to which an Insured under this Policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada or any of their successors, or would be an **Insured** under any such policy but for its termination upon exhaustion of its limit of liability; or

        b.    resulting from the Hazardous Properties of Nuclear Material and with respect to which (i) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (ii) the Insured is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any Agency thereof with any person organization; or

    2.    To **Loss** resulting from the Hazardous Properties of Nuclear Material, if

        a.    the Nuclear Material (i) is at any Nuclear Facility owned by, or operated by or on behalf of an **Insured** (ii) has been discharged or dispersed therefrom;

        b.    the Nuclear Material is contained in Spent Fuel or Waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an **Insured**; or

        c.    the **Loss** arises out of the furnishing by an **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any Nuclear Facility, but if such Nuclear Facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to **Loss** to such Nuclear Facility and any property thereat.

B.    As used in this Endorsement:

    1.    "Hazardous Properties" include radioactive, toxic or explosive properties.

    2.    "Nuclear Material" means Source Material, Special Nuclear Material or Byproduct Material.

    3.    "Source Material," "Special Nuclear Material" and "Byproduct Material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

4. "Spent Fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a Nuclear Reactor.

5. "Waste" means any waste material (a) containing Byproduct Material other than the tailing or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its Source Material content and (b) resulting from the operation by any person or organization of any Nuclear Facility included within the definition of Nuclear Facility under paragraph (a) or (b) thereof.

6. "Nuclear Facility" means

   a. any Nuclear Reactor;

   b. any equipment or device designed or used for (i)separating the isotopes of uranium or plutonium, (ii) processing or utilizing Spent Fuel, or (iii) handling, processing or packaging Waste;

   c. any equipment or device used for the processing, fabricating or alloying of Special Nuclear Material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more that 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

   d. any structure, basin, excavation, premises or place prepared or used for the storage or disposal of Waste and includes the site on which any of the foregoing is located, all operation conducted on such site and all premises used for such operations.

7. "Nuclear Reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

8. **"Insured"** means the **Insured Organization** and shall also mean the **Insured Persons**.

9. **"Loss"** includes all forms of radioactive contamination of property.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above mentioned policy, except as expressly stated herein.  This endorsement is part of such policy and incorporated therein.

This endorsement is effective at the inception date stated in Item 2 of the Declarations or effective at 12:01 A.M. on **June 14, 2011**, if indicated herein. Complete the following only when this endorsement is not prepared with the policy or is to be effective on a date other than the inception of the policy.



_____
Authorized Representative