UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Todd **KREISLER**,

                Plaintiff,

          v.

Kais **ABID**,
*d/b/a PAPA JOHN'S*;
**PARKER EAST 24TH APARTMENTS LLC**,
*A New York Limited Liability Company;*
**305 EAST 24TH OWNERS CORP**.,
*A New York Corporation*

                Defendants.

12 civ. 4052 (PAE)

**OMNIBUS MOTION**

Defendant, Kais **ABID**, by his attorney Barry N. Frank Esq., respectfully moves this Court as follows:

## RELIEF SOUGHT

Defendant seeks the following relief:

1. Vacatur of the Judgment and Orders of December 2012, to the extent that the Court has imposed relief that impacts the instant Movant (**KAIS ABID**, hereinafter "**ABID**").
2. In the alternative, staying that portion of relief which would result in the shutdown of **ABID**'s business operation (as detailed *infra*).
3. Reconsideration of that portion of relief granting a monetary award to the Plaintiff.
4. Reconsideration of that portion of relief granting attorney fees to Adam Shore, Esq.
5. Imposing sanctions and costs against both the plaintiff and against Adam Shore in his personal capacity.
6. Dismissal of this action with prejudice.
7. Reconsideration of the January 2013 Order.

8. Declarative relief: determination of the legal relationship (if any) between **PARKER EAST 24TH APARTMENTS LLC** (hereinafter, "**PARKER EAST**") and <u>non-party</u> **PARKER 24 COMMERCIAL ASSOCIATES** (purportedly a New York limited partnership, hereinafter "**PARKER 24**").

9. In the event that the relationship between **PARKER EAST** and **PARKER 24** judicially determined to be of a nature which results in liability pursuant to the premises lease between **ABID** and **PARKER 24** (*i.e.*, that **ABID** is deemed to be an indemnitor of **PARKER EAST**); then in such instance your Movant seeks vacatur of the December orders in their entirety.

10. ***N.B.*:** **ABID** has filed a Notice of Appeal and shall perfect as and if necessary. Depending on the Court's ruling on the instant motion, the appeal might be withdrawn as moot.


## PROCEDURAL POSTURE

11. This case was commenced by filing of a Summons and Complaint on May 22, 2012.
12. Your movant was **not** named in the initial Complaint.
13. An Amended Complaint was filed on August 3, 2012.
14. The Amended Complaint did name your Movant as co-Defendant.
15. The plaintiff moved for a default judgment at a hearing before this Court on December 10, 2012.
16. At that time, there were three defendants remaining as named parties to this action:
    a. **ABID**
    b. **PARKER EAST**
    c. **305 EAST 24TH OWNERS CORP.** (hereinafter, "**305 OWNERS**")
17. On that date: **ABID**, represented by Barry N. Frank, Esq., filed a Notice of Appearance. **PARKER EAST** did not appear. **305 OWNERS** was present, represented by Gary Ehrlich, Esq.


## STANDING

18. Since the Court has raised the matter of the relationship between **ABID** and co-defendant, **PARKER EAST**, we respectfully note that **ABID** was not a party to the initial proceedings. The following explanation is offered, albeit perhaps duplicative of prior court colloquy:

19. **305 OWNERS** is the owner of the building containing the retail premises which is the subject of this action.

20. **305 OWNERS** is also the lessor of certain proprietary leaseholds, including the retail premises which is the subject of this action.**PARKER EAST** is, upon information and belief, a proprietary leaseholder of certain unsold shares in cooperative space within the building owned by **305 OWNERS.**

21. **PARKER 24** entered into a lease with **ABID.**

22. **PARKER EAST** is a stranger to **ABID.**

23. Indeed, upon information and belief the named defendant **PARKER EAST** does not have any interest in **PARKER 24.**  The basis for this belief is a letter dated January 2, 2013 (discussion *infra*).

24. **ABID** leases the retail premises from <u>non-party</u> **PARKER 24**.

25. **ABID** is a franchisee of franchisor **PAPA JOHN'S USA INC.**

26. The franchisor was a named defendant in the initial Complaint.

27. The franchisor was dismissed with prejudice on July 27, 2012.

28. *N.B.*:  Although the franchisor was dismissed pursuant to a Stipulation providing that "each party shall bear his or its own costs and attorneys' fees" plaintiff's counsel Adam Shore has applied for been granted a judgment by this Court which appears to be in violation of that Stipulation.

29. <u>Non-party</u>, **KAM FOUR INC** (hereinafter, "**KAM FOUR**"), is the operator of the premises and the holder of the NYC Department of Health permit and NYS Certificate of Authority.

30. While we realize that counsel for Plaintiff has billed for (and presumably, performed) significant research and therefore is aware of (and chosen not to name as defendant) the operating entity as reflected in the public record and as reflected in the publicly-visible documents on the premises, which are not only visible but also required to be produced to public customers pursuant to various statute and regulation.

## THE JANUARY 2, 2013 LETTER

31. In early January 2013, Barry Frank (counsel to **ABID**), received a letter from John W. Egan, on the letterhead of law firm Seyfarth Shaw LLP.

32. The letter was dated January 2, 2013.
33. A copy of that letter is annexed hereto.
34. According to the letter, "Gary S. Erlich Esq." and "Minh Vu, Esq." were cc'd by e-mail.
35. *N.B.*: There is no "John W. Egan" listed on the NYS OCA records as being employed by Seyfarth Shaw, although there is a "John W. Egan" listed at Rivkin Radler LLP. There is a "Mylinh Vu" who is listed on the NYS OCA records as being employed at the Paris office of Jones Day; which attorney registration is in "**Delinquent**" status.
36. In relevant part, the letter states that Seyfarth Shaw represents both **PARKER 24** and **PARKER EAST**, and that :
    > *Parker East is the sponsor of the cooperative apartment and retains unsold shares in the cooperative. It does not, however, have any interest in Parker 24, which is the landlord entity that Plaintiff should have named.*
37. The letter then demands that **ABID** pay the damages assessed against **PARKER EAST** and perform the work demanded in the judgment issued against **PARKER EAST**.
38. Given that **ABID** has no contractual relationship with **PARKER EAST**, it would appear that there is no basis for **ABID** having contractual obligation to indemnify an entity which is not in privity with **ABID**.
39. It is true that counsel for **PARKER EAST** and **PARKER 24** (collectively, "the **PARKER ENTITIES**") implies that there has been a tactical litigation decision made by the **PARKER ENTITIES**—*on the advice of counsel*—to disregard the corporate form.
40. While that may factor into any decision by this Court vis-a-vis any vacatur sought by the **PARKER ENTITIES**, it does not alter the fact that **ABID** is not in privity with **PARKER EAST**.

## THE PROPRIETARY LEASEHOLDER OF THE SUBJECT PREMISES IS NOT KNOWN AT THIS TIME

41. It is not entirely clear who is the lessor of the premises which is the subject of this litigation.
42. **ABID** entered into a lease with "Parker 24 Commercial Associates".
43. That lease is signed:
    > *Parker 24 Commercial Associates, a New York Limited partnership* [sic]

> *305 East 24th Commercial Corp., general partner*
> *By: Jean-Pierre Vaganay*
> *Vice President*

44. Although the records of the NY Secretary of State show that "305 East 24th Commercial Corp" was formed in August 1984 and is an active Domestic Business Corporation, there is no record of any limited partnership titled "Parker 24 Commercial Associates."

45. Although there is a record of a "Parker 72 Commercial Associates" as an active Domestic Limited Partnership, this entity has not ever changed its name, and this entity is a Queens entity and not a New York County entity. As such, it does not appear to be related to any of the **PARKER ENTITIES**.

46. After searching the Department of State database, requesting a search by our outside legal support vendor, and sending an investigator in person to the DoS office in Albany, there is still no indication that "Parker 24 Commercial Associates" even exists.

47. Based on the foregoing, it is not certain who is the lawful holder of the proprietary lease, nor whether the **ABID** lease is legally valid.

48. That being said, Mr. Erlich (as counsel to the cooperative corporation **305 OWNERS**) would seem to be in a position to know who is the holder of the proprietary lease.

49. In addition, Mr. Shore (as counsel to Plaintiff) presumably has conducted proper due diligence and discovery during the pendency of this action and no doubt has disclosed to the Court these matters about which your Movant is only now becoming aware.

## THE COURT ORDER ISSUED AGAINST A THIRD-PARTY (CO-DEFENDANT) WILL RESULT IN THE CLOSURE OF THE MOVANT'S BUSINESS PREMISES

50. Assuming arguendo that the Court's order directing remedial relief is not vacated, the result will be catastrophic to **ABID**.

51. Attorney Adam Shore has waxed eloquent as to his expertise, and this Court has granted him an award with only a deduction for eight-tenths of an hour.

52. Given Mr. Shore's vast expertise, he is no doubt aware as to the ADA requirements, and has no doubt engaged in discussion with the Court.

53. As such, the following exposition is of course redundant, and we apologize.
54. However it is necessary to recap this in order to preserve the record with regard to the threatened closure of **ABID**'s business.
55. As a rule, fee-shifting is not permitted in American jurisprudence.
56. In the instant case, fees are being awarded pursuant to 42 USC 11205.
57. As Magistrate Judge Pitman of this Court noted (in a report adopted by Judge Sullivan), there must be "actual relief on the merits" which "materially alters the legal relationship… by modifying the defendants behavior in a way that directly benefits the plaintiff," Spalluto v. Trump Int'l Hotel & Tower, 2008 WL 4525372 at *4 (S.D.N.Y. 2008).
58. Since the defaulting defendant does not have any legal authority to make any modifications to the premises, it does not appear that there is any modification warranting fee-shifting, at least under the statute which is apparently being relied on.
59. As this Court is aware, the moving defendant was not named in the initial suit. Given the wealth of expertise and knowledge of the counsel who did appear in the initial action, there was perhaps discussion of remedies different from the December 10 colloquy.
60. That being said, the relief discussed was the installation of a portable ramp (T at 9, lines 1-10).
61. A portable ramp should only be used where installation of a permanent ramp is not readily achievable, 28 CFR 36.304(e). Even in such a case there must be cognizance of the safety risks inherent in using a portable ramp (those safety concerns are also why a portable lift is not ADA-compliant).
62. Assuming arguendo that the Court has determined that a permanent ramp is not readily achievable, the analysis proceeds to the requirements for a portable ramp, *see Id* at Appendix A.
63. A slope where the ramp is installed in new construction must be 1:12 or less, *Id* at 4.8.2
64. A slope where the ramp is put in existing construction may be 1:10 where the maximum rise is 6 inches, *Id* at 4.1.6(3)(a)(i).
65. The slope may be a minimum of 1:8 where the maximum rise is 3 inches, *Id* at 4.1.6(3)(a)(ii).
66. This Court has approved payment to attorney Adam Shore for certain time and expenses.
67. Those items indicate that Mr. Shore purports to have both personal knowledge and expert witness reports which indicate both a familiarity with the specific premises, superior legal

acumen with regard to relevant statute and regulation, and an expertise in applying that acumen to the matter at hand.

68. As a partial list, we would note:

| | | |
|---|---|---|
| a. | On 4/13/12: Adam Shore viewed the premises | $680.00 |
| b. | 4/20: Phone conv. w/ expert | $ 85.00 |
| c. | 4/23: Phone conv. w/ expert | $ 85.00 |
| d. | 4/23: Phone conv. w/ client re:inspection | $127.50 |
| e. | 4/23: Invoice from expert | $ 42.50 |
| f. | 5/17: Research on ADAAG standards | $297.50 |
| g. | 5/18: Check to inspector (85 plus 500) | $585.00 |

69. Undoubtedly counsel for the Plaintiff has spent significant time studying this matter; or at least he has submitted billing for such time.

70. Given that, our analysis below is no doubt redundant of matters already known to Mr. Shore and brought to the attention of the Court. But for purposes of preserving the record, we respectfully note:

71. The specific premises has a rise of about 13 inches.

72. Where the rise is 13 inches, the run must be (in inches) 12 times 13.

73. 12 times 13 is 156; meaning the length of the sloping ramp must be 156 inches.

74. In addition, for a ramp to be ADA-compliant, the ramp must have a level landing at the bottom and the top of the ramp, 28 CFR 36 Appendix A at 4.8.4.

75. The landing length must be a minimum of 60 inches clear, *Id* at 4.8.4(2).

76. If the landing at the top must be 60 inches and the landing at the bottom must be 60 inches and the sloping portion of the ramp must be 60 inches, then the computation is:

**60 plus 60 plus 156 equals 276 inches**

77. Given the extensive and costly work performed by Plaintiff's counsel and the extensive court time spent, both counsel Mr. Shore and counsel Mr. Erlich have no doubt noted the dimensions of the space which is the subject of the Court's order, but again for the record we respectfully note:

78. The public space has a depth of 93 inches.

79. The public space has a length of 102 inches running northerly from the door.

80. The space has a length of 122 inches running southerly from the door.
81. The space running southerly is almost entirely taken up by the kitchen.
82. The total width of the premises (running north to south) is therefore roughly 222 inches.
83. Therefore, even if the kitchen portion parallel to the exterior were eliminated, the maximum space would be 222 inches.
84. Respectfully we submit that 222 is less than 276.
85. Assuming arguendo that the Court may
    h. order a non-governmental party to
    i. enter upon real property
    j. in which that party has no lawful interest,
    k. thereupon to remain and
    l. conduct construction,
   we nevertheless submit that the Order of this Court necessitates the destruction of the business to ensure compliance with the Court Order.
86. It would appear that at very minimum the judicially-mandated relief ordered by this Court would necessitate that **ABID** be given substantive due process rights, both in this Court and in the appellate courts.
87. We would also assume that Mr. Shore has discussed the foregoing with the Court; subsequent to the December 10 conference, attorney Barry Frank (counsel to movant **ABID**) has repeatedly asked Mr. Shore to assist in working out a statutorily-compliant solution.
88. Mr. Shore has expounded at length on the fee-shifting provisions of the statute (specifically noting the one-sided nature of the fee-shifting), and has noted (correctly) that it is far cheaper to pay Mr. Shore than to litigate.
89. What Mr. Shore has been reticent about is proposing any statutorily-compliant solution.
90. While it may be that in S.D.N.Y. and E.D.N.Y. there has been a pronounced disinterest in whether the customary "portable ramp and pay attorney fees" solution is compliant with the letter (or spirit) of the statute, this is not merely an academic concern for **ABID**.
91. Therefore, while it is true that Mr. **KREISLER** and Mr. Shore may not probe too deeply into the matter of statutory compliance provided that appropriate remuneration is tendered, this is a matter which is of concern to **ABID**.

92. Parenthetically we respectfully note that it is also a concern to any legal counsel advising **ABID**, since if there is an accident as a result of the creation of a situation which is both specifically contrary to statute, any legal counsel advising **ABID** would reasonably expect a malpractice suit.

93. We would also note that the slope and clearance requirements imposed by statute are both reasonable and designed to prevent the creation of hazardous conditions. In the interest of brevity we do not go further on this, but should the Court wish we would of course brief that matter further.

94. Mr. **KREISLER** is well known in this Court (having filed 20 lawsuits in federal court alone), and has found a Congressionally-sanctioned means of support which has been lucrative for both himself and Mr. Shore.

95. But while Mr. Shore may give assurances that *he* and his client will be satisfied with attorney fees and the fig leaf of a portable ramp, this would not preclude future suits against **ABID**.

96. At very minimum, we respectfully move this Court to stay the prior Order and permit **ABID** to make a record and permit **ABID** time for such appellate relief as necessary.

97. There would be little prejudice to Mr. **KREISLER** nor to Mr. Shore in having their payday delayed.

98. There will be substantial and irreparable harm to **ABID** if the Court's Order stands.

## **THE DECEMBER COURT ORDER SHOULD BE RECONSIDERED BECAUSE IT IS DISPOSITIVE OF A MATTER STILL PENDING BEFORE THE COURT**

99. In addition to the discussion *supra*, we would also note that the Plaintiff is not prejudiced if and to the extent that the Plaintiff has not stated a legally-cognizable cause of action.

100. One of the issues still pending before this Court is whether in fact there is a violation of a particular federal statute.

101. Although the Court's Order requiring payment of attorney fees pursuant to a fee-shifting statute is implicitly dispositive of the question as to ADA non-compliance, we respectfully submit that the question of statutory compliance is not a settled issue and there is the potential for inconsistent verdicts within the case.

102. Assuming arguendo that the Court finds it to be a settled issue, the Court may still exercise its discretion to stay the Order pending exhaustion of appellate avenues of relief.

103. As Mr. Shore and this Court are of course aware, the ADA provides that where barrier removal is not readily achievable, the place of public accommodation may make its services available through alternative methods.

104. One specific (albeit non-exclusive) example is "curb service or home delivery," 28 CFR 36.305(b)(1).

105. Mr. **KREISLER** has developed a lucrative litigation business on the east side of Manhattan, and therefore is venturing into a wider market than served by the delivery zone of the pizza franchise; presumably this is why he notes that he was visiting a "friend" in the area.

106. There is no allegation that Mr. **KREISLER** even attempted to place a telephonic or internet order for pizza, let alone that he was denied service.

## THE COURT ORDER GRANTING ATTORNEY FEES SHOULD BE RECONSIDERED

107. Plaintiff counsel Adam Shore submitted a fees & costs sheet for 46.7 hours.

108. Less than 48 hours later, this Court approved a total of $21,219.50 as a proper amount.

109. The Court then allocated one-third to the defaulting party (which did not even have an interest in the subject premises and on that basis alone would appear to have no liability as a matter of law).

110. Fee-shifting obviates customary pecuniary restraints on counsel. For this reason, "the task of monitoring the attorney is shifted to the judge in separate litigation over fees if the plaintiff wins," Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 483 U.S. 711, 722 (1987).

111. A detailed exposition of the standard previously applied in the Southern District of New York may be found in *Spalluto*, where the Court cited the Second Circuit's admonition that the award is to be made "with an eye to moderation, seeking to avoid either the reality or the appearance of awarding windfall fees," Spalluto, 2008 WL 4525372 at *6, *citing* New York State Ass'n for Retarded Children Inc v. Carey, 711 F.2d 1136, 1139 (2d Cir. 1983).

112. The *Spalluto* court also discussed attorney fees in S.D.N.Y:

> [W]hen determining attorneys' fees, courts in the Southern District of New York generally do not credit travel time at the attorney's full houly rate and

*customarily reduce the amount awarded for travel to at least 50% of that rate*. Id at *11, *citing* In re Painewebber Ltd. P'ships Litig., 2003 WL 21787410 at *4 (S.D.N.Y. 2003).

113. The *Spalluto* court cited an E.D.N.Y. case where a law firm had

    *[P]ursued dozens of [ADA] actions against various hotels in federal courts… These cases involve identical legal issues and similar factual issues. The duplicitous nature of the litigation warrants a reduction in the law firm's fee award*, Id at *13, *citing* Access 4 All Inv. V Grandview Hotel Ltd. P'ship, 2006 WL 566101 at *4 (E.D.N.Y. 2006)

114. The Western District of New York observed that

    *Ideally, included in the fee applicant's attorney's affidavits should be information regarding the credentials of each attorney seeking reimbursement, as well as an affidavit by a disinterested local practitioner attesting to the relevant market rates*, Robbins & Myers Inc v. J.M. Huber Corp, 2010 WL 3992215 at *7, *citing* McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund, 450 F.3d 91, 97 & n.5 (2d Cir. 2006)

115. Magistrate Judge Cott of the S.D.N.Y, in a report to Judge Rakoff, discussed a fee application in an ADA matter involving litigation against a franchised food establishment. In that matter, the attorney claimed to have spent 39.4 hours at $425 and was seeking a total of $20,782.00, Zoltan Hirsch v. Sweet N Sour Corp, 2011 WL 3741008 at *1 (S.D.N.Y. 2011)

116. Upon review, Judge Cott reduced the $**20,782.00** to $**2,108.88**.

117. In that case, counsel for the plaintiff was Bradley Weitz and the attorney who provided the "disinterested" attorney affidavit was none other than Adam Shore.

118. Most significantly, the affidavit submitted by Adam Shore on August 12, 2011 made no mention whatsoever of the fact that at that very same time, Adam Shore and Bradley Weitz were co-counsel in an E.D.N.Y. case.

119. ***Just 21 days*** after Shore filed a "disinterested" affidavit in support of Weitz in the S.D.N.Y., Shore and Weitz filed a joint fee application for $16,202.50 in the E.D.N.Y. case of Costello v. Hai Sun Chinese Restaurant (11 civ 0280).

120. ***N.B.:*** In the *Costello* fee application, Shore admitted that his (boilerplate) complaint was "drafted by co-counsel" (Docket 14-1 filed 9/2/11).

121. In the instant case, the Court has referred to Adam Shore as "the victim here" (December 10 transcript at 23 line 23).

122. With the utmost respect for the Court, Adam Shore is not a victim.

123. Adam Shore is a man who abuses the judicial system and thinks that so long as the jurists of the Southern District don't talk to the jurists of the Eastern District that this pattern of behavior will be rewarded by the one-sided fee shifting statute.

124. As this Court is aware, abuse of the ADA by members of the plaintiffs' bar is a significant concern in other quarters of the legal community.

125. Adam Shore has made a mockery of the judicial system, both in the instant case and in prior cases in federal court.

126. There is a small group of attorneys (including Messrs. Weitz and Shore) who are known among members of the local bar for the disrepute which they bring upon the legal profession.

127. To date there have been negligible consequences to this reprehensible behavior.

128. Indeed, in the instant case the Court deemed Adam Shore as a "victim" and then made a fee award which is contrary to a Stipulation filed in this very case:

    m. Of the $20,187.50 in legal fees on Adam Shore's fee application, $8,668.50 was supposedly incurred prior to the defaulting **PARKER EAST** defendant was even named as a party.

    n. The original Complaint only named the franchisor and the cooperative corporation as defendants.

    o. On June 27, 2012 Adam Shore signed a Stipulation of Dismissal With Prejudice.

    p. That Stipulation was marked as "So Ordered" and signed by Judge Engelmayer.

    q. That document provides that "each party shall bear his or its own costs and attorneys' fees with respect to the claims asserted against [the franchisor].

    r. Despite this fact, Adam Shore sought attorney fees for that period when the only 2 defendants were the franchisor and the cooperative corporation.

    s. Adam Shore even included an amount of $212.50 for " Receipt, review, editing and signing stipulation of dismissal as to Papa John's USA"

    t. Despite the fact that the fee application of Adam Shore is patently erroneous (if not fraudulent), the fee application was approved by the Court in less than 48 hours.

129. There are many other instances of dubious billing in the fee application submitted by Adam Shore, but the mere presence of patent fraud coupled with the public history in the S.D.N.Y. and E.D.N.Y. is troubling.

130. Conduct such as that engaged in by Adam Shore and Todd **KREISLER** may be a matter of concern in the abstract to those concerned about the integrity of the legal process, but they are a very real threat to the livelihood of those targeted by ADA litigation.

131. In a New York Times article profiling Todd **KREISLER** and Bradley Weitz, the reporter noted the debate as to whether ADA lawsuits are "simply a form of ambulance-chasing," Mosi Secret, *Disabilities Act Prompts Flood of Suits Some Cite as Unfair*, N.Y. TIMES, April 16, 2012, *available a*t http://www.nytimes.com/2012/04/17/nyregion/lawyers-find-obstacles-to-the-disabled-then-find-plaintiffs.html

132. As the Times article states, the ADA lawsuits are "clos[ed] at a breakneck pace for federal court" Id.

133. A "breakneck pace" may be desirable when computing court system metrics, but the impact on citizens is not always desirable.

134. This Court has the discretion to fashion appropriate relief, and the instant Movant respectfully suggests that dismissal of this action and a hearing on sanctions is one remedy which might operate as a deterrent to future misbehavior.

## THE JANUARY 22 2013 COURT ORDER SHOULD BE RECONSIDERED

135. On January 17, **ABID** moved for an extension of time to file an appeal.

136. On January 22, 2013 the Court denied the application of **ABID**.

137. The Court noted that the appeal should have been filed by January 11.

138. The Court specifically noted that:

> *The untimely notice of appeal is part of a larger pattern in this case: Abid has also failed to answer in a timely fashion, and has thus been the subject of three orders to show cause for default judgment.*

139. To preserve the record, we respectfully submit:
    u. The **second** OSC was due to the **first** OSC being cancelled.
    v. The reason for the cancellation was Hurricane Sandy.
    w. The courthouse was closed due to the flooding conditions and utility outages in Manhattan south of 34th Street.
    x. There is nothing in the record to indicate that **ABID** was in any manner responsible for either the hurricane, the flooding, the utility outages, or the courthouse being closed.
    y. As such, it is not entirely fair to blame a litigant for a court closing due to a hurricane.
    z. The January 17 OSC was issued and stated "plaintiff has already **once** sought a default judgment against Abid" (emphasis added).
    aa. That OSC went on to state in referring to the December 10 appearance:
    > *At the same conference, the Court instructed counsel for Abid to file a notice of appearance on ECF by the end of the day and to respond to Kreisler's complaint within three days.*
    bb. Counsel for **ABID** had previously ordered the transcript of the December conference.
    cc. That transcript is part of the record in this case.
    dd. That transcript was read by the Court and cited twice in the January OSC.
    ee. The passage cited above relating to counsel failing to comply with a Court instruction did not cite to the transcript.
    ff. The transcript does not indicate that there was any time at which the Court went off the record.
    gg. Within a few hours of the Court order being transmitted via ECF, counsel did respond to the Court and noted the sole reference to a three day time frame.
    hh. That reference is at page 24 lines 17 thru 19, where the Court addresses Mr. Frank.

      ii. That passage reads:

> *You will have three business days to respond to any application that Mr. Shore makes with regard to costs by your client. OK?*

      jj. As noted in counsel's response in the January 17 letter, that appeared to be discussing a different matter—a prospective application which was never made—and <u>not</u> a directive to file an Answer.

140. To the extent that any judicial decision is based on facts dehors the record, potentially aggrieved litigants are placed in a problematic position.

141. In this instance, a litigant has two successive judicial decisions which reflect a basis in an event (non-compliance with an order of a court) that is both serious and dehors the record.

142. To preserve the record, we also would clarify the situation regarding Footnote 1 of the Court's January 17 OSC; that also is pertinent to the final paragraph of the Court's January 22 denial of Abid's application for an extension of time to file an appeal.

143. The footnote reads in its entirety:

> *The Court notes that on January 15, 2013, Barry N. Frank, Esq., counsel for Abid, filed a notice of interlocutory appeal, Dkt. 44, from the default judgment entered against Parker, Dkt. 39. Parker is a different defendant than Abid. Parker never made an appearance before this Court, and Mr. Frank, in belatedly appearing before the Court at the December 10, 2012 conference on behalf of Abid, affirmatively stated that he did not represent Parker. Tr. 16*

144. The implication of the footnote is that attorney Barry Frank was not candid before the Court at the December 10 conference.

145. To the extent that implication is accurate, it is important to note the falsity of the implication.

146. **N.B.**:Presumably the Court is using "*Parker*" to refer to **PARKER EAST**; but given the confusion we shall refer to either **PARKER EAST**, or **PARKER 24**, or if referring to both collectively we shall refer to the **PARKER ENTITIES**.

147. Abid was not even a named party in the original Complaint.

148. Presumably attorneys Adam Shore and Gary Ehrlich were aware of the various Parker entities, and the extent of **PARKER EAST**'s interest (or more accurately, the lack thereof) in the subject premises.

149. Attorney Shore has chosen not to do any discovery against the lessor of the proprietary leases, an odd choice which has resulted in this Court issuing an Order against a party which as a matter of law may not have any relation to this case.

## **DETERMINATION AS TO THE PROPER DEFENDANTS IS NECESSARY IN ORDER FOR THE MOVANT TO PROPERLY DEFEND THIS ACTION**

**150.** For the reasons set forth in this Motion, it is not clear as to who the proper parties to this action should be.

**151.** Indeed, the Court itself discussed "the interest of the ultimate owner" (T. at 9 line 7-8):

> **The Court:** *A portable ramp, I take it, is by its nature not something that's likely to affect the interest of the ultimate owner, correct?*
> **Mr. Shore:** *Correct. Right.*

**152.** It is not clear from the record, nor from the transcript of the December 10 proceeding, who the Court is referring to.

**153.** While Mr. Shore, Mr. Ehrlich, and the Court may be clear as to "the interest of the ultimate owner" we would for purposes of the appellate record respectfully request that this be clarified.

154. The "ultimate owner" would appear to be a proper defendant under the relevant federal statute. If the "ultimate owner" is a non-party and the Court was using shorthand which was obviously understood by attorney Shore, the context of the colloquy suggests that it is not one of the named defendants. Given that Mr. Shore and Mr. Ehrlich have been involved in the case from commencement and that Mr. Shore when amending his complaint chose to name a defendant with no discernible interest in the property, it may be that the "ultimate owner" is referring to **PARKER 24**. But again, this is not clear and it would be appreciated if this were clarified.

155. The Court has expressed displeasure with the failure of Abid to file an Answer.

156. We would assume that the Court has knowledge of the various Parker Entities and of Kam Four; certainly attorney Shore has (or should have) knowledge and has made a tactical decision not to name those entities as defendants.

157. Given that the Court has reprimanded attorney Frank and required that he submit an attorney declaration as to the delay in filing an Answer, it is assumed that the Plaintiff will

not be amending his Complaint any further. That fact would not necessarily mean that <u>Abid</u> is able to file a proper Answer and Cross-claims.

158. We would therefore request that this be clarified, and that Abid be granted an opportunity to engage in appropriate motion practice if necessary.

159. Therefore we would request an extension sine die with respect to the filing of an Answer.

160. It should be noted that the original Complaint named 2 defendants. One of those parties was not a proper party as a matter of law, and was dismissed pursuant to Stipulation.

161. The Amended Complaint named 3 defendants. One of those parties was not a proper party as a matter of law; this is either known to the Plaintiff or should have been known with basic discovery—which the Plaintiff made a tactical decision not to perform.

162. The Amended Complaint <u>failed</u> to name 2 putative defendants. One of them was the proprietary leaseholder—information which the Plaintiff could have obtained from attorney Ehrlich if the Plaintiff had not chosen to refrain from discovery. The second was the operator of the establishment—information which plaintiff's counsel could have obtained by looking at the wall during his $680.00 visit to the establishment, or by looking in the online database of the municipality.

163. It is certainly the right of a Plaintiff (by his attorney) to make tactical decisions as to whom to sue and whom to refrain from suing. And it is not the obligation of a defendant's counsel to assist plaintiff's counsel in making those tactical decisions.

164. Messrs. Shore & Ehrlich have been involved in this case, and it is not for Abid's counsel to provide a rationale for the tactical decisions of other parties. However it is incumbent upon any defense counsel to take sufficient time to perform due diligence prior to filing an Answer; such is particularly the case where there are facially illogical aspects to the litigation which took place prior to the new defendant being named.

## **VACATUR OF DEFAULT JUDGMENT**

165. For the reasons as set forth above, in the event that the Court declines to stay enforcement of the remedial mandates embodied in the **PARKER EAST** default judgment: We respectfully seek relief pursuant to FRCP Rule 55 (c) and also pursuant to FRCP Rule 60 (b) sections (1), (4), and (6).

Wherefore, the movant/defendant requests an Order granting the following:

1.) Vacatur of the Judgment and Orders of December 2012 to the extent the Court has imposed relief that impacts the instant Movant (Kais Abid);

2.) In the Alternative, staying that portion of relief which would result in the shutdown of Abid's business operation;

3.) Reconsidering and recalculating that portion of relief granting a monetary award to the Plaintiff;

4.) Reconsidering and recalculating that portion of relief granting attorney fees to Adam Shore, Esq.;

5.) Imposing sanctions and costs against both the plaintiff and against Adam Shore in his personal capacity;

6.) Dismissal of this action with prejudice;

7.) Reconsideration of the January 2013 Order;

8.) Granting Declarative Relief by determining the legal relationship (if any) between Parker East 24th Apartments LLC and non-party Parker 24 Commercial Associates (purportedly a New York limited partnership);

9,) Vacatur of the December Orders in their entirety in the event the relationship between Parker East and Parker 24 is Judicially determined to be of a nature which results in liability pursuant to the premises lease between Abid and Parker 24 (i.e. that Abid is deemed to be an indemnitor of Parker East);

10.) Any and all other relief that the Court shall deem appropriate under the circumstances.

Dated: Fort Lee, New Jersey, January 24, 2013

                              **Law Firm of Barry N. Frank & Associates PC**
                              *Attorneys for the Defendant, Kais Abid*
                              BY: ____/s/ Barry N. Frank, Esq.
                                    440 West Street, 3rd Floor
                                    Fort Lee, New Jersey  07024
                                    201-461-2500