**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Todd **KREISLER,**

|  |  |
|---|---|
| Plaintiff, | **12 civ. 4052 (PAE)** |
| v. | |
| Kais **ABID,** | |
| *d/b/a PAPA JOHN'S;* | |
| **PARKER EAST 24TH APARTMENTS LLC**, | |
| *A New York Limited Liability Company;* | **RESPONSE** |
| **305 EAST 24TH OWNERS CORP**., | |
| *A New York Corporation* | |
| | |
| Defendants. | |

In a letter to this Court dated January 25, 2013 the attorney for the plaintiff requested to file "*a Second Motion to Amend the Complaint, for the purpose of,* inter alia*, adding an additional defendant*"

On January 30, the Court entered the attorney letter as document 55 in this case, and Ordered: "*Defendants are directed to respond to plaintiff's request to amend his complaint*."

In compliance with said Order defendant, Kais **ABID**, by his attorney Barry N. Frank Esq., respectfully responds as follows:

1. Insofar as the Court seeks a response regarding a request to file a **Motion** to Amend (which is the language of the letter from Plaintiff's counsel to the Court), the defendant takes no position at this time and respectfully reserves all rights to respond to any such motion.

2. Insofar as the Court seeks a response regarding a **request** to Amend (which is the specific language of the Order, and which indicates that the Court is deeming the January 25 letter as having the effect of a Motion), the defendant presumes that the Court is taking the matter under consideration pursuant to FRCP 15(a)(2).

3. That Rule provides for two distinct situations: on written consent or with the court's leave, and we shall deal with these situations in turn.

4. As a threshold matter, your respondent observes that it is not clear what the amended complaint would contain.

5. "Inter alia" is a designedly nonspecific term: as famed Michigan Supreme Court reporter Henry Chaney observed: *"Among other things" is precisely what "inter alia" means; no less and no more*, Chaney, *Legal Verbiage*, 4 MICH. L.J.109, 112 (1895).

6. By definition therefore, the defendant is being asked to consent (or refuse to consent) to something whose impact is known only to the moving party.

7. For that reason alone, the defendant respectfully does not consent.

8. If the counterparty does not consent pursuant to 15(a)(2), the Court may grant leave, and that is a matter within the province of the Court.

9. Although the lack of clarity as to the contents of any prospective third iteration of the Complaint renders a response difficult, to the extent that the Court seeks the input of the defendant as to the prospective granting of leave pursuant to FRCP 15(a)(2), the defendant does not assent.

10. This action was commenced by the filing of a Complaint on May 22, 2012.

11. Your respondent was <u>not</u> named in the initial complaint.

12. The plaintiff has already been permitted to amend the complaint.

13. The court's discretion is particularly broad where the court has already permitted prior amendments, <u>Aloe Vera of America v. US</u>, 233 F.R.D. 532, 536 (D. Ariz. 2005)

14. While in most cases delay alone is not a sufficient reason for denying leave, an amendment may be properly denied when the movant has delayed and thereby prejudiced another party, WRIGHT, MILLER & KANE, FEDERAL PRACTICE & PROCEDURE:CIVIL 3d §1488 (2013).

15. Additional expense on an opposing party may constitute bad faith motive and weigh against granting of leave to amend, <u>Millar v Bay Area Rapid Transit</u>, 236 F.Supp.2d

1110, 1113 (N.D. Calif. 2002), as may the impact on judicial economy and the court's ability to manage its docket, <u>Id</u>.

16. **<u>Two hundred and forty nine days after commencing this action</u>** plaintiff's counsel is seeking to add an additional defendant.

17. During the first 204 days alone, plaintiff's counsel claims to have spent **$21,559.50** in the prosecution of this action.

18. One of those expenditures was the amount of $680 for plaintiff's counsel allegedly "viewing facility" for 96 minutes (Docket 35-1 at 5).

19. Plaintiff counsel has an office at 100 Park Avenue, at 41st Street.

20. The subject premises is located at 432 Second Avenue, between 24th and 25th Streets.

21. According to Mapquest, that is a distance of 1.1 miles; for a round-trip of 2.2 miles.

22. The average taxi speed in the area from 60th Street to the Battery is 9.5 miles per hour, according to municipal data, Michael H. Grynbaum, *Gridlock May Not Be Constant, but Slow Going Is Here to Stay*, N.Y. **TIMES**, March 23, 2010, *available at* http://www.nytimes.com/2010/03/24/nyregion/24traffic.html?_r=0

23. That suggests that plaintiff's counsel spent 82 minutes on-site, less any time spent in the elevator going from his office to the street and vice versa.

24. ***N.B.:*** Our actual test showed 7 minutes one way and 5 minutes the other way, for a total of 12 minutes which would have resulted in 84 minutes on-site, less time in the elevator at 100 Park Avenue. (Exhibit "A" attached.)

25. The public space is roughly 140 square feet; meaning that plaintiff's counsel could have spent 1.7 minutes standing on <u>each</u> square foot of public space and observing from <u>each</u> of those 140 vantage points.

26. Plaintiff's counsel has such extraordinary expertise and ability that his lodestar computation—approved by this Court—does not even have a reduced rate for attorney travel time as would be "customary" in the Southern District, <u>Spalluto v. Trump Int'l Hotel & Tower</u>, 2008 WL 4525372 at *11 (S.D.N.Y. 2008), *citing* <u>In re Painewebber Ltd. P'ships Litig.</u>, 2003 WL 21787410 at *4 (S.D.N.Y. 2003).

27. Plaintiff's counsel is also well-versed in this type of litigation. While it is true that most of counsel's pleadings are boilerplate (and originated with former co-counsel Bradley

Weitz), that very fact means that counsel is able to devote time to the particularized aspects of each case in a manner that lesser attorneys would not be able to do.

28. While plaintiff's counsel will no doubt enlighten the Court in due time, at present he enumerates with specificity a sole item: "*adding an additional defendant, Kam Four, Inc.*"

29. Plaintiff's counsel modestly fails to disclose the reason why after **294** days of litigation he is seeking to name Kam Four as a defendant.

30. Presumably the reason is that Kam Four is the entity which is named as the premises operator on the NYS Department of Taxation & Finance Certificate of Authority. (Exhibit "B").

31. Or perhaps it is because Kam Four is the entity which is named on the NYC Health Department permit.(Exhibit "C")

32. Or perhaps it is because Kam Four is the entity which is named on the NYC DoH inspections, including the public online database.

33. While not able to read the mind of counsel, the defendant can unequivocally state to this Court that those documents are posted and/or available as required by law.

34. Plaintiff's counsel does not even allege, let alone provide a scintilla of evidence to suggest, that there has not been compliance with relevant statute, including but not limited to NY Tax Law § 1134(a)(2).

35. Nor does plaintiff's counsel allege that the Department of Health permit was in a name other than the name of Kam Four, nor does he allege that the permit was not visible, nor does he allege that he asked to see the permit and was denied.

36. It is true that a lack of diligence after ascertaining a corporate defendant may not be fatal to a motion to amend, Swartz v. Gold Dust Casino, 91 F.R.D. 543, 546 (D. Nevada 1981) but that does not mean that a deliberate failure to draft a proper complaint should be excused, let alone encouraged.

37. The overwhelming case law regarding such situations does <u>not</u> address litigation in which there is a fee-shifting statute.

38. In the instant litigation, for the reasons shown above, the actual <u>legal name</u> of the purportedly "newly discovered" party should have been known to exist but was not even named as a <u>fictitious</u> party.

39. In the instant case, there is no indication that plaintiff even attempted to ascertain the operator of the facility.

40. Had plaintiff's counsel bothered to verify that the named parties were the holders of a DoH permit and/or Certificate of Authority, he would have discovered at very least that it was necessary to name a fictitious party… of course, that presumes that plaintiff's counsel truly *desired* to file a proper complaint at the outset.

41.  Counsel provides no explanation for the delay.

42. This Court may properly consider the failure to explain such an obvious "oversight," particularly when the delay appears to be tactical or designed to force settlement, <u>GSS Properties Inc. v. Kendale Shopping Ctr Inc</u>., 119 F.R.D. 379, 381 (M.D. N.C. 1988); such is particularly a concern in litigation providing for a one-sided fee-shifting statute.

43. Even if counsel who has filed dozens of ADA complaints against food establishments up and down the island of Manhattan was lacking in basic knowledge, such ignorance would not excuse the failure to name Kam Four, *see* <u>Carrol v. Stryker Corp.</u>, 658 F.3d 675, 685 (7 Cir. 2011).

44. Likewise, the plaintiff himself—having filed 20 lawsuits against food establishments in Manhattan and therefore having detailed knowledge of food establishment operations—either failed to raise this issue, or plaintiff and counsel *chose* to not name the operating entity which held the Certificate of Authority and DoH operating permit.

45. This court has already been amenable to the requests of movant's counsel:

   a. The court took the unusual step not simply of ordering compliance with a statute, but ordering a specific **<u>method</u>** of compliance.

   b. That specific method was ordered without so much as a nod to the predicate finding under 28 C.F.R. 36.304(e).

   c. That specific method was ordered—at the request of plaintiff's counsel—without discussion as to whether any of the multitude of requirements of 28 C.F.R. § 36 were met and/or could be met by the party subject to the order.

   d. Despite the filing of a "So Ordered" stipulation, plaintiff's counsel violated the terms of the Order in filing a fee application which contradicted the Order and the Court approved the fee application.

46. As one court noted in denying leave to amend: "There is a minimal level of diligence and competence that must be employed by parties to a lawsuit," <u>Ferrell v. Busbee</u>, 91 F.R.D. 225, 232 (N.D. Georgia 1981).

47. Most importantly, the remedial action directed by the Court is one which would lead to the creation of a hazardous condition and subject others (including your respondent) to liability under 29 U.S.C. § 654(a).

48. Despite the severe problems with the remedial action directed by the Order, this Court denied your respondent's request for leave to file an appeal on the grounds that the deadline was missed by a mere **6** days.

49. Given that plaintiff's counsel is seeking to only now—after **249** days—to amend his complaint, we respectfully submit that the plaintiff's request is not timely by the standards of this Court.

50. Your respondent realizes that the plaintiff in this case (Todd **KREISLER,** by his attorneys Adam Shore and Bradley Weitz), previously (<u>Kreisler v. Lin's Gourmet</u>, 09-cv-8620) managed to get the S.D.N.Y. to seal documents relating to plaintiff's attorney misconduct, despite the strong public policy favoring transparency in judicial proceedings and despite the fact that adversary consent to removing the public document was "*part of the settlement of [*the*] matter*" <u>Id</u>. at Docket 27 page 5.

51. Your respondent also takes cognizance of the line of thought within the ADA title III defense bar that judicial acceptance of the practice of paying off plaintiffs' counsel and performing remedial relief by means of a portable ramp is one which results in cost *savings* to the targeted business, albeit a remedy non-compliant with statute and potentially dangerous.

52. Notwithstanding the foregoing points, your respondent respectfully submits that in this instance plaintiff has

    a.  obtained a judgment against a party who states it has no interest in the property,

    b.  obtained a monetary award in conflict with a "So Ordered" stipulation,

    c.  failed to satisfy a predicate requirement for the specific remedy sought,

    d.  submitted a billing record which is highly questionable, and has

    e.  previously had to get court records sealed which related to attorney misconduct.

53. The totality of behavior may be properly considered in determining bad faith in connection with a Rule 15(a) application.

54. Should the Court grant the plaintiff leave to amend the Complaint, we would respectfully note that the court may condition any ruling so as to do justice to all, <u>Etablissements Neyrpic v. Elmer C. Gardner, Inc</u>., 175 F.Supp. 355, 357 (S.D. Tex. 1959) and we would ask the Court to consider that the one-sided fee-shifting statute in this case incentivizes plaintiff's counsel to "forget" to perform basic pre-suit inquiry.

Wherefore, the defendant respectfully defers to the discretion of the Court and reserves all remedies at law.

Fort Lee, New Jersey

January 31, 2013

                                          **Law Firm of Barry N. Frank & Associates PC**
                                          *Attorneys for the Defendant, Kais Abid*
                                          BY: _____/s/ Barry N. Frank, Esq.
                                                    440 West Street, 3rd Floor
                                                    Fort Lee, New Jersey  07024
                                                    201-461-2500