**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Todd KREISLER,

|                                         |                                         |
| --------------------------------------- | --------------------------------------- |
| Plaintiff,                              | **12 civ. 4052 (PAE)**                  |
| v.                                      |                                         |
| Kais ABID,                              |                                         |
| *d/b/a PAPA JOHN'S;*                    |                                         |
| PARKER EAST 24TH APARTMENTS LLC,        | **RESPONSE PURSUANT TO**                |
| *A New York Limited Liability Company;* | **COURT ORDER OF 28 FEB 2013**          |
| 305 EAST 24TH OWNERS CORP.,             |                                         |
| *A New York Corporation*                |                                         |
|                                         |                                         |
| Defendants.                             |                                         |

1. The Court's Order of February 28, 2013 (Dkt. 63) directs this Defendant to provide the
   Court with on-point authority for the proposition that the Defendant has standing to
   challenge the award of damages or attorney fees against a co-defendant.

### JUS TERTII ANALYSIS IS AN APPROPRIATE GUIDE IN THIS INSTANCE

2. The Court correctly notes that your Affirmant has declined to speak for the (defaulting)
   co-defendant PARKER EAST and indeed has stated that PARKER EAST is a stranger at law
   to defendant ABID.

3. Respectfully we submit that the starting point is properly within conventional *jus tertii* jurisprudence, although customarily *jus tertii* deals with <u>commencement</u> of litigation and we are not able to locate a case involving post-judgment application of *jus tertii* principles in a default setting.

4. Since the award itself is a final award, by definition this Court is satisfied that Article III requirements have been met.

5. The explicit statement by counsel for the defaulting party *(as set forth in his letter and attached as an exhibit to our Omnibus Motion, Dkt 54-3)* that the defaulting party holds **ABID** responsible for payment would, we respectfully submit, constitute an injury in fact sufficient to meet the threshold requirement.

6. This leaves a two-prong test, *Powers v. Ohio* 499 U.S. 400, 411 (1991):

   a. does **ABID** have a "close relationship" with **PARKER EAST**, and

   b. is **PARKER EAST** under a "hindrance" such that it cannot properly protect its own interests.

7. Arguably the answer to both prongs is a resounding "No" and that is a matter on which your Affirmant likely finds agreement with this Court.

8. We are also mindful of the "tortuous course of litigation, especially in the City of New York," *Wilko v. Swan*, 346 U.S. 427, 440 (1953, *Frankfurter, J., dissenting*) and have no desire to prolong this litigation.

9. Nevertheless, your Affirmant is merely counsel to a party and neither a federal nor state jurist.

10. Counsel to a party must at all times be cognizant of the potential for application of res judicata in a future proceeding.

11. As Justice Stevens noted in dissent, *Martin v. Wilkes*, 490 U.S. 755, 771-2 (1989):

> Persons who have no right to appeal from a final judgment -- either because the time to appeal has elapsed or because they never became parties to the case -- may nevertheless collaterally attack a judgment on certain narrow grounds. If the court had no jurisdiction over the subject matter, or if the judgment is the product of corruption, duress, fraud, collusion, or mistake, under limited circumstances it may be set aside in an appropriate collateral proceeding. [cite omitted]. This rule not only applies to parties to the original action, but also allows interested third parties collaterally to attack judgments. In both civil and criminal cases, however, the grounds that may be invoked to support a collateral attack are much more limited than those that may be asserted as error on direct appeal.  Thus, a person who can foresee that a lawsuit is likely to have a practical impact on his interests may pay a heavy price if he elects to sit on the sidelines instead of intervening and taking the risk that his legal rights will be impaired.

### THE FIRST PRONG OF *POWERS*: DOES PARKER EAST HAVE A CLOSE RELATIONSHIP?

12. Counsel for **PARKER EAST** claims to have a close relationship with **ABID** by virtue of **PARKER EAST** relationship with a non-party (**PARKER 24**) which *(as discussed in our Omnibus Motion)* may not even have a valid existence under applicable state law.

13. Counsel for **PARKER EAST** maintains this position even while maintaining that **PARKER EAST** does not have any ownership interest in **PARKER 24**.

14. The foregoing conclusion by counsel for **PARKER EAST** strikes your Affirmant as not tenable under New York law, particularly insofar as it is predicated on a purported

contractual obligation despite a conceded double lack of privity: first between **PARKER EAST** and **PARKER 24**, and secondly between **PARKER EAST** and **ABID** .

15. Nevertheless, counsel for the various Parker entities and the representative of the Parker entities (Ms. Cynthia Wong) suggest that they shall seek to pursue state law contribution, presumably in a Part 52 Summary Proceeding.

16. Indeed, at 4:22pm the day after the Court issued the February 28 Order, Ms. Wong sent an email to **ABID** (annexed hereto).

17. The reasoning of counsel to the Parker entities may violate basic sentential logic, but your Affirmant has an obligation to zealously represent the interests of his client and cannot assume that the state court judge is going to agree with **ABID**—particularly in Part 52.

18. While it is true that "federal and state courts are complementary systems for administering justice in our Nation. Cooperation and comity, not competition and conflict, are essential to the federal design," *Ruhrgas A.G. v. Marathon Oil Co*., 526 U.S. 574, 586 (1999), there is a possibility that a state court may reconcile the 2 default judgments in a manner which would lead to contractual and/or common law liability on the part of **ABID**, which is why we moved for clarification and why we have appealed.

19. As previously noted in our Motion for Clarification (Dkt. 61), the award of attorney fees pursuant to statute is <u>entirely</u> derivative of success under the *Buckhannon* standard [532 U.S. 598 (2001)].

20. We are aware that there is a strain of thought in S.D.N.Y. and E.D.N.Y. which in practice has rejected *Buckhannon*, and that plaintiff's attorneys often simply ignore *Buckhannon*.

21. The fact remains that *Buckhannon* has not been overruled, and therefore it must be followed.

22. Justice Jackson criticized those who would find regard for precedents "obsolete" and famously said of the Court: "We are not final because we are infallible, but we are infallible only because we are final," *Brown v. Allen*, 344 U.S. 443, 541 (1953, *Jackson, J., concurring*).

23. Assuming a state court will respect Supreme Court precedent and assume that it was brought to the attention of the federal court, a Part 52 judge may well come to a conclusion that a prior S.D.N.Y. proceeding did *de facto*—due to the awarding of attorney fees <u>pursuant to statute and comporting with *Buckhannon*</u>—necessarily determine liability did exist for violation of the Americans With Disabilities Act, and hence proceed to the matter of any obligation of **ABID**.

24. There still would remain the matter of who is actually the holder of the proprietary lease, and who is the sub-lessor to **ABID**. But again, your Affirmant would note that the position taken by the Parker entities in the likely state court proceeding may be different from the Parker position taken in the federal court proceeding, and counsel for **ABID** has an obligation to represent not only the client's immediate interests but also to conduct the instant representation with a view toward any prospective estoppel issues.

25. ***N.B.:*** Your Affirmant is not without understanding of the position of the Court viz the award of attorney fees under the fee-shifting provisions of the A.D.A. However as noted in our Motion for Clarification, the Court may choose to vacate the attorney fee award on the narrow ground that there has not been a court judgment issued which comports with the *Buckhannon* requirements. The Court may also choose to revisit the attorney fee

award on the basis that the attorney seeking the award (Adam Shore, Esq.) did not disclose to the Court the fact that the remedial relief sought would necessitate ripping out fixtures and moving load-bearing walls. Although your Affirmant had not visited the premises at the time of the December hearing, the counsel seeking fees (Adam Shore, Esq.) has submitted a fee application in which he states that he personally has visited the premises and in addition that counsel had retained an expert to evaluate the premises.

## THE SECOND PRONG OF *POWERS*: IS PARKER EAST UNDER A HINDRANCE IN PROTECTING ITS INTERESTS?

26. The second *jus tertii* prong requires judicial determination as to whether **PARKER EAST** is under a "hindrance" in protecting its own interests.

27. This latter prong is not likely to be met.

28. **PARKER EAST** is a sophisticated party.

29. **PARKER EAST** is an affiliate of the persons who operate the famed Parker Meridien hotel.

30. **PARKER EAST** is represented by Seyfarth Shaw, an 800+ attorney firm which boasts that its Labor & Employment practice is ranked in the "top tier" by *U.S. News & World Report*.

31. **PARKER EAST** hardly seems to be under any "hindrance" in defending itself in litigation.

## IS THE ATTORNEY FEE-SHIFTING AWARD VALID?

## IS THE AWARD DETERMINATIVE OF LIABILITY AGAINST ABID?

32. Despite being represented by a major law firm, **PARKER EAST** has pursued a facially

    illogical legal strategy, and to the extent that outside counsel has set forth a basis for

    seeking indemnification from **ABID**, that basis is predicated on the Parker entities

    voluntarily defaulting and disregarding the corporate form with respect to 2 of the Parker

    entities.

33. It may be that **PARKER EAST** has pursued a litigation strategy mindful of plaintiff's

    failure to name indispensable parties (*i.e.*, Kam Four and Parker 24) both in the initial

    Complaint and in the Amended Complaint; as Justice Brandeis observed:

> The law does not impose upon any person absolutely entitled to a
> hearing the burden of voluntary intervention in a suit to which he is
> a stranger… Unless duly summoned to appear in a legal
> proceeding, a person not privy may rest assured that a judgment
> recovered therein will not affect his legal rights. *Martin v. Wilkes*,
> 490 U.S. 755, 763 (1989), citing *Chase National Bank v. Norwalk*,
> 291 U.S. 431, 441 (1934).

34. Since the judgment against **PARKER EAST**:

    a.  may not affect the legal rights of non-parties to the suit, and

    b.  both the true holder of the proprietary lease at issue and the operating entity of the

        franchised QSR were non-parties, and

    c.  constitutional principles preclude the judgment from affecting the legal rights of

        parties not named in a suit, and

    d.  since any judgment may not affect those legal rights, and

    e.    the remedy granted in this case would result in tearing up fixtures and rendering the business inoperable,

    f.    there can be no "material alteration" in the relationship between the plaintiff and the defendant, and

    g.    if there is no material alteration then the *Buckhannon* standard has not been met, then

    h.    the attorney fee-shifting award is impermissible as a matter of law to the extent that the award relies on *Buckhannon* principles (as the award appears to rely upon).

35. Whether counsel for the Parker entities has executed a smart legal strategy or simply bumbled into it, the result in this case is a stalemate.

36. In fact, there is support for the proposition that the case is now **moot**, as we set forth in our Motion for Clarification (Dkt. 61).

37. While ABID does not believe that the position taken by counsel for the Parker entities is valid under state law, the likelihood is that the December default judgments granted in this Court will ultimately lead to litigation in state court.

38. Customary jus tertii scenarios do not involve fee-shifting statutes.

39. The presumption against third-parties litigating is based on the premise that the primary party has an incentive to act as any other party would act with respect to protecting its own interests.

40. The perverse incentives created by fee-shifting statutes can result in situations where the *Powers* 2-prong test is not met, and yet there is a need to provide for third-party standing.

41. It is by no means clear that the instant case has not become moot.

42. But **if** this case is not moot, **ABID** respectfully requests that this Court consider revisiting the issue of the default judgments at least to the extent that the question of collateral consequences to **ABID** will occur in a venue which may apply *Buckhannon* in a manner not intended by this Court.

Fort Lee, New Jersey

March 5, 2013

       **Law Firm of Barry N. Frank & Associates PC**
       *Attorneys for the Defendant, Kais Abid*
       BY: ____/s/ Barry N. Frank, Esq.
         440 West Street, 3rd Floor
         Fort Lee, New Jersey  07024
         201-461-2500

*Filed via ECF filing*

---------- Forwarded message ----------
From: **Cynthia Wong** <cwong@jackparkercorp.com>
Date: Fri, Mar 1, 2013 at 4:22 PM
Subject: FW: Kreisler Developments
To: Kais abid <kais.abid@gmail.com>


Kais,

Your motion was denied.  We need to settle this or else, we will only be spending more money.

===============

Cynthia M. Wong

The Jack Parker Corporation

118 West 57th Street

New York, New York 10019

Tel:  212-333-3353 Ext. 6215

Fax: 212-333-3466

Cell: 718-755-4513

cwong@jackparkercorp.com