STANDARD FORM OF STORE LEASE
The Real Estate Board of New York, Inc.

**AGREEMENT OF LEASE,** made this ___ day of February, 2007, between **PARKER 24 COMMERCIAL ASSOCIATES**, with offices at 1700 Broadway, 34th Floor, New York, NY, party of the first part, hereinafter referred to as LANDLORD and KAIS ABID, individually, with offices at _300 Johns 21 Maiden LA_ New York, New York, _10030_ hereinafter referred to as TENANT.

**Witnesseth:** Landlord hereby leases to Tenant and Tenant hereby hires from Landlord, the ground floor retail space and the basement space located at 432 Second Avenue, New York, New York 10010 (the **"Building"**), for a term of ten (10) Lease Years (or until such term shall sooner cease and expire as hereinafter provided) to commence on the Commencement Date (as defined in the Rider attached hereto) and to end on the last day of the month in which occurs the 10th anniversary of the Commencement Date (or such earlier date upon which the term of this Lease shall expire, be cancelled or terminated pursuant to any of the terms or covenants of this Lease). The date this Lease ends shall be referred to as the (**"Expiration Date"**)

The parties hereto, for themselves, their heirs, distributees, executors, administrators, legal representatives, successors and assigns, hereby covenant as follows:

Rent: 1. Tenant shall pay the rent as above and as hereinafter provided.

Occupancy: 2. Tenant shall use and occupy demised premises for the use described in Article 41, of the Rider which is attached hereto. and for no other purpose. Tenant shall at all times conduct its business in a high grade and reputable manner, shall not violate Article 37 hereof, and shall keep show windows and signs in a neat and clean condition.

Alterations: 3. Tenant shall make no changes in or to the demised premises of any nature without Owner's prior written consent. Subject to the prior written consent of Owner, and to the provisions of this article, Tenant, at Tenant's expense, may make alterations, installations, additions or improvements which are non-structural and which do not affect utility services or plumbing and electrical lines, in or to the interior of the demised premises by using contractors or mechanics first approved in each instance by Owner. Tenant shall, before making any alterations, additions, installations or improvements, at its expense, obtain all permits, approvals and certificates required for any governmental or quasi-governmental bodies and (upon completion) certificates of final approval thereof and shall deliver promptly duplicates of all such permits, approvals and certificates to Owner and Tenant agrees to carry and will cause Tenant's contractors and sub-contractors to carry such workmen's compensation, general liability, personal and property damage insurance as Owner may require. If any mechanic's lien is filed against the demised premises, or the building of which the same forms a part, for work claimed to have done for, or materials furnished to, Tenant, whether or not done pursuant to this article, the same shall be discharged by Tenant within 30 days thereafter, at Tenant's expense, by payment or filing the bond required by law. All fixtures and all panelling, partitions, railings and like installations, included in the premises at any time, either by Owner or Owner on Tenant's behalf, shall, upon installation, become the property of Owner and shall remain upon and be surrendered with the demised premises unless Owner, by notice to Tenant no later than twenty days prior to the date fixed as the termination of this lease, elects to relinquish Owner's rights thereto and to have them removed by Tenant, in which event, the same shall be removed from the premises by Tenant prior to the expiration of the lease, at Tenant's expense. Nothing in this article shall be construed to give Owner title to or to prevent Tenant's removal of trade fixtures, moveable office furniture and equipment, but upon removal of any such from the premises or upon removal of other installations as may be required by Owner, Tenant shall immediately and at its expense, repair and restore the premises to the condition existing prior to installation and repair any damage to the demised premises or the building due to such removal. All property permitted or required to be removed by Tenant at the end of the term remaining in the premises after Tenant's removal shall be deemed abandoned and may, at the election of Owner, either be retained as Owner's property or may be removed from the premises by Owner at Tenant's expense.

Repairs: 4. Owner shall maintain and repair the public portions of the building, both exterior and interior, except that if Owner allows Tenant to erect on the outside of the building a sign or signs, or a hoist, lift or sidewalk elevator for the exclusive use of Tenant, Tenant shall maintain such exterior installations in good appearance and shall cause the same to be operated in a good and workmanlike manner and shall make all repairs thereto necessary to keep same in good order and condition, at Tenant's own cost and expense, and shall cause the same to be covered by the insurance provided for hereafter in Article 8. Tenant shall, throughout the term of this lease, take good care of the demised premises and the fixtures and appurtenances therein, and the sidewalks adjacent thereto, and at its sole cost and expense, make all non-structural repairs thereto as and when needed to preserve them in good working order and condition, reasonable wear and tear, obsolescence and damage from the elements, fire or other casualty, excepted. If the demised premises be or become infested with vermin, Tenant shall at Tenant's expense, cause the same to be exterminated from time to time to the satisfaction of Owner. Except as specifically provided in Article 9 or elsewhere in this lease, there shall be no allowance to the Tenant for the diminution of rental value and no liability on the part of Owner by reason of inconvenience, annoyance or injury to business arising from Owner, Tenant or others making or failing to make any repairs, alterations, additions or improvements in or to any portion of the building including the erection or operation of any crane, derrick or sidewalk shed, or in or to the demised premises or the fixtures, appurtenances or equipment thereof. It is specifically agreed that Tenant shall not be entitled to any set off or reduction of rent by reason of any failure of Owner to comply with the covenants of this or any other article of this lease. Tenant agrees that Tenant's sole remedy at law in such instance will be by way of an action for damages for breach of contract. The provisions of this Article 4 with respect to the making of repairs shall not apply in the case of fire or other Casualty which are dealt with in Article 9 hereof.

Window Cleaning: 5. Tenant will not clean nor require, permit, suffer or allow any window in the demised premises to be cleaned from the outside in violation of Section 202 of the New York State Labor Law or any other applicable law or of the Rules of the Board of Standards and Appeals, or of any other Board or body having or asserting jurisdiction.

Requirements of Law, Fire Insurance: 6. Prior to the commencement of the lease term, if Tenant is then in possession, and at all times thereafter, Tenant, at Tenant's sole cost and expense, shall promptly comply with all present and future laws, orders and regulations of all state, federal, municipal and local governments, departments, commissions and boards and any direction of any public officer pursuant to law, and all orders, rules and regulations of the New York Board of Fire Underwriters or the Insurance Services Office, or any similar body which shall impose any violation, order or duty upon Owner or Tenant with respect to the demised premises, and with respect to the portion of the sidewalk adjacent to the premises, if the premises are on the street level, whether or not arising out of Tenant's use or manner of use thereof, or with respect to the building if arising out of Tenant's use or manner of use of the premises or of the building (including the use permitted under the lease). Except as provided in Article 29 hereof, nothing herein shall require Tenant to make structural repairs or alterations unless Tenant has by its manner of use of the demised premises or method of operation therein, violated any such laws, ordinances, orders, rules, regulations or requirements with respect thereto. Tenant shall not do

or permit any act or thing to be done in or to the demised premises which is contrary to law, or which will invalidate or be in conflict with public liability, fire or other policies of insurance at any time carried by or for the benefit of Owner. Tenant shall pay all costs, expenses, fines, penalties or damages, which may be imposed upon Owner by reason of Tenant's failure to comply with the provisions of this article. If the fire insurance rate shall, at the beginning of the lease or at any time thereafter, be higher than it otherwise would be, then Tenant shall reimburse Owner, as additional rent hereunder, for that portion of all fire insurance premiums that after paid by Owner which shall have been charged because of such failure by Tenant, to comply with the terms of this article. In any action or proceeding wherein Owner and Tenant are parties, a schedule or "make-up" of rate for the building or demised premises issued by a body making fire insurance rates applicable to said premises shall be conclusive evidence of the facts therein stated and of the several items and charges in the fire insurance rate then applicable to said premises.

**Sub-ordination:**  
7. This lease is subject and subordinate to all ground or underlying leases and to all mortgages which may now or hereafter affect such leases or the real property of which demised premises are a part and to all renewals, modifications, consolidations, replacements and extensions of any such underlying lease and mortgages. This clause shall be self-operative and no further instrument of subordination shall be required by any ground or underlying lessor or by any mortgagee, affecting any lease of the real property of which the demised premises are a part. In confirmation of such subordination, Tenant shall from time to time execute promptly any certificate that Owner may request.

(See Articles 52 and 64)

**Tenant's Liability Insurance Property Loss, Damage, Indemnity:**  
8. Owner or its agents shall not be liable for any damage to property of Tenant or of others entrusted to employees of the building, nor for loss of or damage to any property of Tenant by theft or otherwise, nor for any injury or damage to persons or property resulting from any cause of whatsoever nature, unless caused by or due to the negligence of Owner, its agents, servants or employees. Owner or its agents will not be liable for any such damage caused by other tenants or persons in, upon or about said building or caused by operations in construction of any private, public or quasi public work. Tenant agrees, at Tenant's sole cost and expense, to maintain general public liability insurance in standard form in favor of Owner and Tenant against claims for bodily injury or death or property damage occurring in or upon the demised premises, effective from the date Tenant enters into possession and during the term of this lease. Such insurance shall be in an amount and with carriers acceptable to the Owner. Such policy or policies shall be delivered to the Owner. On Tenant's default in obtaining or delivering any such policy or policies or failure to pay the charges therefor, Owner may secure or pay the charges for any such policy or policies and charge the Tenant as additional rent therefor. Tenant shall indemnify and save harmless Owner against and from all liabilities, obligations, damages, penalties, claims, costs and expenses for which Owner shall not be reimbursed by insurance, including reasonable attorneys fees, paid, suffered or incurred as a result of any breach by Tenant, Tenant's agent, contractors, employees, invitees, or licensees, of any covenant or condition of this lease, or the carelessness, negligence or improper conduct of the Tenant, Tenant's agents, contractors, employees, invitees or licensees. Tenant's liability under this lease extends to the acts and omissions of any subtenant, and any agent, contractor, employee, invitee or licensee of any subtenant. In case any action or proceeding is brought against Owner by reason of any such claim, Tenant, upon written notice from Owner, will, at Tenant's expense, resist or defend such action or proceeding by counsel approved by Owner in writing, such approval not to be unreasonably withheld.

(See Article 44)

**Destruction, Fire, and Other Casualty:**  
9. (a) If the demised premises or any part thereof shall be damaged by fire or other casualty, Tenant shall give immediate notice thereof to Owner and this lease shall continue in full force and effect except as hereinafter set forth. (b) If the demised premises are partially damaged or rendered partially unusable by fire or other casualty, the damages thereto shall be repaired by and at the expense of Owner and the rent and other items of additional rent, until such repair shall be substantially completed, shall be apportioned from the day following the casualty according to the part of the premises which is usable. (c) If the demised premises are totally damaged or rendered wholly unusable by fire or other casualty, then the rent and other items of additional rent as hereinafter expressly provided shall be proportionately paid up to the time of the casualty and thenceforth shall cease until the date when the premises shall have been repaired and restored by Owner (or sooner reoccupied in part by Tenant then rent shall be apportioned as provided in subsection (b) above), subject to Owner's right to elect not to restore the same as hereinafter provided. (d) If the demised premises are rendered wholly unusable or (whether or not the demised premises are damaged in whole or in part) if the building shall be so damaged that Owner shall decide to demolish it or to rebuild it, then, in any of such events, Owner may elect to terminate this lease by written notice to Tenant given within 90 days after such fire or casualty or 30 days after adjustment of the insurance claim for such fire or casualty, whichever is sooner, specifying a date for the expiration of the lease, which date shall not be more than 60 days after the giving of such notice, and upon the date specified in such notice the term of this lease shall expire as fully and completely as if such date were the date set forth above for the termination of this lease and Tenant shall forthwith quit, surrender and vacate the premises without prejudice however, to Owner's rights and remedies against Tenant under the lease provisions in effect prior to such termination, and any rent owing shall be paid up to such date and any payments of rent made by Tenant which were on account of any period subsequent to such date shall be returned to Tenant. Unless Owner shall serve a termination notice as provided for herein, Owner shall make the repairs and restorations under the conditions of (b) and (c) hereof, with all reasonable expedition subject to delays due to adjustment of insurance claims, labor troubles and causes beyond Owner's control. After any such casualty, Tenant shall cooperate with Owner's restoration by removing from the premises as promptly as reasonably possible, all of Tenant's salvageable inventory and movable equipment, furniture, and other property. Tenant's liability for rent shall resume five (5) days after written notice from Owner that the premises are substantially ready for Tenant's occupancy. (e) Nothing contained hereinabove shall relieve Tenant from liability that may exist as a result of damage from fire or other casualty. Notwithstanding the foregoing, including Owner's obligation to restore under subparagraph (b) above, each party shall

**℟ Rider to be added if necessary.**

look first to any insurance in its favor before making any claim against the other party for recovery for loss or damage resulting from fire or other casualty, and to the extent that such insurance is in force and collectible and to the extent permitted by law, Owner and Tenant each hereby releases and waives all right of recovery with respect to subparagraphs (b), (d) and (e) above, against the other or any one claiming through or under each of them by way of subrogation or otherwise. The release and waiver herein referred to shall be deemed to include any loss or damage to the demised premises and/or to any personal property, equipment, trade fixtures, goods and merchandise located therein. The foregoing release and waiver shall be in force only if both releasors' insurance policies contain a clause providing that such a release or waiver shall not invalidate the insurance. Tenant acknowledges that Owner will not carry insurance on Tenant's furniture and/or furnishings or any fixtures or equipment, improvements, or appurtenances removable by Tenant and agrees that Owner will not be obligated to repair any damage thereto or replace the same. (f) Tenant hereby waives the provisions of Section 227 of the Real Property Law and agrees that the provisions of this article shall govern and control in lieu thereof.

**Eminent Domain:**  
10. If the whole or any part of the demised premises shall be acquired or condemned by Eminent Domain for any public or quasi public use or purpose, then and in that event, the term of this lease shall cease and terminate from the date of title vesting in such proceeding and Tenant shall have no claim for the value of any unexpired term of said lease. Tenant shall have the right to make an independent claim to the condemning authority for the value of Tenant's moving expenses and personal property, trade fixtures and equipment, provided Tenant is entitled pursuant to the terms of the lease to remove such property, trade fixtures and equipment at the end of the term and provided further such claim does not reduce Owner's award.

**Assignment, Mortgage, Etc.:**  
11. Tenant, for itself, its heirs, distributees, executors, administrators, legal representatives, successors and assigns expressly covenants that it shall not assign, mortgage or encumber this agreement, nor underlet, or suffer or permit the demised premises or any part thereof to be used by others, without the prior written consent of Owner in each instance. Transfer of the majority of the stock of a corporate tenant or the majority partnership interest of a partnership tenant shall be deemed an assignment. If this lease be assigned, or if the demised premises or any part thereof be underlet or occupied by anybody other than Tenant, Owner may, after default by Tenant, collect rent from the assignee, undertenant or occupant, and apply the net amount collected to the rent herein reserved, but no such assignment, underletting, occupancy or collection shall be deemed a waiver of the covenant, or the acceptance of the assignee, undertenant or occupant as tenant, or a release of Tenant from the further performance by Tenant of covenants on the part of Tenant herein contained. The consent by Owner to an assignment or underletting shall not in any wise be construed to relieve Tenant from obtaining the express consent in writing of Owner to any further assignment or underletting.

(See Article 63)

**Electric Current:**  
℟ 12. Rates and conditions in respect to submetering or rent inclusion, as the case may be, to be added in RIDER attached hereto. Tenant covenants and agrees that at all times its use of electric current shall not exceed the capacity of existing feeders to the building or the risers or wiring installation and Tenant may not use any electrical equipment which, in Owner's opinion, reasonably exceed the use of such installations or interfere with the use thereof by other tenants of the building. The change at any time of the character of electric service shall in no wise make Owner liable or responsible to Tenant, for any loss, damages or expenses which Tenant may sustain.

(See Article 40C)

**Access to Premises:**  
13. Owner or Owner's agents shall have the right (but shall not be obligated) to enter the demised premises in any emergency at any time, and, in other reasonable times, to examine the same and to make such repairs, replacements and improvements as Owner may deem necessary and reasonably desirable to any portion of the building or which Owner may elect to perform, in the premises, following Tenant's failure to make repairs or perform any work which Tenant is obligated to perform under this lease, or for the purpose of complying with laws, regulations and other directions of governmental authorities. Tenant shall permit Owner to use and maintain and replace pipes and conduits in and through the demised premises and to erect new pipes and conduits therein, provided they are concealed within the walls, floors or ceiling, wherever practicable. Owner may, during the progress of any work in the demised premises, take all necessary materials and equipment into said premises without the same constituting an eviction nor shall the Tenant be entitled to any abatement of rent while such work is in progress nor to any damages by reason of loss or interruption of business or otherwise. Throughout the term hereof Owner shall have the right to enter the demised premises at reasonable hours for the purpose of showing the same to prospective purchasers or mortgagees of the building, and during the last six months of the term for the purpose of showing the same to prospective tenants and may, during said six months period, place upon the demised premises the usual notices "To Let" and "For Sale" which notices Tenant shall permit to remain thereon without molestation. If Tenant is not present to open and permit an entry into the demised premises, Owner or Owner's agents may enter the same whenever such entry may be necessary or permissible by master key or forcibly and provided reasonable care is exercised to safeguard Tenant's property, such entry shall not render Owner or its agents liable therefor, nor in any event shall the obligations of Tenant hereunder be affected. If during the last month of term Tenant shall have removed all or substantially all of Tenant's property therefrom, Owner may immediately enter, alter, renovate or redecorate the demised premises without limitation or abatement of rent, or incurring liability to Tenant for any compensation and such act shall have no effect on this lease or Tenant's obligations hereunder. Owner shall have the right at any time, without the same constituting an eviction and without incurring liability to Tenant therefor to change the arrangement and/or location of public entrances, passageways, doors, doorways, corridors, elevators, stairs, toilets, or other public parts of the building and to change the name, number or designation by which the building may be known.

**Vault, Vault Space, Area:**  
14. No vault, vault space or area, whether or not enclosed or covered, not within the property line of the building is leased hereunder, anything contained in or indicated on any sketch, blue print or plan, or anything contained elsewhere in this lease to the contrary notwithstanding. Owner makes no representation as to the location of the property line of the

building. All vaults and vault space and all such areas not within the property line of the building, which Tenant may be permitted to use and/ or occupy, is to be used and/or occupied under a revocable license, and if any such license be revoked, or if the amount of such space or area be diminished or required by any federal, state or municipal authority or public utility, Owner shall not be subject to any liability nor shall Tenant be entitled to any compensation or diminution or abatement of rent, nor shall such revocation, diminution or requisition be deemed constructive or actual eviction. Any tax, fee or charge of municipal authorities for such vault or area shall be paid by Tenant.

**Occupancy:** 15. Tenant will not at any time use or occupy the demised premises in violation of Articles 2 or 37 hereof, or of the certificate of occupancy issued for the building of which the demised premises are a part. Tenant has inspected the premises and accepts them as is, subject to the riders annexed hereto with respect to Owner's work, if any. In any event, Owner makes no representation as to the condition of the premises and Tenant agrees to accept the same subject to violations whether or not of record. **(See Article 46)**

**Bankruptcy:** 16. (a) Anything elsewhere in this lease to the contrary notwithstanding, this lease may be cancelled by Landlord by the sending of a written notice to Tenant within a reasonable time after the happening of any one or more of the following events: (1) the commencement of a case in bankruptcy or under the laws of any state naming Tenant as the debtor; or (2) the making by Tenant of an assignment or any other arrangement for the benefit of creditors under any state statute. Neither Tenant nor any person claiming through or under Tenant, or by reason of any statute or order of court, shall thereafter be entitled to possession of the premises demised but shall forthwith quit and surrender the premises. If this lease shall be assigned in accordance with its terms, the provisions of this Article 16 shall be applicable only to the party then owning Tenant's interest in this lease.

(b) It is stipulated and agreed that in the event of the termination of this lease pursuant to (a) hereof, Owner shall forthwith, notwithstanding any other provisions of this lease to the contrary, be entitled to recover from Tenant as and for liquidated damages an amount equal to the difference between the rent reserved hereunder for the unexpired portion of the term demised and the fair and reasonable rental value of the demised premises for the same period. In the computation of such damages the difference between any installment of rent becoming due hereunder after the date of termination and the fair and reasonable rental value of the demised premises for the period for which such installment was payable shall be discounted to the date of termination at the rate of four percent (4%) per annum. If such premises or any part thereof be re-let by the Owner for the unexpired term of said lease, or any part thereof, before presentation of proof of such liquidated damages to any court, commission or tribunal, the amount of rent reserved upon such re-letting shall be deemed to be the fair and reasonable rental value for the part or the whole of the premises so re-let during the term of the re-letting. Nothing herein contained shall limit or prejudice the right of the Owner to prove for and obtain as liquidated damages by reason of such termination, an amount equal to the maximum allowed by any statute or rule of law in effect at the time when, and governing the proceedings in which, such damages are to be proved, whether or not such amount be greater, equal to, or less than the amount of the difference referred to above.

**Default:** 17. (1) If Tenant defaults in fulfilling any of the covenants of this lease other than the covenants for the payment of rent or additional rent; or if the demised premises become vacant or deserted; or if any execution or attachment shall be issued against Tenant or any of Tenant's property whereupon the demised premises shall be taken or occupied by someone other than Tenant; or if this lease be rejected under Section 365 of Title II of the U.S. Code (Bankruptcy Code); or if Tenant shall fail to move into or take possession of the premises within thirty (30) days after the commencement of the term of this lease, of which fact Owner shall be the sole judge; then, in any one or more of such events, upon Owner serving a written fifteen (15) days notice upon Tenant specifying the nature of said default and upon the expiration of said fifteen (15) days, if Tenant shall have failed to comply with or remedy such default, or if the said default for omission complained of shall be of a nature that the same cannot be completely cured or remedied within said fifteen (15) day period, and if Tenant shall not have diligently commenced curing such default within such fifteen (15) day period, and shall not thereafter with reasonable diligence and in good faith proceed to remedy or cure such default, then Owner may serve a written five (5) days notice of cancellation of this lease upon Tenant, and upon the expiration of said five (5) days, this lease and the term thereunder shall end and expire as fully and completely as if the expiration of such five (5) day period were the day herein definitely fixed for the end and expiration of this lease and the term thereof and Tenant shall then quit and surrender the demised premises to Owner but Tenant shall remain liable as hereinafter provided.

(2) If the notice provided for in (1) hereof shall have been given, and the term shall expire as aforesaid; or if Tenant shall make default in the payment of the rent reserved herein or any item of additional rent herein mentioned or any part of either or in making any other payment herein required; then and in any of such events Owner may without notice, re-enter the demised premises either by force or otherwise, and dispossess Tenant by summary proceedings or otherwise, and the legal representatives of Tenant or other occupant of demised premises and remove their effects and hold the premises as if this lease had not been made, and Tenant hereby waives the service of notice of intention to re-enter or to institute legal proceedings to that end.

**Remedies of Owner and Waiver of Redemption:** 18. In case of any such default, re-entry, expiration and/or dispossess by summary proceedings or other wise, (a) the rent, and additional rent, shall become due thereupon and be paid up to the time of such re-entry, dispossess and/or expiration, (b) Owner may re-let the premises or any part or parts thereof, either in the name of Owner or otherwise, for a term or terms, which may at Owner's option be less than or exceed the period which would otherwise have constituted the balance of the term of this lease and may grant concessions or free rent or charge a higher rental than that of this lease, and/or (c) Tenant or the legal representatives of Tenant shall also pay Owner as liquidated damages for the failure of Tenant to observe and perform said Tenant's covenants herein contained, any deficiency between the rent hereby reserved and/or covenanted to be paid and the net amount, if any, of the rents collected on account of the subsequent lease or leases of the demised premises for each month of the period which would otherwise have constituted the balance of

the term of this lease. The failure of Owner to re-let the premises or any part or parts thereof shall not release or affect Tenant's liability for damages. In computing such liquidated damages there shall be added to the said deficiency such expenses as Owner may incur in connection with re-letting, such as legal expenses, reasonable attorneys' fees, brokerage, advertising and for keeping the demised premises in good order or for preparing the same for re-letting. Any such liquidated damages shall be paid in monthly installments by Tenant on the rent day specified in this lease. Owner, in putting the demised premises in good order or preparing the same for re-rental may, at Owner's option, make such alterations, repairs, replacements, and/or decorations in the demised premises as Owner, in Owner's sole judgement, considers advisable and necessary for the purpose of re-letting the demised premises, and the making of such alterations, repairs, replacements, and/or decorations shall not operate or be construed to release Tenant from liability. Owner shall in no event be liable in any way whatsoever for failure to re-let the demised premises, or in the event that the demised premises are re-let, for failure to collect the rent thereof under such re-letting, and in no event shall Tenant be entitled to receive any excess, if any, of such net rent collected over the sums payable by Tenant to Owner hereunder. In the event of a breach or threatened breach by Tenant or any of the covenants or provisions hereof, Owner shall have the right of injunction and the right to invoke any remedy allowed at law or in equity as if re-entry, summary proceedings and other remedies were not herein provided for. Mention in this lease of any particular remedy, shall not preclude Owner from any other remedy, in law or in equity. Tenant hereby expressly waives any and all rights of redemption granted by or under any present or future laws.

**Fees and Expenses:** 19. If Tenant shall default in the observance or performance of any term or covenant on Tenant's part to be observed or performed under or by virtue of any of the terms or provisions in any article of this lease, after notice if required and upon expiration of any applicable grace period if any, (except in an emergency), then, unless otherwise provided elsewhere in this lease, Owner may immediately or at any time thereafter and without notice perform the obligation of Tenant thereunder, and if Owner, in connection therewith or in connection with any default by Tenant in the covenant to pay rent hereunder, makes any expenditures or incurs any obligations for the payment of money, including but not limited to reasonable attorney's fees, in instituting, prosecuting or defending any action or proceeding and prevails in any such action or proceeding, such sums so paid or obligations incurred with interest and costs shall be deemed to be additional rent hereunder and shall be paid by Tenant to Owner within ten (10) days of rendition of any bill or statement to Tenant therefor, and if Tenant's lease term shall have expired at the time of making of such expenditures or incurring of such obligations, such sums shall be recoverable by Owner as damages.

**No Representation by Owner:** 20. Neither Owner nor Owner's agent have made any representations or promises with respect to the physical condition of the building, the land upon which it is erected or the demised premises, the rents, leases, expenses of operation, or any other matter or thing affecting or related to the premises except as herein expressly set forth and no rights, easements or licenses are acquired by Tenant by implication or otherwise except as expressly set forth in the provisions of this lease. Tenant has inspected the building and the demised premises and is thoroughly acquainted with their condition, and agrees to take the same "as is" and acknowledges that the taking of possession of the demised premises by Tenant shall be conclusive evidence that the said premises and the building of which the same form a part were in good and satisfactory condition at the time such possession was so taken, except as to latent defects. All understandings and agreements heretofore made between the parties hereto are merged in this contract, which alone fully and completely expresses the agreement between Owner and Tenant and any executory agreement hereafter made shall be ineffective to change, modify, discharge or effect an abandonment of it in whole or in part, unless such executory agreement is in writing and signed by the party against whom enforcement of the change, modification, discharge or abandonment is sought.

**End of Term:** 21. Upon the expiration or other termination of the term of this lease, Tenant shall quit and surrender to Owner the demised premises, broom clean, in good order and condition, ordinary wear excepted, and Tenant shall remove all its property. Tenant's obligation to observe or perform this covenant shall survive the expiration or other termination of this lease. If the last day of the term of this lease or any renewal thereof, falls on Sunday, this lease shall expire at noon on the preceding Saturday unless it be a legal holiday in which case it shall expire at noon on the preceding business day.

**Quiet Enjoyment:** 22. Owner covenants and agrees with Tenant that upon Tenant paying the rent and additional rent and observing and performing all the terms, covenants and conditions, on Tenant's part to be observed and performed, Tenant may peaceably and quietly enjoy the premises hereby demised, subject, nevertheless, to the terms and conditions of this lease including, but not limited to, Article 33 hereof and to the ground leases, underlying leases and mortgages hereinbefore mentioned.

**Failure to Give Possession:** 23. If Owner is unable to give possession of the demised premises on the date of the commencement of the term hereof, because of the holding-over or retention of possession of any tenant, undertenant or occupants, or if the premises are located in a building being constructed, because such building has not been sufficiently completed to make the premises ready for occupancy or because of the fact that a certificate of occupancy has not been procured or for any other reason, Owner shall not be subject to any liability for failure to give possession on said date and the validity of the lease shall not be impaired under such circumstance, nor shall the same be construed in any way to extend the term of this lease, but the rent payable hereunder shall be abated (provided Tenant is not responsible for the inability to obtain possession or complete construction) until after Owner shall have given Tenant written notice that the Owner is able to deliver possession in the condition required by this lease. If permission is given to Tenant to enter into the possession of the demised premises or to occupy premises other than the demised premises prior to the date specified as the commencement of the term of this lease, Tenant covenants and agrees that such possession and/or occupancy shall be deemed to be under all the terms, covenants, conditions and provisions of this lease except the obligation to pay the fixed annual rent set forth in page

one of this lease. The provisions of this article are intended to constitute "an express provision to the contrary" within the meaning of Section 223-a of the New York Real Property Law.

**No Waiver:** 24. The failure of Owner to seek redress for violation of, or to insist upon the strict performance of any covenant or condition of this lease or of any of the Rules or Regulations set forth or hereafter adopted by Owner, shall not prevent a subsequent act which would have originally constituted a violation from having all the force and effect of an original violation. The receipt by Owner of rent and/or additional rent with knowledge of the breach of any covenant of this lease shall not be deemed a waiver of such breach and no provision of this lease shall be deemed to have been waived by Owner unless such waiver be in writing signed by Owner. No payment by Tenant or receipt by Owner of a lesser amount than the monthly rent herein stipulated shall be deemed to be other than on account of the earliest stipulated rent, nor shall any endorsement or statement of any check or any letter accompanying any check or payment as rent be deemed an accord and satisfaction, and Owner may accept such check or payment without prejudice to Owner's right to recover the balance of such rent or pursue any other remedy in this lease provided. No act or thing done by Owner or Owner's agents during the term hereby demised shall be deemed an acceptance of a surrender of said premises and no agreement to accept such surrender shall be valid unless in writing signed by Owner. No employee of Owner or Owner's agent shall have any power to accept the keys of said premises prior to the termination of the lease and the delivery of keys to any such agent or employee shall not operate as a termination of the lease or a surrender of the premises.

**Waiver of Trial by Jury:** 25. It is mutually agreed by and between Owner and Tenant that the respective parties hereto shall and they hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other (except for personal injury or property damage) on any matters whatsoever arising out of or in any way connected with this lease, the relationship of Owner and Tenant, Tenant's use of or occupancy of said premises, and any emergency statutory or any other statutory remedy. It is further mutually agreed that in the event Owner commences any proceeding or action for possession including a summary proceeding for possession of the premises, Tenant will not interpose any counterclaim of whatever nature or description in any such proceeding, including a counterclaim under Article 4 except for statutory mandatory counterclaims.

**Inability to Perform:** 26. This lease and the obligation of Tenant to pay rent hereunder and perform all of the other covenants and agreements hereunder on part of Tenant to be performed shall in no wise be affected, impaired or excused because Owner is unable to fulfill any of its obligations under this lease or to supply or is delayed in supplying any service expressly or impliedly to be supplied or is unable to make, or is delayed in making any repair, additions, alterations or decorations or is unable to supply or is delayed in supplying any equipment, fixtures or other materials if Owner is prevented or delayed from so doing by reason of strike or labor troubles, government preemption or restrictions or by reason of any rule, order or regulation of any department or subdivision thereof of any government agency or by reason of the conditions of which have been or are affected, either directly or indirectly, by war or other emergency, or when, in the judgment of Owner, temporary interruption of such services is necessary by reason of accident, mechanical breakdown, or to make repairs, alterations or improvements.

**Bills and Notices:** 27. Except as otherwise in this lease provided, a bill, statement, notice or communication which Owner may desire or be required to give to Tenant, shall be deemed sufficiently given or rendered if, in writing, delivered to Tenant personally or sent by registered or certified mail addressed to Tenant at the building of which the demised premises form a part or at the last known residence address or business address of Tenant or left at any of the aforesaid premises addressed to Tenant, and the time of the rendition of such bill or statement and of the giving of such notice or communication shall be deemed to be the time when the same is delivered to Tenant, mailed, or left at the premises as herein provided. Any notice by Tenant to Owner must be served by registered or certified mail addressed to Owner at the address first hereinabove given or at such other address as Owner shall designate by written notice.

**Water Charges:** 28. If Tenant requires, uses or consumes water for any purpose in addition to ordinary lavatory purposes (of which fact Tenant constitutes Owner to be the sole judge) Owner may install a water meter and thereby measure Tenant's water consumption for all purposes. Tenant shall pay Owner for the cost of the meter and the cost of the installation thereof and throughout the duration of Tenant's occupancy Tenant shall keep said meter and installation equipment in good working order and repair at Tenant's own cost and expense. Tenant agrees to pay for water consumed, as shown on said meter as and when bills are rendered. Tenant covenants and agrees to pay the sewer rent, charge or any other tax, rent, levy or charge which now or hereafter is assessed, imposed or a lien upon the demised premises or the realty of which they are part pursuant to law, order or regulation made or issued in connection with the use, consumption, maintenance or supply of water, water system or sewage or sewage connection or system. The bill rendered by Owner shall be payable by Tenant as additional rent. In the building or the demised premises there be any tenant or tenants using large quantities of water for any purpose in addition to ordinary lavatory purposes _____ _____ _____

**Sprinklers:** 29. Anything elsewhere in this lease to the contrary notwithstanding, if the New York Board of Fire Underwriters or the Insurance Services Office or any bureau, department or official of the federal, state or city government require or recommend the installation of a sprinkler system or that any changes, modifications, alterations, or additional sprinkler heads or other equipment be made or supplied in an existing sprinkler system by reason of Tenant's business, or the location of partitions, trade fixtures, or other contents of the demised premises, or for any other reason, or if any such sprinkler system _____ Space to be filled in or deleted.

installations, changes, modifications, alterations, additional sprinkler heads or other such equipment, become necessary to prevent the imposition of a penalty or charge against the full allowance for a sprinkler system in the fire insurance rate set by any said Exchange or by any fire insurance company, Tenant shall, at Tenant's expense, promptly make such sprinkler system installations, changes, modifications, alterations, and supply additional sprinkler heads or other equipment as required whether the work involved shall be structural or non-structural in nature. Tenant shall pay to Owner as additional rent the sum of _____ , on the first day of each month during the term of this lease, as Tenant's portion of the contract price for sprinkler supervisory service.

**Elevators, Heat, Cleaning:** 30. As long as Tenant is not in default under any of the covenants of this lease beyond the applicable grace period provided in this lease for the curing of such default, Owner shall, if and insofar as existing facilities permit furnish heat to the demised premises, when and as required by law, on business days from 8:00 a.m. to 6:00 p.m. and on Saturdays from 8:00 a.m. to 1:00 p.m. Tenant shall at Tenant's expense, keep demised premises clean and in order, to the satisfaction of Owner, and if demised premises are situated on the street floor, Tenant shall, at Tenant's own expense, make all repairs and replacements to the sidewalks and curbs adjacent thereto, and keep said sidewalks and curbs free from snow, ice, dirt and rubbish. Tenant shall pay to Owner the cost of removal of any of Tenant's refuse and rubbish from the building. Bills for the same shall be rendered by Owner to Tenant at such times as Owner may elect and shall be due and payable when rendered, and the amount of such bills shall be deemed to be, and be paid as, additional rent. Tenant shall, however, have the option of independently contracting for the removal of such rubbish and refuse in the event that Tenant does not wish to have same done by employees of Owner. Under such circumstances, however, the removal of such refuse and rubbish by others shall be subject to such rules and regulations as, in the judgment of Owner, are necessary for the proper operation of the building. (See _____)

**Security:** 31. Tenant has deposited with Owner the sum of $ _____ as security for the faithful performance and observance by Tenant of the terms, provisions and conditions of this lease; it is agreed that in the event Tenant defaults in respect of any of the terms, provisions and conditions of this lease, including, but not limited to, the payment of rent and additional rent, Owner may use, apply or retain the whole or any part of the security so deposited to the extent required for the payment of any rent and additional rent or any other sum as to which Tenant is in default or for any which Owner may expend or may be required to expend by reason of Tenant's default in respect of any of the terms, covenants and conditions of this lease, including but not limited to, any damages or deficiency in the re-letting of the premises, whether such damages or deficiency accrued before or after summary proceedings or other re-entry by Owner. In the event that Tenant shall fully and faithfully comply with all of the terms, provisions, covenants and conditions of this lease, the security shall be returned to Tenant after the date fixed as the end of the Lease and after delivery of entire possession of the demised premises to Owner. In the event of a sale of the land and building or leasing of the building, of which the demised premises form a part, Owner shall have the right to transfer the security to the vendee or lessee and Owner shall thereupon be released by Tenant from all liability for the return of such security, and Tenant agrees to look to the new Owner solely for the return of said security; and it is agreed that the provisions hereof shall apply to every transfer or assignment made of the security to a new Owner. Tenant further covenants that it will not assign or encumber or attempt to assign or encumber the monies deposited herein as security and that neither Owner nor its successors or assigns shall be bound by any such assignment, encumbrance, attempted assignment or attempted encumbrance.

(See Article 49)

**Captions:** 32. The Captions are inserted only as a matter of convenience and for reference and in no way define, limit or describe the scope of this lease nor the intent of any provision thereof.

**Definitions:** 33. The term "Owner" as used in this lease means only the Owner, or the mortgagee in possession, for the time being of the land and building (or the Owner of a lease of the building or of the land and building) of which the demised premises form a part, so that in the event of any sale or sales of said land and building or of said lease, or in the event of a lease of said building, or of the land and building, the said Owner shall be and hereby is entirely freed and relieved of all covenants and obligations of Owner hereunder, and it shall be deemed and construed without further agreement between the parties of their successors in interest, or between the parties and the purchaser, at any such sale, or the said lessee of the building, or of the land and building, that the purchaser or the lessee of the building has agreed to carry on any and all covenants and obligations of Owner hereunder. The words "re-enter" and "re-entry" as used in this lease are not restricted to their technical legal meaning. The term "business days" as used in this lease shall exclude Saturdays, Sundays and all days designated as holidays by the applicable building service union employees service contract or by the applicable Operating Engineers contract with respect to HVAC service. Wherever it is expressly provided in this lease that consent shall not be unreasonably withheld, such consent shall not be unreasonably delayed.

**Adjacent Excavation-Shoring:** 34. If an excavation shall be made upon land adjacent to the demised premises, or shall be authorized to be made, Tenant shall afford to the person causing or authorized to cause such excavation, license to enter upon the demised premises for the purpose of doing such work as said person shall deem necessary to preserve the wall or the building of which demised premises form a part from injury or damage and to support the same by proper foundation without any claim for damages or indemnity against Owner, or diminution or abatement of rent.

**Rules and Regulations:** 35. Tenant and Tenant's servants, employees, agents, visitors, and licensees shall observe faithfully, and comply strictly with the Rules and Regulations and such other and further reasonable Rules and Regulations as Owner or Owner's agents may from time to time adopt. Notice of any additional rules or regulations shall be given in such manner as Owner may elect. In case Tenant disputes the reasonableness of any additional Rule or Regulation hereafter made or adopted by Owner or Owner's agents, the

parties hereto agree to submit the question of the reasonableness of such Rule or Regulation for decision to the New York Office of the American Arbitration Association, whose determination shall be final and conclusive upon the parties hereto. The right to dispute the reasonableness of any additional Rule or Regulation upon Tenant's part shall be deemed waived unless the same shall be asserted by service of a notice, in writing upon Owner within fifteen (15) days after the giving of notice thereof. Nothing in this lease contained shall be construed to impose upon Owner any duty or obligation to enforce the Rules and Regulations or terms, covenants or conditions in any other lease, as against any other tenant and Owner shall not be liable to Tenant for violation of the same by any other tenant, its servants, employees, agents, visitors or licensees.

Glass:   36. Owner shall replace, at the expense of Tenant, any and all plate and other glass damaged or broken from any cause whatsoever in and about the demised premises. Owner may insure, and keep insured, at Tenant's expense, all plate and other glass in the demised premises for and in the name of Owner. Bills for the premiums therefor shall be rendered by Owner to Tenant at such times as Owner may elect, and shall be due from, and payable by, Tenant when rendered, and the amount thereof shall be deemed to be, and be paid as, additional rent.

Pornographic   37. Tenant agrees that the value of the demised pre-
Uses Prohibited: mises and the reputation of the Owner will be seriously injured if the premises are used for any obscene or pornographic purposes or any sort of commercial sex establishment. Tenant agrees that Tenant will not bring or permit any obscene or pornographic material on the premises, and shall not permit or conduct any obscene, nude, or semi-nude live performances on the premises, nor permit use of the premises for nude modeling, rap sessions, or as a so called rubber goods shops, or as a sex club of any sort, or as a "massage parlor." Tenant agrees further that Tenant will not permit any of these uses by any sublessee or assignee of the premises. This Article

shall directly bind any successors in interest to the Tenant. Tenant agrees that if at any time Tenant violates any of the provisions of this Article, such violation shall be deemed a breach of a substantial obligation of the terms of this lease and objectionable conduct. Pornographic material is defined for purposes of this Article as any written or pictorial manner with prurient appeal or any objects of instrument that are primarily concerned with lewd or prurient sexual activity. Obscene material is defined here as it is in Penal law $235.00.

Estoppel   38. Tenant, at any time, and from time to time, upon
Certificate: at least 10 days prior notice by Owner, shall execute, acknowledge and deliver to Owner, and/or to any other person, firm or corporation specified by Owner, a statement certifying that this lease is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications), stating the dates which the rent and additional rent have been paid, and stating whether or not there exists any defaults by Owner under this lease, and, if so, specifying each such default.

Successors   39. The covenants, conditions and agreements
and Assigns: contained in this lease shall bind and inure to the benefit of Owner and Tenant and their respective heirs, distributees, executors, administrators, successors, and except as otherwise provided in this lease, their assigns. Tenant shall look only to Owner's estate and interest in the land and building for the satisfaction of Tenant's remedies for the collection of a judgment (or other judicial process) against Owner in the event of any default by Owner hereunder, and no other property or assets of such Owner (or any partner, member, officer or director thereof, disclosed or undisclosed), shall be subject to levy, execution or other enforcement procedure for the satisfaction of Tenant's remedies under or with respect to this lease, the relationship of Owner and Tenant hereunder, or Tenant's use and occupancy of the demised premises.

A Rider consisting of Articles 40A-90 is attached hereto and made a part hereof.

In Witness Whereof, Owner and Tenant have respectively signed and sealed this lease as of the day and year first above written.

Parker 24 Commercial Associates, a

Witness for Owner:

New York Limited partnership
305 EAST 24TH COMMERCIAL CORP., general
partner

By: Jean-Pierre Vagenay
Vice President

Witness for Tenant:

KAIS ABID

## ACKNOWLEDGEMENTS

CORPORATE OWNER
STATE OF NEW YORK,   ss.:
County of

On this   day of   , 19
before me personally came
to me known, who being by me duly sworn, did depose and say that
he resides in
that he is the   of
the corporation described in and which executed the foregoing
instrument, as OWNER; that he knows the seal of said corporation;
the seal affixed to said instrument is such corporate seal; that it was
so affixed by order of the Board of Directors of said corporation,
and that he signed his name thereto by like order.

CORPORATE TENANT
STATE OF NEW YORK,   ss.:
County of

On this   day of   , 19
before me personally came
to me known, who being by me duly sworn, did depose and say that
he resides in
that he is the   of
the corporation described in and which executed the foregoing
instrument, as TENANT; that he knows the seal of said corporation;
the seal affixed to said instrument is such corporate seal; that it was
so affixed by order of the Board of Directors of said corporation,
and that he signed his name thereto by like order.

INDIVIDUAL OWNER
STATE OF NEW YORK,   ss.:
County of

On this   day of   , 19
before me personally came
to be known and known to me to be the individual
described in and who, as OWNER, executed the foregoing instru-
ment and acknowledged to me that   he
executed the same.

INDIVIDUAL TENANT
STATE OF NEW YORK,   ss.:
County of

On this   day of   , 19
before me personally came
to me known and known to me to be the individual
described in and who, as TENANT, executed the foregoing
instrument and acknowledged to me that   he
executed the same.

## GUARANTY

The undersigned Guarantor guarantees to Owner, Owner's successors and assigns, the full performance and observance of all the agreements to be performed and observed by Tenant in the attached Lease, including the "Rules and Regulations" as therein provided, without requiring any notice to Guarantor of nonpayment, or nonperformance, or proof, or notice of demand, to hold the undersigned responsible under this guaranty, all of which the undersigned hereby expressly waives and expressly agrees that the legality of this agreement and the agreements of the Guarantor under this agreement shall not be ended, or changed by reason of the claims to Owner against Tenant of any of the rights or remedies given to Owner as agreed in the attached Lease. The Guaranty further agrees that this guaranty shall remain and continue in full force and effect as to any renewal, change or extension of the Lease. As a further inducement to Owner to make the Lease Owner and Guarantor agree that in any action or proceeding brought by either Owner or the Guarantor against the other on any matters concerning the Lease or of this guaranty that Owner and the undersigned shall and do waive trial by jury.

Dated: ................................................ 19......

Guarantor

Witness

Guarantor's Residence

Business Address

Firm Name

STATE OF NEW YORK        )
                         )  ss.:
COUNTY OF                )

On this ............ day of ........................ ,19......
before me personally came ..........................................
to me known and known to me to be the individual described in, and
who executed the foregoing Guaranty and acknowledged to me that he
executed the same.

Notary

## ☞ IMPORTANT - PLEASE READ ☜

### RULES AND REGULATIONS ATTACHED TO AND MADE A PART OF THIS LEASE IN ACCORDANCE WITH ARTICLE 35.

1.  The sidewalks, entrances, driveways, passages, courts, elevators, vestibules, stairways, corridors or halls shall not be obstructed or encumbered by any Tenant or used for any purpose other than for ingress to and egress from the demised premises and for delivery of merchandise and equipment in a prompt and efficient manner using elevators and passageways designated for such delivery by Owner. There shall not be used in any space, or in the public halls of the building, either by any tenant or by jobbers, or others in the delivery or receipt of merchandise, any hand trucks except those equipped with rubber tires and safeguards.

2.  If the premises are situated on the ground floor of the building, Tenant thereof shall further, at Tenant's expense, keep the sidewalks and curb in front of said premises clean and free from ice, snow, etc.

3.  The water and wash closets and plumbing fixtures shall not be used for any purposes other than those for which they were designed or constructed.

4.  Tenant shall not use, keep or permit to be used or kept any foul or noxious gas or substance in the demised premises, or permit or suffer the demised premises to be occupied or used in a manner offensive or objectionable to Owner or other occupants of the building by reason of noise, odors and/or vibrations or interfere in any way with other Tenants or those having business therein.

5.  No sign, advertisement, notice or other lettering shall be exhibited, inscribed, painted or affixed by any Tenant on any part of the outside of the demised premises or the building or on the inside of the demised premises if the same is visible from the outside of the premises without the prior written consent of Owner, except that the name of Tenant may appear on the entrance door of the premises. In the event of the violation of the foregoing by any Tenant, Owner may remove same without any liability and may charge the expense incurred by such removal to Tenant or Tenants violating this rule. Signs on interior doors and directory tablet shall be inscribed, painted or affixed for such Tenant by Owner at the expense of such Tenant, and shall be of a size, color and style acceptable to Owner.

6.  No Tenant shall mark, paint, drill into, or in any way deface any part of the demised premises or the building of which they form a part. No boring, cutting or stringing of wires shall be permitted, except with the prior written consent of Owner, and as Owner may direct. No Tenant shall lay linoleum, or other similar floor covering, so that the same shall come in direct contact with the floor of the demised premises, and, if linoleum or other similar floor covering is desired to be used an interlining of builder's deadening felt shall

be first affixed to the floor, by a paste or other material, soluble in water, the use of cement or other similar adhesive material being expressly prohibited.

7.  Freight, furniture, business equipment, merchandise and bulky matter of any description shall be delivered to and removed from the premises only on the freight elevators and through the service entrances and corridors, and only during hours and in a manner approved by Owner. Owner reserves the right to inspect all freight to be brought into the building and to exclude from the building all freight which violates any of these Rules and Regulations or the lease of which these Rules and Regulations are a part.

8.  Owner reserves the right to exclude from the building between the hours of 6 P.M. and 8 A.M. and at all hours on Sundays, and holidays all persons who do not present a pass to the building signed by Owner. Owner will furnish passes to persons for whom any Tenant requests same in writing. Each Tenant shall be responsible for all persons for whom he requests such pass and shall be liable to Owner for all acts of such person.

9.  Owner shall have the right to prohibit any advertising by any Tenant which, in Owner's opinion, tends to impair the reputation of Owner or its desirability as a building for stores or offices, and upon written notice from Owner, Tenant shall refrain from or discontinue such advertising.

10.  Tenant shall not bring or permit to be brought or kept in or on the demised premises, any inflammable, combustible, or explosive, or hazardous fluid, material, chemical or substance, or cause or permit any odors of cooking or other processes, or any unusual or other objectionable odors to permeate in or emanate from the demised premises.

11.  Tenant shall not place a load on any floor of the demised premises exceeding the floor load per square foot area which it was designed to carry and which is allowed by law. Owner reserves the right to prescribe the weight and position of all safes, business machines and mechanical equipment. Such installations shall be placed and maintained by Tenant at Tenant's expense in settings sufficient in Owner's judgement to absorb and prevent vibration, noise and annoyance.

12.  Refuse and Trash - Tenant covenants and agrees, at its sole cost and expense, to comply with all present and future laws, orders and regulations of all state, federal, municipal and local governments, departments, commissions and boards regarding the collection, sorting, separation and recycling of waste products, garbage, refuse and trash. Tenant shall pay all costs, expenses, fines, penalties or damages that may be imposed on Owner or Tenant by reason of Tenant's failure to comply with the provisions of this Building Rule 12, and, at Tenant's sole cost and expense, shall indemnify, defend and hold Owner harmless (including reasonable legal fees and expenses) from and against any actions, claims and suits arising from such non-compliance, utilizing counsel reasonably satisfactory to Owner.

---

Address ....................................................

Premises ....................................................

STANDARD FORM OF

## Store Lease

The Real Estate Board of New York, Inc.
© Copyright 1994. All rights Reserved.
Reproduction in whole or in part prohibited.

TO

Dated ........................................ 19......

Rent Per Year ........................................

Rent Per Month ........................................

Term
From ........................................
To ........................................

Drawn by ........................................

Checked by ........................................

Entered by ........................................

Approved by ........................................

## RIDER TO STANDARD FORM OF STORE LEASE

**ADDITIONAL CLAUSES** attached to and forming a part of Lease dated February *16*, 2007, between **PARKER 24 COMMERCIAL ASSOCIATES, L.P.** as Landlord, and **KAIS ABID individually**, as Tenant, for of the premises located at 432 Second Avenue, New York, New York 10010 (referred hereinafter as "Demised Premises").

Wherever the terms, covenants and conditions contained in the printed Standard Form of Store Lease shall conflict with any of the terms, covenants and conditions in the Additional Clauses 40A - 91 that follow, the Additional Clauses shall control.

The captions, numbers and definitions herein are inserted only as a matter of convenience and are not intended to define, limit, construe or describe the scope or intent of any paragraph, nor in any way affect this Lease. In conjunction herewith, the defined term "Landlord" as used in this Rider shall be deemed to be one and the same as the defined term "Owner" as used in the printed portion of this Lease.

The term of the lease, for which the Demised Premises are hereby leased, shall commence on a date (herein referred to as the **"Commencement Date"**) which shall be (i) the day on which the Demised Premises are ready for occupancy or (ii) the day Tenant, or anyone claiming under or through Tenant, first occupies the Demised Premises whichever occurs earlier. Promptly following the Commencement Date the parties hereto (hereinafter sometimes referred to as the **"parties"**) shall enter into a recordable supplementary agreement fixing the dates of the Commencement Date and the Expiration Date; provided, however that the failure of the parties to enter into such supplementary agreement shall not vitiate the foregoing provisions of this Section and, in the event of any dispute between the parties as to the Commencement Date of this Lease, then, pending final resolution of such dispute, the Commencement Date hereof shall be the date determined by Landlord. The Demised Premises shall be deemed ready for occupancy on the date landlord completes Landlord's work ("Landlord's Work") as described on Exhibit B.

Provided Tenant is not then in default in the observance and performance of any of the terms, covenants and conditions of this Lease on Tenant's part to be observed and performed, Tenant shall be entitled to a conditional rent holiday and shall not be required to pay the amount of $7,166.00 per month representing the base rent amount for the first Six (6) months of the term of this Lease (the **"Rent Holiday Period"**). If at any time during the term of this Lease Tenant shall be in default in the observance and performance of any of the terms, covenants and conditions of this Lease on Tenant's part to be observed and performed, then the total sum of the fixed rent so conditionally excused by operation of the foregoing provisions of this Section shall become immediately due and payable by Tenant to Landlord. If, as of the Expiration Date, Tenant shall not then be in default in the observance and performance of any of the terms, covenants and conditions of this Lease on Tenant's part to be observed and performed, Landlord shall waive payment of all such fixed rent so conditionally excused.

**40A. RENTAL**     Tenant covenants to pay to Landlord, at the address hereinbefore set forth or at such other address as Landlord shall designate, the following sums:

40A.01 A fixed rental commencing on the Commencement Date and expiring on the last day of the month in which the tenth anniversary of the Commencement Date occurs, payable in equal monthly installments, in advance, without previous demand therefor and without any setoff or deduction whatsoever, on the first day of each and every calendar month throughout the term of this Lease (except that the first installment of Fixed Rental shall be paid upon the execution of this Lease) as set forth in the following rent schedule:

| YEAR | MONTHLY RENT | ANNUAL RENT |
|---|---|---|
| Commencement Date through the day immediately preceding the first anniversary of the Commencement Date | $7,166.00 | $85,992.00 |
| First anniversary of the Commencement Date through the day immediately preceding the second anniversary of the Commencement Date | $7,380.98 | $88,571.76 |
| Second anniversary of the Commencement Date through the day immediately preceding the third anniversary of the Commencement Date | $7,602.41 | $91,228.91 |

O:\24STREET\PAPA JOHNS\Papa Johns RIDER v4.doc

| | | |
|---|---|---|
| Third anniversary of the Commencement Date through the day immediately preceding the fourth anniversary of the Commencement | $7,830.48 | $93,965.78 |
| Fourth anniversary of the Commencement Date through the day immediately preceding the fifth anniversary of the Commencement | $8,065.470 | $96,784.75 |
| Fifth anniversary of the Commencement Date through the day immediately preceding the sixth anniversary of the Commencement | $8,307.36 | $99,688.30 |
| Sixth anniversary of the Commencement Date through the day immediately preceding the seventh anniversary of the Commencement | $8,556.58 | $102,678.95 |
| Seventh anniversary of the Commencement Date through the day immediately preceding the eighth anniversary of the Commencement | $8,813.28 | $105,759.31 |
| Eighth anniversary of the Commencement Date through the day immediately preceding the ninth anniversary of the Commencement | $9,077.67 | $108,932.09 |
| Ninth anniversary of the Commencement Date through Expiration Date | $9,350.00 | $112,200.06 |

The Commencement Date and occupancy by Tenant is conditioned upon clearance of Tenant's checks representing 1) the security deposit, 2) the first month's rent due pursuant to this Lease and 3) the delivery of the proper insurance certificate.  Tenant shall have no right to occupancy of the Demised Premises until clearance of the aforesaid checks.

        40A.02        Additional Rental, consisting of all such other sums of money as shall become due from and payable by Tenant to Landlord (for default in payment of which Landlord shall have the same remedies as a default in payment of Fixed Rental), including, but not limited to Additional Rental under Article 40B of this Lease and as otherwise provided in this Lease.

        40A.03        Except as otherwise provided herein, it is the purpose and intent of Landlord and Tenant that this Lease be an absolutely net, net lease and Landlord shall not be required to provide any services or to do any act or thing with respect to the Demised Premises or the appurtenances thereto, except as otherwise provided for herein and the Fixed Rent reserved herein shall be paid to Landlord without any claim on the part of Tenant for diminution, reduction, deduction set off or abatement and nothing shall suspend, abate or reduce any rent to be paid hereunder.  The fixed annual rent shall be absolutely net to Landlord so that this Lease shall yield, net to the Landlord the Fixed Annual Rent specified in Article 40A herein, and in each year during the term of this Lease and Tenant shall pay each and every item of expense of every kind and nature whatsoever, for the payment of which Landlord is, shall or may become liable by reason of its estate or interest in the Demised Premises, or by reason of any rights or interest of Landlord in or under this Lease, or by reason of or in any manner connected with or arising from the ownership, leasing, operation, management, maintenance, repair, rebuilding, remodeling, renovation, use or occupancy of the Demised Premises, except as otherwise provided for herein and except for payments due with respect for any mortgage which Landlord has placed or hereafter places on its interest in the Demised Premises.  Tenant hereby indemnifies Landlord from and against such costs, expenses or obligations relating to the Demised Premises.

        40A.04        The Demised Premises are leased subject to the following additional conditions:

        1.        Zoning Laws, ordinances, resolutions and regulations now in effect.

        2.        Encroachments, if any, upon any street, highway or land of others.

        3.        Covenants, easements and restrictions of record, if any, insofar as the same are now in force and effect, provided they do not prevent the use and maintenance of the building on the Demised Premises.

        4.        Licenses and easements, if any, for public utilities.

5.    Any state of facts an accurate survey and an inspection of the Demises Premises would show.

6.    Projections of any vault areas, coal chutes, fuel, oil lines, waterlines and machinery in or under any abutting street and the rights of any governmental authority to require removal of any of the foregoing.

7.    Encroachments of foundation walls, bases, walls of adjacent building, retaining walls, area, steps and fences upon any street or adjoining building.

8.    Any and all notices, orders or violations of any City, County, State of federal office, department of authority having of purporting to have jurisdiction, now or hereafter filed against or affecting the Demised Premises or any part thereof, or hereafter a lien or noted in the office, department or authority, exclusive, however, of any franchises taxes which may be due and owing from Landlord.

9.    The present "as-is" condition of the Demised Premises and all of the fixtures, equipment, articles of personal property located in the Demised Premises.

## 40B.  ADJUSTMENTS OF RENT

40B.01    For the purposes of this Lease, the following definitions shall apply:

1.    "Taxes" shall mean the real estate taxes, assessments (including, but not limited to any Business Improvement District assessments) and special assessments imposed upon the Building and the land on which the Building is situated (hereinafter called the land).  If, at any time during the term of this Lease, the methods of taxation prevailing on the Commencement Date shall be altered so that, in lieu of, as an addition to, or as a substitute for the whole or any part of the taxes, assessments, levies, impositions, or charges now levied, assessed, or imposed on real estate and the improvements thereon, there shall be levied, assessed or imposed (a) a tax, assessment, levy, imposition, or charge wholly or partially as a capital levy or otherwise on the rents received therefrom, (b) a tax, assessment, levy, imposition, or charge measured by, or based in whole or in part upon, the Demised Premises and imposed upon Landlord, or (c) a license fee measured by the rents payable by Tenant to Landlord, then all such taxes, assessments, levies, impositions, or charges, or the part thereof so measured or based, shall be deemed to be included within the term Taxes for the purposes hereof.

2.    Tax Year shall mean the fiscal year for which Taxes are levied by the governmental authority during the term of this Lease.

3.    Tenant's Proportionate Share shall mean, for purposes of this Lease and all calculations in connection herewith .50%.

4.    Tenant's Proportionate Share of Taxes shall mean Tenant's Proportionate Share multiplied by the amount by the Taxes for the subject Tax Year. Tenant shall pay, as Additional Rent, its Proportionate Share of Taxes within fifteen (15) days after Landlord bills Tenant for the Additional Rent for Taxes.

40B.02   At Landlord's option, Tenant shall pay, in advance, to Landlord on the first day of each month as Additional Rent one twelfth of the annual Taxes projected by Landlord to be due ("Tenant's Projected Share of Taxes").  Upon Landlord's receipt of the real estate tax bill, Landlord shall supply a copy to Tenant.  If the real estate tax bill furnished by Landlord to Tenant shall indicate that the total payments for Tenant's Projected Share of Taxes for said tax year exceeds the Taxes actually assessed, Landlord shall forthwith credit the amount of such excess against the subsequent payment on account of Taxes due hereunder (or pa to Tenant such excess if the Term has expired and no monies are owing to Landlord by Tenant); if the tax bill furnished by Landlord to Tenant hereunder shall indicate that Real Estate Taxes exceed the total payments received from the Tenant, Tenant shall, within fifteen (15) days after receipt of the Real Estate Tax bill, pay the amount of such excess to Landlord.  The obligations under this Article shall survive termination of the Lease.  Additionally, on the Commencement Date, Tenant shall pay as additional rent, the Taxes due for the period from the Commencement Date through the end of the then current tax period.

Each statement furnished under this Section 40B.02 is hereinafter called a Tax Statement. Every Tax Statement furnished by Landlord shall be conclusive and binding upon Tenant, unless Tenant shall notify Landlord within thirty (30) days after receipt of such statement that it disputes the correctness of the computations made thereon, specifying the particular respects.  Pending the resolution of such dispute, Tenant, shall, within thirty (30) days after receipt of such disputed Tax Statement, pay any Additional Rent due in accordance therewith, but such payment shall be without prejudice to Tenant's position.  If the dispute shall be resolved in Tenant's favor, Landlord shall, on demand, pay Tenant the amount of Tenant's overpayment of rents, if any, resulting from compliance with the disputed Tax Statement.

O:\24STREET\PAPA JOHNS\Papa Johns RIDER v4.doc

40B.03        Tenant shall be obligated to pay Additional Rent for Taxes, regardless of the fact that Tenant may be exempt, in whole or in part, from the payment of any Taxes by reason of Tenant's diplomatic or other tax exempt status or for any other reason whatsoever.

40B.04        Tenant is not entitled to institute tax reduction or other proceedings to reduce the assessed valuation of the land and the Building. Should Co-op Corp. (as defined herein) be successful in any such reduction proceedings and obtain a rebate for periods during which Tenant has paid its share of increases, Landlord shall, after deducting its reasonable expenses (including reasonable attorneys' fees and disbursements in connection therewith), return Tenant's Proportionate Share of such rebate to Tenant.

40B.06        Landlord's failure to prepare and deliver any of the tax bills, statements, notices, or bills set forth in this Article 40B, or Landlord's failure to make a demand, shall not in any way cause Landlord to forfeit or surrender its rights to collect any of the foregoing items of Additional Rental that may have become due during the term of this lease. Tenant's liability for the amounts due under this Article 40 shall survive the expiration of the term hereof, and any amount due for a partial period between the expiration of a Tax Year, Operational Year, or Lease Year and the Expiration Date shall be prorated.

40C.   UTILITIES

40C.01        The Tenant shall pay for and provide its own gas, electricity and all other utilities including heat, except if heat is being supplied by the Co-op at no cost to the Landlord, then same shall be available to the Tenant. Water is submetered and Tenant shall pay Landlord upon presentment of bill. Electric is metered and Tenant shall pay directly to Con Edison. In addition, in the event that any utility, sewerage rentals or other charges are assessed against the entire premises, of which Demised Premises forms a part, the Tenant shall pay its proportionate share of the same based on Tenant's rentable square footage as a percentage of the rentable square footage of the entire premises that are billed. Payment of the same shall be forthcoming from the Tenant within ten (10) days after rendering of the bill by the Landlord, and in the event that the Tenant shall fail to pay the same after the said ten (10) days have elapsed, then and in that event the Landlord shall have the right to pay the same, and any payments so made by the Landlord shall be deemed to be additional rent and shall be added to the next month's installment of rent due.

40C.02 In no event shall Tenant use or install any fixtures, equipment or machines, the use of which, in conjunction with other fixtures, equipment and machines, would result in an overload of the electrical circuits servicing the Demised Premises and/or the Building.

40C.03        Interruption or curtailment of such service shall not constitute a constructive or partial eviction nor entitle Tenant to any compensation or abatement of rent. Tenant covenants and agrees that at all times its use of electric current shall never exceed the capacity of the existing feeders to the demised premises and/or Building or of the risers or wiring installation servicing same.

40C.04 (a)        Landlord Consent Required. In the event that Tenant wishes to utilize services of an alternative electricity service provider ("ASP") rather than the public utility that is servicing the Building as of the date of Tenant's execution of this Lease, no such ASP shall be permitted to provide service to Tenant or to install its lines or other equipment within the Building without obtaining the prior written consent of Landlord, which shall not be unreasonably withheld.

(b)        Conditions of Consent. Unless all of the following conditions are satisfied to Landlord's satisfaction in a written agreement between the ASP and Tenant or by any other means acceptable to Landlord, it shall be reasonable for Landlord to refuse its content:
(i)        Landlord shall incur no expense whatsoever with respect to any aspect of ASP's provision of its services including without limitation, the cost of installation, service, and materials;
(ii)        Prior to commencement of any work in or about the Demised Premises and/or Building by ASP, ASP shall supply Landlord with verification that, in Landlord's sole judgment, ASP is (A) properly insured, and (B) financially capable of covering any uninsured damage;
(iii)        Prior to the commencement of any work in or about the Building by ASP, ASP shall agree in writing to abide by such rules and regulations, job site rules, and such other requirements as reasonably determined by Landlord to be necessary to protect the interest of the Building.
(iv)        Landlord reasonably determines that there is sufficient space in the Building for the placement of all of ASP's equipment and materials, including without limitation, in the electricity risers;
(v)        ASP is in Landlord's sole judgment, licensed and reputable, as shown in documents acceptable to Landlord;
(vi)        ASP agrees, in a licenses agreement signed by Landlord and ASP, to compensate Landlord the amount determined by Landlord for (A) space used in the Building for the storage and maintenance of ASP's equipment ("ASP'S Space"); and (B) all costs that may be

O:\24STREET\PAPA JOHNS\Papa Johns RIDER v4.doc

incurred by Landlord in arranging for access by ASP's personnel, security for ASP's equipment, and any other such costs as Landlord may incur;

      (vii)    ASP agrees that Landlord shall have the right to supervise ASP's performance of any work in or about the Building including without limitation any installations or repairs;

      (viii)    ASP agrees that Landlord shall have the right to enter ASP's Space at any time in the event of an emergency and at all reasonable notice for the purpose of (A) inspecting same; (B) making repairs to ASP's Space and performing work therein as may be necessary, in Landlord's judgment; or (c) exhibiting ASP's Space for purposes of sale, lease, ground lease, or financing.

    (c)    Landlord's consent under this section shall not be deemed any kind of warranty or representation by Landlord, including without limitation, as to the suitability or competence of ASP.

    (d)    Tenant acknowledges and agrees that all electricity services desired by Tenant shall be ordered and utilized at the sole expense of Tenant.

    (e)    Tenant agrees that to the extent service by ASP is interrupted, curtailed, or discontinued for whatever reason, Landlord shall have no obligation or liability with respect thereto.

    (f)    Tenant shall indemnify and hold harmless Landlord for all losses, claims, demands, expenses, and judgments against Landlord caused by or arising out of, either directly or indirectly, any acts or omissions by ASP.

    (g)    Notwithstanding any provision herein to the contrary, the refusal of Landlord to consent to any prospective ASP shall not be deemed a default or breach by Landlord or its obligations under this Lease unless and until Landlord is adjudicated in a final and unappealable court decision to have acted recklessly or maliciously with respect to its refusal.

    (h)    Notwithstanding Tenant's rights hereunder, Landlord shall have the right at any time and from time to time during the Lease Term to require Tenant to contract for electricity service with a different ASP or ASPs ("**Landlord's ASP**").

## 40D.  OBNOXIOUS ODORS

    40D.01    Tenant shall take reasonable precautions not to permit any unusual or obnoxious odors to emanate from the Demised Premises. Tenant further agrees to keep all chemicals and/or products that could cause an unusual or obnoxious odor in such a manner so as not to create odors. In the event any odor condition is not promptly remedied within five (5) days after written notice from Landlord, Landlord may, at its discretion, cure such condition and thereafter add the reasonable cost and expense incurred by Landlord therefor to the next monthly rental to become due, and Tenant shall pay said amount as Additional Rental. Landlord shall have the right to enter the Demised Premises at any time to inspect the same and ascertain whether they are clean and free of odors.

## 41.  USE AND OCCUPANCY

    41.01    Tenant shall use and occupy the Demised Premises in connection with the operation of a self serve and counter serve pizza restaurant or any other use permitted under the PAPA JOHN'S Franchise, provided that no less than ninety (90%) percent of the business is related to a pizza or Italian style restaurant and for no other purpose.

    41.02    If any governmental license or permit, other than a Certificate of Occupancy, shall be required for the proper and lawful conduct of Tenant's business in the Demised Premises, or any part thereof, and if failure to secure such license or permit would in any way affect Landlord, Tenant, as its expense, shall duly procure and thereafter maintain such license or permit and submit the same for inspection by Landlord. Tenant shall at all times comply with the terms and conditions of each such license or permit.

    41.03    Tenant shall not at any time use or occupy, or suffer or permit anyone to use or occupy, the Demised Premises, or do or permit anything to be done in the Demised Premises, in violation of the Certificate of Occupancy for the Demised Premises or for the Building.

    41.04    Tenant, at Tenant's expense, shall comply with all laws, rules, orders, ordinances, directions, regulations and requirements of federal, state, county and municipal authorities, now in force or which may hereafter be in force, which shall impose any duty upon Landlord or Tenant with respect to the use, occupation or alteration of the Demised Premises.

O:\24STREET\PAPA JOHNS\Papa Johns RIDER v4.doc

42.   **TENANT'S INSTALLATIONS**

42.01   Notwithstanding anything hereinbefore contained to the contrary, provided Tenant complies with all of the laws, orders, rules and regulations of the governmental authorities and the Fire Insurance Rating Organization having jurisdiction thereof and the local Board of Fire Underwriters or any other similar body and, provided further, Tenant is not in default under any of the terms, covenants and conditions of this lease, Tenant shall have the right, at its own cost and expense, to install such new, first class equipment and fixtures as may be required for the proper conduct of Tenant's business (which is limited to the use provided for in Article 41), except that Landlord's prior consent shall be required for any installation requiring structural alteration or changes to the Demised Premises.  Tenant's installation of its equipment, fixtures, etc. shall be in compliance with (i) all floor loading requirements of the Building (as stated in the Certificate of Occupancy), and (ii) all applicable laws, orders, rules and regulations of governmental authorities having jurisdiction hereof, including but not limited to Building codes and insurance underwriters.  Subject to the provisions of this Article, any and all movable equipment and fixtures installed by Tenant (sometimes herein referred to as "Tenant's Property") shall remain personalty notwithstanding the fact that it may be affixed or attached to the realty, and shall, during the term of this Lease or any extension or renewal thereof, belong to and be removable by Tenant, provided that (i) Tenant shall remove said installations prior to the expiration of such term or the sooner termination thereof; and (ii) Tenant shall repair any damage caused by said removal and shall deliver the Demised Premises to Landlord in the same condition, damage by casualty excepted, except if caused by act or omission of Tenant, as upon the commencement of the term hereof, reasonable wear and tear excepted.  Prior to the expiration of the term or sooner termination thereof, Tenant shall, at its own cost and expense, remove from the Demised Premises all of Tenant's Property, except such items thereof as Tenant shall have expressly agreed in writing with Landlord are to remain and to become the property of Landlord and Tenant shall repair any damage to the Demised Premises resulting from such removal.

42.02   Tenant shall ascertain from Landlord within thirty (30) days prior to the end of the term hereof or any extension or renewal thereof whether Landlord desires to have any non-movable fixtures, and/or equipment permanently installed by Tenant, removed from the Demised Premises and if Landlord shall so desire, Tenant shall, prior to the end of the term hereof, remove such indicated items and restore the Demised Premises with respect thereto, to the same condition, damage by casualty excepted, except if caused by act or omission of Tenant, as upon the commencement of the term hereof, reasonable wear and tear excepted.  All fixtures and equipment installed by Tenant, except those items which Landlord expressly agrees are to remain in the Demised Premises and become the property of Landlord, remaining within the Demised Premises after the expiration of such term or sooner termination thereof and after Tenant is no longer in possession of the Demised Premises shall, at Landlord's option, either (i) become the property of Landlord, free of any claim by Tenant or any person claiming through Tenant, or (ii) be removed and disposed of by Landlord, at Tenant's cost and expense, without further notice to or demand upon Tenant.  Fixtures, chattels, or equipment, if any, furnished or installed by Tenant, the cost of which is to be borne by Landlord, shall become the property of Landlord upon payment therefor by Landlord or reimbursement of Tenant by Landlord, as the case may be, and shall not be removed by Tenant.  Tenant's obligations under this Article shall survive the expiration or sooner termination of the term hereof. Anything herein contained to the contrary notwithstanding, it is understood and agreed that all structural improvements made by Tenant in the Demised Premises shall be surrendered to the Landlord at the expiration of the term.

42.03   Intentionally Deleted.

43.   **SIGNS AND DIRECTORY LINES**

43.01   Tenant is required to install a uniform sign that matches the signs now existing at the building on or before the Commencement Date (indicating the name and address of Tenant only) and attached lighting above the Demised Premises strictly in accordance with the specifications approved by Landlord at Tenant's sole cost and expense.  Prior to installation and fabrication, Tenant must obtain Landlord's prior written approval as to all aspects of the sign and lighting including but not limited to materials, method of installation, color, type, contents, design, location and dimensions.  If Tenant fails to comply with the provisions of this Article, Landlord in addition to any other remedies available pursuant to this lease or pursuant to any law, may fabricate and install the required sign and lighting at Tenant's sole cost and expense.  Any costs incurred will be charged to Tenant as additional rent and are due and payable immediately.  Tenant shall comply with all of the laws, orders, rules and regulations of the governmental authorities having jurisdiction thereof, including zoning laws, building codes and as required by insurance underwriters.  Tenant shall obtain and pay for all permits required therefor.  Tenant expressly agrees that such sign shall not be installed on the Building until all approvals and permits are first obtained and

O:\24STREET\PAPA JOHNS\Papa Johns RIDER v4.doc

copies thereof delivered to Landlord with evidence of payment for any fees pertaining thereto. Tenant agrees to pay all annual renewal fees pertaining to Tenant's signs. Tenant may not install any other sign without first obtaining Landlord's prior written approval. Tenant agrees to pay all annual renewal fees pertaining to Tenant's signs. Tenant agrees to pay all other fees related to the signs including fees related to illumination. If Tenant does not pay any fee due to any third party when due, Landlord may do so on Tenant's behalf and charge same to Tenant's account. All sums due pursuant to this paragraph shall be deemed Additional Rent.

43.02   Tenant shall have the right to install and maintain, at its sole cost and expense, a sign indicating the name of Tenant on the entrance door and on the windows to the Demised Premises, subject to Landlord's prior written approval, including, without limitation, approval as to materials, size, color, type, contents, design and location. Tenant shall comply with all of the laws, orders, rules and regulations of the governmental authorities having jurisdiction thereof, including zoning laws, building codes and as required by insurance underwriters. Tenant shall obtain and pay for all permits required therefor. Tenant expressly agrees that such signs shall not be installed on the Building until all approvals and permits are first obtained and copies thereof delivered to Landlord with evidence of payment for any fees pertaining thereto. Tenant agrees to pay all annual renewal fees pertaining to Tenant's signs. Tenant agrees to pay all annual renewal fees pertaining to Tenant's signs. Tenant agrees to pay all other fees related to the signs including fees related to illumination. If Tenant does not pay any fee due to any third party when due, Landlord may do so on Tenant's behalf and charge same to Tenant's account. All sums due pursuant to this paragraph shall be deemed additional rent.

43.03   As used in this paragraph, the word "sign" shall be construed to include any placard, light, designs, monuments, logos, banners, projected images, pennants, decals, advertisements, pictures, notices, lettering, numerals, graphics, decorations or other advertising symbol or object irrespective of whether same be temporary or permanent.

43.04   In the event Landlord or Landlord's representatives shall deem it necessary to remove any such sign or signs in order to paint or to make any other repairs, alterations or improvements in or upon the Demised Premises or the Building wherein same is located, or any part thereof, the Landlord shall have the right to do so provided the same be removed and replaced at Landlord's expense, whenever the said repairs, alterations and improvements shall have been completed.

43.05   Tenant shall not install or use any flashing display or light or any strobe-type light fixtures on the exterior of the Demised Premises, or in the interior if visible from the exterior, without Landlord's prior written consent. Upon notice from Landlord, Tenant shall remove or take such other action as Landlord may direct to mitigate any such lighting which has been installed without the Landlord's prior written approval.

43.05   Tenant will not place or suffer to be placed or maintained on the exterior of the Demised Premises, or in the interior of the Demised Premises if it is visible from the exterior, or in any vestibule of the Demised Premises, any sign, lettering, advertising matter, or other item of any kind, and will not place or maintain any decoration, lettering or advertising matter on the glass or any window or door of the Demised Premises without the prior written consent of Landlord.   All such signs or other items shall conform to design criteria provided by Landlord and shall relate solely to the business of Tenant.

44.   INDEMNITY-LIABILITY INSURANCE

44.01 Tenant assumes the liability for damage to the Demised Premises, all improvements, fixtures, partitions, equipment and person property therein, and all appurtenances thereto, regardless of the cause thereof. Except as otherwise provided herein, Tenant expressly waives and releases Landlord from all claims against Landlord and agrees to hold Landlord harmless for any loss resulting from damage or loss to Tenant's goods, wares, merchandise, inventories, fixtures and/or equipment of any invitee, subsidiary, or affiliate of Tenant in, upon or about said Demised Premises regardless of the cause.

44.02 Tenant shall secure, pay for and maintain, at its own expense, the following insurance policies in full force and effect during the term of the Extended Lease, for the benefit of the Landlord, Tenant and any holder of a mortgage on the Building of which Tenant has notice:

(a)   Commercial General Liability at limits of $1,000,000 per occurrence/$2,000,000 aggregate per location subject to no deductible including broad form general liability extensions without limitations and host liquor liability coverage. Contractual liability, if not written on a blanket basis must be endorsed to cover indemnities specified herein. This policy shall be written on an "occurrence" basis.

Policy shall be endorsed to name Landlord as "additional insured". Definition of Additional Insured shall include all partners, officers, directors, employees, agents and representatives of the named entity

including its managing agent, if any.  Further, coverage for "Additional Insured" shall apply on a primary basis irrespective of any other insurance, whether collectible or not.

    (b)    Property Insurance:    Replacement cost insurance on Landlord's Work, Tenant's Work, Tenant's Changes, Tenant's Property and all other of Tenant's machinery, equipment, furniture and fixtures, goods, wares, merchandise, and improvements/betterments, and Business Interruption/Extra Expense in sufficient amounts against damage caused by fire and all other perils covered by a standard All Risk Insurance Policy.  Tenant agrees to waive its right of subrogation against Landlord and shall obtain a waiver from its respective insurance companies releasing these carriers' subrogation rights against the Landlord.

    (c)    Workers Compensation and Employers Liability Insurance affording coverage under the Workers Compensation laws of the applicable State and Employers Liability coverage subject to a limit of no less than $500,000 each employee, $500,000 each accident, $500,000 policy limit.

    (d)    Umbrella Liability Insurance at not less than a $2,000,000 limit providing excess coverage over all limits and coverages noted above in this Section 11.02.  This policy shall be written on an "occurrence" basis.

Policy shall be endorsed to name Landlord as "additional insured".  Definition of Additional Insured shall include all partners, officers, directors, employees, agents and representatives of the named entity including its managing agent, if any.  Further, coverage for "Additional Insured" shall apply on a primary basis irrespective of any other insurance, whether collectible or not.

    (e)    Evidence (Notices) of Compliance  All policies shall be endorsed to provide that in the event of cancellation, non-renewal or material modification, Landlord shall receive thirty (30) days written notice thereof.  Tenant shall furnish Landlord with Certificates of Insurance evidencing compliance with all insurance provisions noted above no later than (5) days prior to the Commencement Date; and prior to the expiration or anniversary of the respective policy terms.  All Certificates of Insurance or policy termination notices should be delivered to:

Parker 24 Commercial Associates  
c/o Parker Management New York, LLC  
1700 Broadway - 34th Floor  
New York, New York 10019

    (f)    Indemnification/Hold Harmless  Tenant shall, to the fullest extent permitted by law and at its own cost and expense, defend, indemnify and hold Landlord its partners, directors, officers, employees, servants, representatives and agents harmless from and against any and all claims, loss, (including attorneys' fees, witnesses' fees and all court costs), damages, expense and liability (including statutory liability), resulting from injury and/or death of any person or damage to or loss of any property arising out of any negligent or wrongful act, error or omission or breach of contract, in connection with the operations of Tenant except to the extent caused by the gross negligence or willful misconduct of Landlord or its employees, agents or contractors.  The foregoing indemnity shall include injury or death of any employee of Tenant and shall not be limited in any way by an amount or type of damages, compensation or benefits payable under any applicable Workers Compensation, Disability Benefits or other similar employee benefits acts.

    (i)    All policies noted above shall be shall be written with insurance companies licensed to do business in the State of New York and rated no lower than A:10 in the most current edition of A.M. Best's Property Casualty Key Rating Guide.

Failure to comply with any of the insurance provisions noted above will result in a breach of the Extended Lease, by the Tenant.

44.03    Tenant shall obtain, at no cost to Landlord, an appropriate clause in, or an endorsement upon, each "All Risk" property policy obtained by it and covering the Demised Premises, Landlord's Work, Tenant's Work, Tenant's Changes, Tenant's Property and/or other of Tenant's personal property, fixtures and equipment located therein or thereon, pursuant to which the Tenant's insurance company waives subrogation or permits the insured, prior to any loss, to agree with a third party to waive any claim it might have against said third party. The waiver of subrogation or permission for waiver of any claim hereinbefore referred to shall extend to the agents of Tenant and its employees and, shall also extend to all other persons and entities occupying or using the Demised Premises in accordance with the terms of the Extended Lease. In the event that Tenant shall fail to obtain such waiver of subrogation from its insurer, then Tenant hereby agrees to indemnify and hold Landlord harmless from all loss, damages, claims, costs and expenses incurred by Landlord by reason of Tenant's insurer making any claim against Landlord, its employees or agents for which Tenant was obligated to obtain such waiver of

subrogation.

44.04 If, by reason of a failure of Tenant to comply with any of the provisions of Article 44, the rate of fire insurance with extended coverage on the Building or equipment or other property of Landlord shall be higher than it otherwise would be, Tenant shall reimburse Landlord, on demand, for that part of the premiums for fire insurance and extended coverage paid by Landlord because of such failure on the part of Tenant.

44.05 A schedule or make up of rates for the Building or the Demised Premises, as the case may be, issued by the New Jersey Fire Insurance Rating Organization or other similar body making rates for fire insurance and extended coverage for the premises concerned, shall be conclusive evidence of the facts therein stated and of the several items and charges in the fire insurance rate with extended coverage then applicable to such premises.

### 45.   WAIVER OF SUBROGATION

45.01 Each party hereby releases the other party (which term as used in this Article includes the employees, agents officers and directors of the other party) from all liability, whether for negligence or otherwise, in connection with loss covered by any fire and/or extended coverage insurance policies, which the releasor carries with respect to the Demised Premises, or any interest or property therein or thereon (whether or not such insurance is required to be carried under this lease), but only to the extent that such loss is collected under said fire and/or extended coverage insurance policies. Such release is also conditioned upon the inclusion in the policy or policies of a provision whereby any such release shall not adversely affect said policies, or prejudice any right of the releasor to recover thereunder. Each party agrees that its insurance policies aforesaid will include such a provision so long as the same shall be obtainable without extra cost, or if extra cost shall be charged therefor, so long as the party for whose benefit the clause or endorsement is obtained shall pay such extra cost. If extra cost shall be chargeable therefor, each party shall advise the other thereof of the amount of the extra cost, and the other party at its election may pay the same, but shall not be obligated to do so.

### 46.   AS-IS POSSESSION

46.01 Tenant acknowledges that it has made a full and complete inspection of the Demised Premises, and other than Landlord's Work ( as described in Exhibit B) Tenant agrees to accept same on the Commencement Date in its present "as is" condition. Tenant acknowledges that Landlord, or Landlord's agent, has made no representations or promises in regard to the Demised Premises for the term herein demised. The taking of possession of the Demised Premises by Tenant for the term herein demised shall be conclusive evidence as against Tenant that the Demised Premises and the building was in good and satisfactory condition at the time such possession was taken.

46.02 The Demised Premises shall be deemed ready for occupancy on the earliest date on which Landlord's Work has been substantially completed; and it shall be so deemed notwithstanding the fact that minor or insubstantial details of construction, mechanical adjustment, or decoration remain to be performed, the noncompletion of which does not materially interfere with Tenant's use of the Demised Premises. Landlord shall give Tenant a preliminary notice, estimating when the Demised Premises will be ready for occupancy, on a date which shall be at least thirty (30) days prior to the estimated date set forth in such preliminary notice. Any variance between the date so estimated and the date such condition is met shall be of no consequence.

### 47.   PERMITS

47.01 Tenant covenants that Tenant will not use or suffer or permit any person to use the Demised Premises for any unlawful purpose and to obtain and maintain at Tenant's sole cost and expense all licenses and permits from any and all governmental authorities having jurisdiction of the Demised Premises which may be necessary for the conduct of Tenant's business thereon. Tenant further covenants to comply with all applicable laws, resolutions, codes, rules and regulations of any department, bureau, agency or any governmental authority having jurisdiction over the operation, occupancy, maintenance and use of the Demised Premises for the purpose set forth herein. Tenant will indemnify and save Landlord harmless from and against any claims, penalties, loss, damage or expense imposed by reason of a violation of any applicable law or the rules and regulations of governmental authorities having jurisdiction thereof relating to Tenant's use and occupancy.

### 48.   CLEANING AND REMOVAL OF GARBAGE

48.01    The entire Demised Premises is to be kept clean by Tenant, at its sole cost and expense, in a manner satisfactory to Landlord. Tenant agrees to independently contract for the removal of all rubbish, refuse and waste from the Demised Premises utilizing licensed contractors and subcontractors, and Tenant shall provide Landlord with evidence thereof prior to signing this Lease and at any other time upon request. The removal of such rubbish, refuse, garbage and waste shall be subject to such rules and regulations as, in the reasonable judgment of Landlord, are necessary for the proper operation of the Building, provided the same are uniform and non-discriminatory. Tenant agrees to deposit ashes, garbage and other refuse in properly covered receptacles. Tenant shall comply with all applicable requirements, if any, of the Department of Health and Sanitation of the City of New York relating to the treatment of such rubbish prior to its placement for disposal. Tenant further agrees not to permit the accumulation (unless in concealed metal containers) of any rubbish or garbage in, on or about any part of the Demised Premises and not to permit any garbage or rubbish to be collected or disposed of from the Demised Premises during the hours of 8:30 a.m. to midnight, except in strike and emergency situations.

Tenant shall not encumber or obstruct, or permit to be encumbered or obstructed, the street and sidewalk adjacent to or abutting upon the premises.

48.02    Tenant agrees to have all snow and ice removed from the sidewalk in front of the Demised Premises as soon as practicable and will keep the said sidewalk clean at all times. It is made a substantial obligation of the tenancy that the Tenant shall maintain the Demised Premises utilized by the Tenant in a clean condition. Tenant shall be responsible, at its sole cost and expense, for any extermination or vermin, roaches, etc. Said extermination is to be conducted on a frequent basis.

48.03    Tenant agrees to:  (i) maintain the Demised Premises in a clean and orderly fashion; (ii) make all necessary repairs and replacements; and (iii) comply with all of Landlord's rules and regulations required to maintain the Demised Premises in a clean and orderly fashion consistent with the use and appearance of the building and in accordance with the provisions of this Lease. In the event that Tenant does not conform to these provision, Landlord reserves the right, upon reasonable advance written notice, and at Tenant's sole cost and expense, to enter the Demised Premises for the specific purpose of rectifying the condition and restoring the Demised Premises to the condition, use, and appearance required by the Landlord pursuant to this Lease.  Such entry by Landlord does not constitute Landlord's acceptance of Tenant's surrender of the Demised Premises.

48.04    Tenant will, at its expense, keep  the inside and outside of all glass in the doors and windows of the Demised Premises and all exterior store surfaces of the Demised Premises clean and free of graffiti.

## 49.    SECURITY

49.01   Tenant has deposited with Landlord the sum of $42,996.00 either in cash or by Letter of Credit as provided in Section 49.02, as security for the faithful performance and observance by Tenant of the terms, provisions and conditions of this Lease. Tenant agrees that, in the event that Tenant is in default in respect of any of the terms, covenants, provisions and conditions of this Lease (including the payment of rent and additional charges), Landlord may use, apply or retain the whole or any part of the cash security then held by Landlord or may notify the "Issuing Bank" (as such term is defined in Section 49.02) and thereupon receive all of the monies represented by the said Letter of Credit and use, apply or retain the whole or any part of such proceeds, as the case may be, to the extent required for the payment of any rent, additional charges, or any other sum as to which Tenant is in default, or for any sum which Landlord may expend or may be required to expend by reason of Tenant's default in respect of any of the terms, covenants and conditions of this Lease (including any damages or deficiency accrued before or after summary proceedings or other re-entry by Landlord). In the event that Landlord applies or retains any portion of such security or proceeds of such Letter or Credit, as the case may be, Tenant shall forthwith restore the amount so applied or retained so that, at all times, the amount deposited or the amount of the Letter of Credit, as the case may be, shall be $42,996.00.  In the event that Tenant shall fully and faithfully comply with all of the terms, provisions, covenants and conditions of this Lease, the cash security then held by Landlord, or Letter of Credit, as the case may be, shall be returned to Tenant after the date fixed as the end of the Lease and after delivery of entire possession of the Demised Premises to Landlord in accordance with the terms of this Lease.

49.02   In lieu of a cash deposit, Tenant may deliver to Landlord a clean, irrevocable and unconditional standby Letter of Credit issued by and drawn upon any commercial bank or trust company (hereinafter referred to as the "Issuing Bank") satisfactory to Landlord or a member of the New York Clearing House Association, with offices for banking purposes in the City of New York at which the Letter of Credit may be drawn upon  and having a net worth of not less than One Billion and 00/100 ($1,000,000,000.00) Dollars, which Letter of Credit shall have an initial term of not less than one (1) year, be in form and content satisfactory to Landlord, be for the account of Landlord, be in the amount of $42,996.00 be subject to the International Standby Practices 1998, International Chamber of Commerce

Publication No. 590 as same may be updated or superceded from time to time and, be transferable one or more times by Landlord without Tenant's consent.   The Letter of Credit shall provide that it shall be deemed automatically renewed, without amendment, for consecutive periods of one (1) year each thereafter through a date which is not earlier than sixty (60) days after the Expiration Date of the Lease, unless Issuing Bank sends written notice (hereinafter referred to as the "**Non-Renewal Notice**") to Landlord by certified or registered mail, return receipt requested, not less than thirty (30) days next preceding the then expiration date of the Letter of Credit that it elects not to have such Letter of Credit renewed.   Additionally, the Letter of Credit shall provide that Landlord, within twenty (20) days of its receipt of the Non-Renewal Notice, shall have the right, exercisable by means of a sight draft, to receive the monies represented by the Letter of Credit and hold such proceeds pursuant to the terms of Section 6.01 as a cash security (except that Landlord shall have no obligation to maintain such cash security in an interest bearing account) pending the replacement of such Letter of Credit.

49.03   In the event of either: (i) a sale of the Land or the Building or a leasing of the Building, of which the Demised Premises form a part; or (ii) the addition, deletion, or modification of any beneficiaries under the Letter of Credit;   Landlord shall have the right to transfer the cash security then held by Landlord, or Letter of Credit, as the case may be, deposited hereunder to the vendee, lessee or beneficiary and Landlord shall provide Tenant with written evidence of said transfer and assumption and thereupon be released by Tenant from all liability for the return of such cash security or Letter of Credit, so transferred or assigned.   In such event, Tenant agrees to look to the new landlord solely for the return of said cash security or Letter of Credit, as the case may be.   It is agreed that the provisions hereof shall apply to every transfer or assignment made of said cash security or Letter of Credit to a new landlord. Tenant acknowledges and agrees that it shall pay any and all costs or fees charged in connection with such transfer or assignment of the Letter of Credit.

49.04   Tenant covenants that it will not assign or encumber or attempt to assign or encumber the monies or Letter of Credit deposited hereunder as security and that neither Landlord nor its successors or assigns shall be bound by any such assignment, encumbrance, attempted assignment or attempted encumbrance.

49.05   In the event that at any time during the term of this Lease, Landlord, in Landlord's reasonable opinion, believes (a) that the net worth of the Issuing Bank shall be less than the minimum amount specified in Section 49.02, or (b) that circumstances have occurred indicating that the Issuing Bank may be incapable of, unable to, or prohibited from honoring the then existing Letter of Credit (hereinafter referred to as the "**Existing L/C**") in accordance with the terms thereof, then, upon the happening of either of the foregoing, Landlord may send written notice to Tenant (hereinafter referred to as the "**Replacement Notice**") requiring Tenant within ten (10) business days to replace the Existing L/C with a new Letter of Credit (hereinafter referred to as the "**Replacement L/C**") from an Issuing Bank meeting the qualifications described in Section 49.02.   Upon receipt of a Replacement L/C meeting the qualification of Section 49.02, Landlord shall forthwith return the Existing L/C to Tenant.   In the event that (i) a Replacement L/C meeting the qualifications of Section 49.02 is not received by Landlord within the time specified, or (ii) Landlord reasonably believes an emergency exists, then, in either event, the Existing L/C may be presented for payment by Landlord and the proceeds thereof shall be held by Landlord in accordance with Section 49.01 subject, however, to Tenant's right, at any time thereafter, prior to a Tenant's default hereunder, to replace such cash security with a new Letter of Credit meeting the qualifications of Section 49.02.

49.06   Tenant hereby agrees to cooperate, at Tenant's expense, with Landlord to promptly execute and deliver to Landlord any and all modifications, amendments and replacements of the Letter of Credit, as Landlord may reasonably request to carry out the terms and conditions of this Article 49.

49.07   Provided this Lease shall be in full force and effect and Tenant is not then in default of any of the terms, covenants or conditions of this Lease, the security deposit shall be reduced by $21,498.00 on the first (1st) anniversary of the Commencement Date.   Thereafter, the security deposit Tenant will remain at $21,498.00 through the Expiration Date.

49.08   When fixed rental is increased pursuant to Section 40A.01 of this Lease, Tenant is required to pay an additional amount so that the security deposit will equal three (3) months fixed rental.

50.   <u>BROKER</u>

50.01   Tenant and Landlord covenant, warrant and represent that there was no broker other than Robert K. Futterman, Inc. and Besen Retail, LLC, instrumental in consummating this lease, and no conversations, or negotiations were had with any broker other than Robert K. Futterman, Inc. and Besen Retail, LLC, concerning the renting of the Demised Premises. Tenant agrees to indemnify, defend and hold and save Landlord harmless against any and all liability from any claims of any broker other than

O:\24STREET\PAPA JOHNS\Papa Johns RIDER v4.doc

Robert K. Futterman, Inc. and Besen Retail, LLC, in connection with the renting of the Demised Premises (including, without limitation, the cost of counsel fees in connection with the defense of any such claims in connection with the renting of the Demised Premises). Tenant represents that Tenant has dealt with no broker other than Robert K. Futterman, Inc. and Besen Retail, LLC in connection with this transaction. Landlord agrees to pay the brokers pursuant to a separate agreement.

## 51.   DELIVERIES

51.01   Tenant agrees that Tenant's deliveries to the Demised Premises shall be subject to Landlord's rules and regulations as shall be promulgated from time to time throughout the term of this Lease.

## 52.   MODIFICATION FOR MORTGAGES

52.01   If, in connection with obtaining financing or refinancing for the Building of which the Demised Premises form a part, a banking, insurance or other institutional lender shall request reasonable modifications to this Lease as a condition to such financing or refinancing, Tenant will not withhold, delay or defer its consent thereto, provided that such modifications do not increase the obligations of Tenant hereunder (except, perhaps, to the extent that Tenant may be required to give notices of any defaults by Landlord to such lender and/or permit the curing of such defaults by such lender together with the granting of such additional time for such curing as may be required for such lender to get possession of the Building), or materially adversely affect the Leasehold interest hereby created. In no event shall a requirement that the consent of any such lender be given for any modification of this lease or subject to the provisions of this Lease for any assignment or sublease, be deemed to materially adversely affect the Leasehold interest hereby created.

## 53.   EXCULPATORY CLAUSE

53.01   Tenant shall look solely to the estate and property of Landlord in the Land and Building and for satisfaction of Tenant's remedies for the collection of a judgment (or other judicial process) requiring the payment of money by Landlord in the event of any default or breach by Landlord with respect to any of the terms, covenants and conditions of the Lease to be observed and/or performed by Landlord, and no other property or assets of Landlord shall be subject to levy, execution or other enforcement procedure for the satisfaction of Tenant's remedies under or with respect to this Lease, the relationship of Landlord and Tenant hereunder, or Tenant's use and occupancy of the Demised Premises.

## 54.   CONFLICT OF TERMS

54.01   In the event any term, covenant, condition or agreement contained in this Rider to the Lease shall conflict or be inconsistent with any term, covenant, condition or agreement contained in the printed portion of this Lease, then the parties agree that the Rider provision shall prevail.

## 55.   COVENANT AGAINST LIENS

55.01   Tenant shall not do any act or make any contract which may create or be the foundation for any lien or other encumbrance upon any interest of Landlord in any portion of the premises of which the Demised Premises form a part. If, because of any act or omission (or alleged act or omission) of Tenant, any mechanic's lien or other lien, charge or order for the payment of money shall be filed against Landlord or any portion of the premises of which the Demised Premises form a part (whether or not such lien, charge or order is valid or enforceable as such), Tenant shall, at its own cost and expense , cause same to be discharged of record or bonded within thirty (30) days after notice to Tenant of the filing thereof; and the Tenant named herein shall personally indemnify and save Landlord harmless against and from all costs, liabilities, suits, penalties, claims and demands, including reasonable counsel fees resulting therefrom. If Tenant fails to comply with the foregoing provisions, Landlord shall have the option of discharging or bonding any such lien, charge or order and the Tenant named herein agrees to reimburse Landlord for Landlord's reasonable expenses (as Additional Rental) with interest (at an annual rate of 18%) payable promptly upon demand. All materialmen, contractors, artisans, mechanics, laborers and any other persons now or hereafter contracted with Tenant for the furnishing of any labor, services, materials, supplies or equipment with respect to any portion of the premises of which the Demised Premises form a part at any time from the date hereof until the end of the demised term are hereby charged with notice that they must look exclusively to Tenant to obtain payment for same.

## 56.   SAVING PROVISION

56.01   If any provision of this Lease, or its application to any situation, shall be invalid or unenforceable to any extent, the remainder of this Lease, or the application thereof to situations other than that as to

which it is invalid or unenforceable, shall not be affected thereby, and every provision of this Lease shall be valid and enforceable to the fullest extent permitted by law.

**57.   EASEMENT FOR PIPES, CONDUITS, ELECTRICAL CLOSET, EQUIPMENT, ETC.**

57.01   Tenant shall permit Landlord to erect, use, maintain and repair pipes, ducts, cables, conduits, electric closets, equipment for the building, plumbing, vents and wires in, to and through the Demised Premises as and to the extent that the same may be necessary for the proper operation and maintenance of the Building or to the extent necessary to accommodate the requirements of the other tenants of the Building.

**58.   LEASE NOT BINDING UNLESS EXECUTED**

58.01   Submission by Landlord of the within Lease for execution by Tenant, shall confer no rights nor impose any obligations on either party unless and until both Landlord and Tenant shall have executed this Lease and duplicate originals thereof shall have been delivered to the respective parties.

**59.   ENTIRE AGREEMENT, SUCCESSORS AND ASSIGNS**

59.01   This Lease constitutes the entire agreement between the parties hereto and no earlier statement or prior written matter shall have any force or effect. Tenant agrees that it is not relying on any representations or agreements other than those contained in this Lease. This agreement shall not be modified or canceled except by writing subscribed by both parties. This Lease shall not be modified or cancelled except by written instrument subscribed by both parties. The covenants, conditions and agreements contained in this Lease shall bind and inure to the benefit of Landlord and Tenant and their respective heirs, distributees, executors, administrators, successors and, except as otherwise provided in this Lease, their assigns.

**60.   RESTRICTION VS. OPERATION**

60.01   Tenant acknowledges that the Demised Premises is located in a building constituting a first-class luxury residential building. Tenant agrees that it will operate the Demised Premises in a manner consistent with such a building. Tenant shall not, at any time, use or occupy, or suffer or permit anyone to use or occupy, the Demised Premises in violation of the Certificate of Occupancy for the Demised Premises or the Building. Tenant covenants and agrees that it shall not use the name PARKER or similar name in the name under which it conducts business.

60.02   The provisions of this Article 60 are a material inducement for Landlord to execute and deliver this Lease. Any failure by Tenant to comply with the requirements of this Article 60 shall be deemed a material breach of this Lease, for which Landlord shall be entitled to any and all of its remedies in accordance with terms, conditions and covenants of this Lease.

**61.   INTENTIONALLY DELETED PRIOR TO EXECUTION.**

**62.   ARBITRATION**

62.01   Either party may request arbitration of any matter in dispute wherein arbitration is expressly provided in this Lease as the appropriate remedy. The party requesting arbitration shall do so by giving notice to that effect to the other party, and both parties shall promptly thereafter jointly apply to the American Arbitration Association (or organization successor thereto) in the City and County of New York for the appointment of a single arbitrator.

62.02   The arbitration shall be conducted in accordance with the prevailing rules of the American Arbitration Association (or any organization successor thereto) in the City and County of New York. In rendering such decision and award, the arbitrator shall not add to, subtract from or otherwise modify the provisions of this Lease.

62.03   If for any reason whatsoever a written decision and award of the arbitrator shall not be rendered within sixty (60) days after the appointment of such arbitrator, then at any time thereafter before such decision and award shall have been rendered either party may apply to the Supreme Court of New York or to any other court having jurisdiction and exercising the functions similar to those now exercised by such court, by action, proceeding or otherwise (but not by a new arbitration proceeding) as may be proper to determine the question in dispute consistently with the provisions of this Lease.

62.04   All the expenses of the arbitration shall be borne by the parties equally. (Except respective attorney's fees which shall be borne by the respective parties.)

O:\24STREET\PAPA JOHNS\Papa Johns RIDER v4.doc

63.   **ADDENDUM TO ARTICLE 11**

63.01   In no event shall any permitted sublessee assign or encumber its sublease, further sublet all or any portion of its sublet space, or otherwise suffer or permit the sublet space, or any part thereof, to be used or occupied by others, without Landlord's prior written consent in each instance.

63.02   If Tenant shall, at any time or times during the term of this Lease, desire to assign this Lease or sublet the Demised Premises, Tenant shall give notice in writing by registered or certified mail thereof to Landlord, which notice shall be accompanied by: (a) a conformed or photostatic copy of the proposed assignment or subease, the effective or commencement date of which shall be not less than sixty (60) nor more than one hundred eighty (180) days after the giving of such notice; (b) a statement setting forth, in reasonable detail, the identity of the proposed assignee or subtenant, the nature of its business and its proposed use of the Demised Premises; and (c) current financial information with respect to the proposed assignee or sub-tenant, including its most recent financial report.  Such notice shall be deemed an offer from Tenant to Landlord whereby Landlord (or Landlord's designee) may, at its option (**"Landlord Option"**) terminate this Lease (except if it is an assignment in connection with the sale of Tenant's business).  If Landlord consents to the sale of Tenant's business, Tenant Lease obligations shall be assigned and transferred to new tenant.  Landlord's Option may be exercised by Landlord by notice to Tenant at any time within sixty (60) days after such notice has been given by Tenant to Landlord; and during such sixty-day (60) period, Tenant shall not assign this Lease or sublet such space to any person.

63.03   If Landlord exercises its option to terminate this Lease in the event that Tenant desires either to assign this Lease (except if it is an assignment in connection with the sale of Tenant's business) or to sublet the Demised Premises, then this Lease shall end and expire upon the date that such assignment or subletting was to be effective or to commence, as the case may be, and the Fixed Rental and Additional Rental shall be paid and apportioned to such date.

63.04   In the event that Tenant complies with the provisions of Article 63.02 hereof and provided that Tenant is not in default of any of Tenant's obligations under this Lease after notice and the expiration of any applicable grace period, Landlord's consent which must be in writing to the proposed assignment or sublease (which must be in a form reasonably satisfactory to Landlord) shall not be unreasonably withheld or delayed, provided and upon condition that:

(i)   in Landlord's reasonable judgment, the proposed assignee or subtenant is engaged in such a business, and the Demised Premises, or the relevant part thereof, will be used in such a manner, that (a) is in keeping with the then standards of the Building; (b) is limited to the use expressly permitted under this Lease; and (c) will not violate any negative covenant as to use contained in any other Lease of space in the Building;

(ii)   the proposed assignee or sub-lessee is a reputable person of good character and with sufficient financial worth considering the responsibility involved, and Landlord has been furnished with reasonable proof thereof;

(iii)   neither (a) the proposed assignee or sublessee nor (b) any person that, directly or indirectly, controls, is controlled by, or is under common control with, the proposed assignee or sublessee or any person who controls the proposed assignee or sublessee, is then an occupant of any part of the Building;

(iv)   the proposed assignee or sublessee is not a person with whom Landlord is then negotiating to lease space in the Building;

(v)   the form of the proposed sublease or assignment shall be in form reasonably satisfactory to Landlord and shall comply with the applicable provisions of this Article;

(vi)   there shall not be more than one (1) subtenant of the Demised Premises;

(vii)   the amount of the aggregate rent to be paid by the proposed subtenant is not less than the then rent payable under this Lease per rentable square foot for the Demised Premises as though the Demised Premises were vacant, and the rental and other terms and conditions of the sublease are the same as those contained in the proposed sublease furnished to Landlord pursuant to Section 63.02 hereof;

(viii)   Tenant shall not have: (a) advertised or publicized in any way the availability of the Demised Premises without prior notice to, and approval by, Landlord, nor shall any advertisement state the name (as distinguished from the address) of the Building or the proposed rental or (b) listed the Demised Premises for subletting or assignment with a broker, agent or representative, other than the then managing agent of the building or other agent designated by Landlord, or at a rental rate less than the greater of (x) the Fixed Rental and Additional Rental then payable hereunder for such space or (y) the

O:\24STREET\PAPA JOHNS\Papa Johns RIDER v4.doc

Fixed Rental and Additional Rental at which Landlord is then offering to Lease other space in the building;

(ix)    the sublease shall not allow use of the Demised Premises or any part thereof: (a) intentionally deleted prior to execution; (b) as a discount store; (c) as a multiple tenancy store; (d) by a foreign or domestic governmental agency; (e) as a betting parlor or gambling casino; or (f) by a utility company; and

(x)    the sublease shall not provide for an option on behalf of the subtenant thereunder to extend or renew the term of such sublease.

63.05    In the event that (i) Landlord fails to exercise Landlord's Option under Section 63.02 hereof and consents to a proposed assignment or sublease and (ii) Tenant fails to execute and deliver the assignment or sublease to which Landlord consented within ninety (90) days after the giving of such consent, then Tenant shall again comply with all of the provisions and conditions of Section 63.02 hereof before assigning this Lease or subletting all or part of the Demised Premises.

63.06    Each subletting pursuant to this Article 63 shall be subject to all of the covenants, agreements, terms, provisions and conditions contained in this lease. Any such subletting to any other subtenant and/or acceptance of rent or additional rent by Landlord from any subtenant, Tenant shall and will remain fully liable for the payment of the Fixed Rental and Additional Rental due, and to become due, hereunder, for the performance of all the covenants, agreements, terms, provisions and conditions contained in this lease on the part of Tenant to be performed and all for acts and omissions of any licensee, subtenant, or any other person claiming under or through any subtenant that shall be in violation of any of the obligations of this lease, and any such violation shall be deemed to be a violation by Tenant. Tenant further agrees that, notwithstanding any such subletting, no other and further subletting (including, without limitation any extensions or renewals of any initial sublettings) of the Demised Premises by Tenant, or any person claiming through or under Tenant, shall, or will be, made except upon compliance with, and subject to the provisions of this Article 63. If Landlord shall decline to give its consent to any proposed assignment or sublease in accordance with the terms of this lease, Tenant shall indemnify, defend and hold Landlord harmless from and against any and all losses, liabilities, damages, costs and expenses (including counsel fees) resulting from any claims that may be made against Landlord by the proposed assignee or subtenant or by any brokers or other persons claiming a commission or similar compensation in connection with the proposed assignment or sublease.

63.07    With respect to each and every sublease or subletting, it is further agreed:

(i)    no subletting shall be for a term ending later than one day prior to the expiration date of this Lease;

(ii)    no sublease shall be valid, and no subtenant shall take possession of the Demised Premises or any part thereof, until an executed counterpart of such sublease has been delivered to Landlord; and

(iii)    each sublease shall provide that it is subject and subordinate to this Lease and to the matters to which this Lease is or shall be subordinate, and that, in the event of termination, re-entry, or dispossess by Landlord under this Lease, Landlord may, at its option, take over all of the right, title and interest of Tenant as sublandlord under such sublease, and such subtenant shall, at Landlord's option, attorn to Landlord pursuant to the then executory provisions of such sublease, except that Landlord shall not: (a) be liable for any previous act or omission of Tenant under such sublease; (b) be subject to any offset, not expressly provided in such sublease, that theretofore accrued to such subtenant against Tenant; and (c) be bound by any previous modification of such sublease and requiring Landlord's consent or by any previous prepayment of more than one month's fixed rent or any additional rent then due.

63.08    Any assignment or transfer shall be made only if, and shall not be effective until, the assignee shall execute, acknowledge and deliver to Landlord an agreement, in form and substance satisfactory to Landlord, whereby the assignee shall assume all of the obligations of this Lease on the part of Tenant to be performed or observed and whereby the assignee shall agree that the provisions contained in Article 11 shall, notwithstanding such assignment or transfer, continue to be binding upon it in respect of all future assignments and transfers. The original named Tenant covenants that, notwithstanding any assignment or transfer, whether or not in violation of the provisions of this Lease, and notwithstanding the acceptance of Fixed Rental and/or Additional Rental by Landlord from an assignee, transferee, or any other party, the original named Tenant shall remain fully liable for the payment of the Fixed Rental and Additional Rental and for the other obligations of this Lease on the part of Tenant to be performed or observed.

63.09    If Landlord shall give its consent to any assignment of this Lease or to any sublease, Tenant shall, in consideration therefor, pay to Landlord, as Additional Rental:

O:\24STREET\PAPA JOHNS\Papa Johns RIDER v4.doc

(i)     in the case of an assignment, an amount equal to all sums and other consideration paid to Tenant by the assignee for, or by reason of, such assignment (including all sums paid for the sale of Tenant's fixtures Tenant equipment and leasehold improvements, less the then net unamortized or undepreciated cost thereof determined on the basis of Tenant's Federal income tax returns) except that these sums shall not be included if the assignment is connected to the sale of Tenant's business; and

(ii)    in the case of sublease, any rents, additional charges, or other consideration payable to Tenant, payable to Tenant, directly or indirectly, by any subtenant or any other entity or person related to, or affiliated with subtenant, or any other amount received by Tenant or any entity or person related to, or affiliated with, Tenant (including, but not limited to, any subsidiary or sister corporation) from, or in connection with, any subletting that is in excess of the Fixed Rental and Additional Rental accruing during the term of the sublease in respect of the subleased space (at the rate per square foot payable by Tenant hereunder) pursuant to the terms hereof (including all sums paid for the sale or rental of Tenant's fixtures and Leasehold improvements, less, in the case of the sale thereof, the then net unamortized or undepreciated cost thereof determined on the basis of Tenant's federal income tax returns). The sums payable under this Section 63.09 shall be paid to Landlord as and when payable by the subtenant to Tenant.

63.10   If Tenant is a public corporation, the provisions of Article 11 shall apply to a transfer (by one or more transfers) of a majority of the stock of Tenant, as if such transfer of a majority of the stock of Tenant were an assignment of this Lease.

63.11   The joint and several liability of Tenant and any immediate or remote successor in interest to Tenant, and the due performance of the obligations of this Lease on Tenant's part to be performed or observed, shall not be discharged, released, or impaired in any respect by any agreement or stipulation made by Landlord extending the time of, or modifying any of the obligations of, this Lease, or by any waiver or failure of Landlord to enforce any of the obligations of this Lease.

63.12   The listing of any name other than that of Tenant, whether on the doors of the Demised Premises, on the Building directory, or otherwise, shall not operate to vest any right or interest in this Lease or in the Demised Premises, nor shall it be deemed to be the consent of Landlord to any assignment or transfer of this Lease, to any sublease of the Demised Premises, or to the use or occupancy thereof by others.

64.     **ADDENDUM TO ARTICLE 7: SUBORDINATION**

64.01  (a)     Tenant acknowledges and agrees that this Lease constitutes a sublease and that the subordination of this Lease to the Leases and mortgages set forth in Article 7 shall include, without limitation, that certain Lease date October 16, 1984 (the "Over-Lease") by and between 305 East 24th Street Owners Corp., (the **"Coop Corp."**) as lessor, and East 24th Commercial Corp (Landlord's predecessor in interest) , as lessee, and to all of the terms and provisions thereof and to all matters to which such Lease is or shall become subject and subordinate. The provisions of the Over-Lease are part of this sublease. All of the provisions of the Over-Lease applying to Landlord (as Tenant of the Over-Lease) are binding on you as Tenant except for paragraphs 40, 41, 42, 43, 50, 56 and 57.

(b)     Notwithstanding anything in this Lease to the contrary, Tenant shall not perform any action or fail to perform any action otherwise permitted hereunder if such performance or failure of performance would result in a default under the terms contained in any mortgage or Lease to which this is or shall become subject and subordinate, including the Overlease. Any default or condition created by Tenant which may or shall result in a default of the terms contained in any mortgage or lease to which this Lease is or shall become subject and subordinate, shall constitute a default by Tenant of the terms of this Lease.

64.02   Notwithstanding anything in this Lease to the contrary, Tenant shall not perform any action or fail to perform any action otherwise permitted hereunder if such performance or failure of performance would result in a default under the terms contained in any mortgage or lease to which this Lease is or shall become subject and subordinate. Any default or condition created by Tenant which may or shall result in a default of the terms contained in any mortgage or lease to which this Lease is or shall become subject and subordinate, shall constitute a default by Tenant of the terms of this Lease.

65.     **SOLE REMEDY**

65.01   If Tenant shall request Landlord's consent or approval pursuant to any of the provisions of this Lease or otherwise, and Landlord shall fail or refuse to give, or shall delay in giving, such consent or approval, Tenant shall in no event make, or be entitled to make, any claim for damages (nor shall Tenant assert, or be entitled to assert, any such claim by way of defense, set-off, or counterclaim) based upon any

O:\24STREET\PAPA JOHNS\Papa Johns RIDER v4.doc

claim or assertion by Tenant that Landlord unreasonably withheld or delayed its consent or approval, and Tenant hereby waives any and all rights that it may have from whatever source derived, to make or assert any such claim. Tenant's sole remedy for any such failure, refusal, or delay shall be an action for a declaratory judgment, specific performance, or injunction, and such remedies shall be available only in those instances where Landlord has expressly agreed in writing not to unreasonably withhold or delay its consent or approval or where, as a matter of law, Landlord may not unreasonably withhold or delay the same.

65.02   If (i) Tenant shall request Landlord's consent or approval pursuant to any of the provisions of this Lease or otherwise and (ii) the consent or approval of the holder of any superior lessor and/or superior mortgagee shall be required, then (a) notwithstanding anything in this Lease to the contrary, Landlord shall not be required to consent to or approve of Tenant's request unless the consent or approval of all such superior mortgagees and/or superior lessors shall be obtained, and (b) Tenant agrees to pay all reasonable fees, costs and expenses, including but not limited to attorney's fees, actually incurred by Landlord in connection with obtaining the consent or approval of all such superior mortgagees and/or superior lessors.

66.     WORK STOPPAGES

66.01   In connection with any work (including, without limitation, Tenant's Work) which may be undertaken by or on behalf of Tenant, Tenant covenants and agrees that prior to and throughout the term of this Lease, it shall not take any action, or dispute, or interfere with the business of the Landlord or any other tenant or occupancy in the Building or with the rights and privileges of any person(s) lawfully in said Building. Without intention to limit the generality of the foregoing in any respect, Tenant agrees that it shall take no action and shall suffer no omission that would (i) violate either Landlord's labor contracts, if any, or those of Landlord's contractors or their subcontractors or (ii) create, or lead to the threat of, any work stoppage, picketing, labor disruption or dispute. Any default by Tenant under this Article which shall not be cured within three (3) days after receipt by Tenant of written notice thereof shall be deemed a material default entitling Landlord to exercise any or all of the remedies as provided in this Lease. Nothing herein is intended to prohibit Tenant from using any licensed contractor.

67.     NO EXCESSIVE NOISE

67.01   Tenant agrees that it will perform all of its work required or permitted hereunder and conduct its business in the Demised Premises throughout the term of this Lease in such a manner so as not to create any excessive noise which unreasonably disturbs any of the other tenants occupying the Building.

68.     INSTALLATION IN DEMISED PREMISES

68.01   All of Tenant's equipment, including, without limitation, heating, ventilating, air-conditioning and exhaust systems (except for necessary exterior duct work and certain related air-conditioning equipment) shall be installed within the Demised Premises only.

69.     LANDLORD'S WORK

69.01   See attached Exhibit "B" attached hereto.

70.     SHOW SPACE

70.01   The Tenant agrees to permit the Landlord and his agents during the eighteen (18) month period before the expiration of the demised term, or any renewals thereof upon reasonable notice, the entry during such period at all reasonable times, for the Landlord and such persons to whom Landlord may desire to show the premises.

70.02   If the Tenant defaults on any of the terms covenants or conditions or this Lease, Landlord may show all of or any part of the Demised Premises to prospective tenants.

71.     WAIVER

71.01   The failure of the Landlord or Tenant to insist in any one or more instances upon a strict performance of any of the covenants of this Lease or to exercise any option or make any election herein contained or provided for, shall not be construed as a waiver or a relinquishment for the future of such covenants, option or election, but the same shall continue in full force and effect. The receipt by the Landlord of any rent or the acceptance of the amount for any penalty herein, whether said rent became due before or after the breach or default, with or without knowledge of the breach of any covenant hereof, shall not be deemed a waiver of such breach, and no waiver by Landlord of any provision hereof shall in any event be deemed to have been made, unless it be expressed in writing, signed by the Landlord. The

O:\24STREET\PAPA JOHNS\Papa Johns RIDER v4.doc

receipt of any rent, whether that originally reserved or that which may become payable under any of the covenants herein contained, or any portion thereof, shall be deemed to operate as a waiver of the right of the Landlord to enforce the payment of rent of either kind previously due, by such remedies as may be appropriate.

72.  **INSTRUMENTS**

72.01   The Tenant and Landlord agree to execute and deliver to the other party any instruments in writing reasonably necessary to carry out any agreement, term, condition or assurance in this Lease whenever occasion shall arise and delivery of such instruments shall be made within thirty (30) days after such request.

73.  **DIMINUTION OF VALUE**

73.01   Except as provided in Paragraph 9 and elsewhere hereof, there shall be no allowance to the Tenant for a diminution of rental value or a loss of profits resulting from any breach, violation or omission by the Landlord concerning any of the terms, conditions or covenants of this Lease.

74.  **NO ABATEMENT**

74.01   It is hereby expressly understood and agreed by and between the parties hereto, that the Tenant herein shall not be entitled to any abatement of rent or rental value or diminution of rent in any dispossess proceeding for the non-payment of rent, or in any action for rent under this Lease, the Tenant shall not have the right of setoff by way of damages, recoupment or counterclaim for any damages which the Tenant may have sustained by reason of the Landlord's failure to perform any of the terms, covenants or conditions contained in this Lease on its part to be performed, but the said Tenant shall be relegated to an independent action for damages, and such independent action shall not at any time be joined or consolidated with any action to dispossess for non-payment of rent, unless failure to join or consolidate would bar Tenant from raising such claim in an independent action or proceeding.

75.  **INTENTIONALLY DELETED PRIOR TO EXECUTION**

76.  **CHEMICAL EXTINGUISHING DEVICES**

76.01   Tenant covenants and agrees that it will, at its sole cost and expense, to the extent applicable and required by law, install and maintain automatic, non-toxic, dry chemical fire extinguishing devices approved by the Fire Insurance Rating Organization having jurisdiction over the Demised Premises, and if gas is used in the Demised Premises for cooking or other purposes, suitable gas cut-off devices (manual and automatic). Tenant shall keep such devices under service contracts approved by Landlord in writing during the term of this Lease.

77.  **GAS CUT-OFF SERVICES; EXHAUST TO STREET**

77.01   If gas is used in the premises, Tenant shall install gas cut-off devices (manual and automatic). If Tenant's installation requires any exhausts to the street, the entire installation of such exhaust shall be subject to Landlord's prior written approval as to the location and esthetics thereof which approval shall not be unreasonably withheld or delayed.

78.  **INTENTIONALLY OMITTED**

79.  **LATE FEE**

79.01   If Tenant is late in making any payment due to Landlord from Tenant under this lease for five (5) or more days, then interest shall become due and owing to Landlord on such payment from the date when it was due computed at the greater of (A) one and 25/100 (1.25%) percent per month or (B) five (5%) percent per annum over the then prime rate of JP Morgan Chase Bank, N.A. but in no event in excess of the maximum legal rate of interest chargeable to corporations in the State of New York.

80.  **END OF TERM**

80.01   At the termination of this Lease, whenever occurring or howsoever caused, Tenant agrees immediately to yield up and deliver possession of the Demised Premises to Landlord or its agents or its successors in interest. In the event Tenant shall fail to deliver up the Demised Premises as above agreed, Tenant shall become liable for the payment, at the option of Landlord, of the sum of $1000.00 per day for each and every day which Tenant holds possession and fails to deliver over possession. Landlord, by availing itself of the rights and privileges granted by this clause and the acceptance of the liquidated rental of $1000.00 per day, shall not be deemed to have waived any of the rights and privileges granted in other

O:\24STREET\PAPA JOHNS\Papa Johns RIDER v4.doc

parts of the Lease, but the rights granted under this clause shall be considered in any event as in addition to and not in exclusion of such rights and privileges.

81.   **NO WAIVERS UNLESS IN WRITING**

81.01   The failure of Landlord to (a) insist in any one or more instances upon the strict performance of any of the covenants of this Lease, or (b) exercise any option, or (c) make any election herein contained or provided for, shall not be construed as a waiver or a prospective relinquishment of such covenant, option or election, but the same shall continue in full force and effect. The receipt by Landlord of any Fixed Rental or Additional Rental or the acceptance of the amount of any penalty herein, whether said Fixed Rental or Additional Rental became due before or after the breach or default, with or without knowledge of the breach of any covenant hereof, shall not be deemed a waiver of such breach, and no waiver by Landlord of any provision hereof shall in any event be deemed to have been made, unless it be expressed in writing, signed by Landlord. The receipt of any Fixed Rental or Additional Rental, whether that originally reserved or that which may become payable under any of the covenants herein contained, or any portion thereof, shall not be deemed to operate as a waiver of the right of Landlord to enforce the payment of rent of either kind previously due, by such remedies as may be appropriate.

82.   **NON-LIABILITY AND INDEMNIFICATION**

82.01   Neither Landlord nor any agent or employee of Landlord shall be liable to Tenant for any injury or damage to Tenant or to any other person or for any damage to, or loss (by theft or otherwise) of, any property of Tenant or of any other person, irrespective of the cause of such injury, damage or loss, unless caused by or due to the negligence of Landlord, its agents or employees occurring within the scope of their respective employments without negligence on the part of Tenant, it being understood that no property, other than such as might normally be brought upon or kept in the Demised Premises as an incident to the reasonable use of the Demised Premises for the purpose herein permitted, will be brought upon or be kept in the Demised Premises.

82.02   Tenant shall indemnify and save harmless Landlord and its agents against and from (a) any and all claims (i) arising from (x) the conduct or management of the Demised Premises or of any business therein, or (y) any work or thing whatsoever done, or any condition created (other than by Landlord for Landlord's or Tenant's account) in or about the Demised Premises during the term of this Lease or during the period of time, if any, prior to the Commencement Date that Tenant may have been given access to the Demised Premises, or (ii) arising from any negligent or otherwise wrongful act or omission of Tenant or any of its subtenants or licensees or its or their employees, agents or contractors, and (b) all costs, expenses and liabilities incurred in or in connection with each such claim or action or proceeding brought thereon. In case any action or proceeding be brought against Landlord by reason of any such claim, Tenant, upon notice from Landlord, shall resist and defend such action or proceeding.

82.03   Except as otherwise expressly provided in this Lease, this Lease and the obligations of Tenant hereunder shall be in no ways affected, impaired or excused because Landlord is unable to fulfill, or is delayed in fulfilling, any of its obligations under this Lease by reason of strike, other labor trouble, governmental pre-emption or priorities or other controls in connection with a national or other public emergency or shortages of fuel, supplies or labor resulting therefrom, acts of God or other like cause beyond Landlord's reasonable control. To the extent that the provisions of this Rider shall conflict or be inconsistent with the provisions of the Lease to which it is attached, the provisions of this Rider shall be controlling.

83.   **INTENTIONALLY OMITTED**

84.   **EXCULPATORY CLAUSE**

84.01   If the Landlord or any successor in interest be an individual, receivership, joint venture, tenancy in common, co-partnership, unincorporated association, or other unincorporated aggregate of individuals or a corporation (all of which are referred to below in this Article 84 individually and collectively, as a "Landlord Entity"), then, anything elsewhere to the contrary notwithstanding, Tenant shall look solely to the estate and property of such Landlord Entity in the land and Building of which the Demised Premises are a part, for the satisfaction of Tenant's remedies for the collection of a judgement (or other judicial process) requiring the payment of money by Landlord Entity in the event of any default or breach by Landlord Entity with respect to any of the terms, covenants and conditions of the Lease to be observed and/or performed by Landlord Entity, and no other property or assets of such Landlord Entity (or the individual entity which is the receiver, if the Landlord Entity is a receivership), shall be subject to levy, execution or other enforcement procedure for the satisfaction or Tenant's remedies.

O:\24STREET\PAPA JOHNS\Papa Johns RIDER v4.doc

85.    **TENANT REPRESENTATION**

Tenant represents and warrants that it is duly formed and in good standing, and has full corporate or partnership power and authority, as the case may be, to enter into this Lease and has taken all corporate or partnership action, as the case may be, necessary to carry out the transaction contemplated herein, so that when executed, this Lease constitutes a valid and binding obligation enforceable in accordance with its terms. Tenant shall provide Landlord with corporate resolutions or other proof in a form acceptable to Landlord, authorizing the execution of this Lease at the time of execution.

86.    **RENEWAL OPTION**

86.01    (A)    Provided that this Lease shall be in full force and effect on the Expiration Date without default on the part of Tenant hereunder beyond any applicable grace or cure period, Tenant shall have the option (hereinafter referred to as the "**Renewal Option**") to renew this Lease for one renewal term (hereinafter referred to as the "**Renewal Term**"), to commence on the day following the Expiration Date (hereinafter referred to as the "**Renewal Term Commencement Date**") and to expire October 14, 2024 thereafter (herein referred to as the "**Renewal Term Expiration Date**"). Tenant shall exercise the Renewal Option by sending a written notice thereof (which notice is hereinafter referred to as the "**Renewal Notice**") to Landlord by certified mail, return receipt requested, not less than twelve (12) months and not more than twenty-four (24) months prior to the Expiration Date. If Tenant shall send the Renewal Notice within the time and in the manner hereinbefore provided, this Lease shall be deemed renewed for the Renewal Term upon the terms, covenants and conditions hereinafter contained. If Tenant shall fail to send the Renewal Notice within the time and in a manner hereinbefore provided, the Renewal Option shall immediately cease and terminate, and Tenant shall have no further option to renew this Lease. This option to renew shall be deemed personal to the Tenant and any permitted assignee of this Lease, pursuant to the terms and provisions hereunder.

(B)    The Renewal Term, if any, shall be upon, and subject to, all of the terms, covenants and conditions provided in this Lease for the original term hereof, except that:

(i)    any terms, covenants, or conditions hereof that are expressly or by their nature inapplicable to the Renewal Term shall not apply during such Renewal Term;

(ii)    the Fixed Rental payable by Tenant during the Renewal Term (hereinafter referred to as the "**Renewal Rent**"), subject to adjustment as otherwise in this Lease provided, shall be an amount equal to the fair market rental value of the Demised Premises, for a use that is permitted by the existing certificate of occupancy for the Demised Premises as of the date hereof, which Renewal Rent is to be determined as provided in Section 86.01(C) hereof and to be calculated as of the Renewal Term Commencement Date on the basis of a new eight (8) year lease of the Demised Premises subject to increase as hereinafter set forth;

(iii)    Notwithstanding the foregoing, the Renewal Rent shall be thereafter increased from time to time as provided in Article 40 of this Lease, and the Base Tax Year for the Renewal Term shall be deemed redefined as and re-computed on the basis of the last fiscal year for Taxes commencing during the Initial Term of this Lease and the obligation for Common Charges shall continue during the Renewal Term in the same manner and subject to the same limitations as contained herein, relative to the Original Term; and

(iv)    Landlord shall have no obligation to do any work or perform any services for the Renewal Term with respect to the Demised Premises which Tenant agrees to accept in its then "as is" condition, subject to the ongoing obligations of maintenance, repair and restoration as may be expressly set forth in this Lease.

(C)    In the event that Tenant shall timely and properly exercise the Renewal Option as provided herein, the Renewal Rent shall be determined jointly by Landlord and Tenant, and such determination shall be confirmed in a writing (hereinafter referred to as a "**Rental Agreement**") to be executed in recordable form by Landlord and Tenant not later than the day (hereinafter referred to as the "**Determination Date**") which shall be one hundred eighty (180) days next preceding the Expiration Date. In the event that Landlord and Tenant shall have failed to join in executing a Rental Agreement on or before the Determination Date because of their failure to agree upon the Renewal Rent then the Renewal Rent shall be determined by arbitration, pursuant to the American Arbitration Association expedited rules applicable to commercial real estate matters, as follows:

(i)    Landlord and Tenant shall each appoint an arbitrator by written notice given to the other party hereto not later than thirty (30) days after the Determination Date. If either Landlord or Tenant shall have failed to appoint an arbitrator within such period of time and thereafter shall have failed to do so by written notice given within a period of five (5) days after notice by the other party requesting the appointment of such arbitrator, then such arbitrator shall be appointed by the American Arbitration Association or its successor (the branch office of which is located in or closest to

the City of New York, County of New York), upon request of either Landlord or Tenant, as the case may be;

(ii)     the two (2) arbitrators appointed as above provided shall appoint a third (3rd) arbitrator by written notice given to both Landlord and Tenant, and, if they fail to do so by written notice given within thirty (30) days after their appointment, such third (3rd) arbitrator shall be appointed as above provided for the appointment of an arbitrator in the event either party fails to do so;

(iii)     all of such arbitrators shall be real estate appraisers having not less than ten (10) years experience in appraising the fair market rental value of real estate similar to the Building located within the City of New York, County of New York and whose appraisals are acceptable to savings banks or life insurance companies doing business in the State of New York;

(iv)     the three (3) arbitrators, selected as aforesaid, forthwith shall convene and render their decision in accordance with the then applicable expedited rules of the American Arbitration Association or its successor, which decision shall be strictly limited to a determination of the Renewal Rent as the case may be, within twenty (20) days after the appointment of the third (3rd) arbitrator. The decision of such arbitrators shall be in writing and the vote of the majority of them shall be the decision of all and, insofar as the same is in compliance with the provisions and conditions of this Section 37.05 (C) hereof shall be binding upon Landlord and Tenant. Duplicate original counterparts of such decision shall be sent forthwith by the arbitrators by certified mail, return receipt requested, to both Landlord and Tenant. The arbitrators, in arriving at their decision, shall be entitled to consider all testimony and documentary evidence that may be presented at any hearing, as well as facts and data which the arbitrators may discover by investigation and inquiry outside such hearings. If, for any reason whatsoever, a written decision of the arbitrators shall not be rendered within thirty (30) days after the appointment of the third (3rd) arbitrator, then, at any time thereafter before such decision shall have been rendered, either party may apply to a court of competent jurisdiction sitting in the City of New York, County of New York, State of New York (but not by a new arbitration proceeding) as may be proper, to determine the question in dispute consistently with the provisions of this Lease.   The cost and expense of such arbitration, action, proceeding, or otherwise shall be borne equally by Landlord and Tenant.

87.     ODORS

87.01   Tenant covenants and agrees that it will, at its sole cost and expense take all precautions to prevent any odors from emanating from the Demised Premises, including the installation, as part of Tenant's Alterations, of such control devices as shall be prescribed by Landlord, and the establishment of effective control procedures, to eliminate such odors.

88.     MAINTEANCE OF EXHAUST, VENTS AND GREASE TRAPS.

88.01   Tenant covenants and agrees that it will, at its sole cost and expense, to the extent applicable and required by law, install, periodically clean and maintain in good order and repair all necessary flues, vents, exhausts, ansul systems and grease traps as and when required to minimize the risk of fire and other hazards.

89.     UTILITY WASTE LINES AND PLUMBING

89.01      Tenant shall not use the utility waste lines and plumbing for any  purpose other than for which they were constructed, and not permit any food, waste or other foreign substances to be thrown or drawn into the pipes. Tenant shall take all reasonable steps to prevent fat, grease, or any other greasy substance from entering the utility waste lines and plumbing of the Demised Premises, including the installation, as part of the Tenant's Alterations, and the maintenance thereafter, of suitable grease traps in all waste lines (and Tenant shall clear any blockage in the sewer line or lines servicing the Demised Premises resulting from Tenant's operations, whether or not in violation of any provision hereof).

90.     EXTERMINATION

90.01      Tenant covenants and agrees that it will, at its sole cost and expense,  contract with an exterminator (which exterminator must first be approved by Landlord, which approval shall not be unreasonably withheld) to exterminate rodents, insects and other vermin on a regular basis as part of a program to keep the Demised Premises free of rodents, insects and other vermin.

IN WITNESS WHEREOF, Landlord and Tenant have duly executed this Lease as of the day and year first above written.

LANDLORD: PARKER 24 COMMERCIAL ASSOCIATES

By:    305 EAST 24TH COMMERCIAL CORP.,

By: _____
JEAN-PIERRE VAGANAY, VICE PRESIDENT

TENANT:

By: _____
Name:  KAIS ABID

Social Security Number: 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

Date of Birth: 03-18-1972

EXHIBIT A



EXHIBIT B

LANDLORD'S WORK

1. Landlord shall remove 2 non bearing walls.
2. Landlord shall provide Tenant with ACP-5 Certificate
3. Landlord to deliver Demised Premises in "broom clean" condition.

# PAPA JOHN'S

## FRANCHISE AGREEMENT

### EXHIBIT A

### ADDENDUM TO LEASE

THIS ADDENDUM TO LEASE, dated _Feb · 16_, 2007 by and between **PARKER 24 COMMERCIAL ASSOCIATES** , with offices at 1700 Broadway, 34ᵗʰ Floor, New York, NY,  party of the first part, hereinafter referred to as LANDLORD and **KAIS ABID, individually**, hereinafter referred to as TENANT.

### RECITALS:

A.    The parties hereto have entered into a certain Lease Agreement, dated _February 16_, 2007 , and pertaining to the premises located at the ground floor retail space and the basement space located at 432 Second Avenue, New York, New York 10010 (the "Lease").

B.    Landlord acknowledges that Tenant intends to operate a Papa John's restaurant in the leased premises (the "Premises") under a Papa John's Franchise Agreement (the "Franchise Agreement") with Papa John's International, Inc. ("PJI").

C.    The parties now desire to amend the Lease in accordance with the terms and conditions contained herein.

### AGREEMENT:

NOW, **THEREFORE,** it is hereby mutually covenanted and agreed between Landlord and Tenant as follows:

1.    **Remodeling and Decor**.  The same terms and conditions of the Lease shall apply to this Addendum regarding Tenant's installation.

2. **Assignment**.  In no event shall any permitted sublessee assign or encumber its sublease, further sublet all or any portion of its sublet space, or otherwise suffer or permit the sublet space, or any part thereof, to be used or occupied by others, without Landlord's prior written consent in each instance.  Articles 11 and 63 of the Lease shall apply to this Addendum.

# PAPA JOHN'S

## FRANCHISE AGREEMENT

### EXHIBIT A

### ADDENDUM TO LEASE

THIS ADDENDUM TO LEASE, dated Feb . 16, 2007 by and between **PARKER 24 COMMERCIAL ASSOCIATES**, with offices at 1700 Broadway, 34th Floor, New York, NY, party of the first part, hereinafter referred to as LANDLORD and **KAIS ABID, individually**, hereinafter referred to as TENANT.

### RECITALS:

A.    The parties hereto have entered into a certain Lease Agreement, dated February 16, 2007, and pertaining to the premises located at the ground floor retail space and the basement space located at 432 Second Avenue, New York, New York 10010 (the "Lease").

B.    Landlord acknowledges that Tenant intends to operate a Papa John's restaurant in the leased premises (the "Premises") under a Papa John's Franchise Agreement (the "Franchise Agreement") with Papa John's International, Inc. ("PJI").

C.    The parties now desire to amend the Lease in accordance with the terms and conditions contained herein.

### AGREEMENT:

NOW, THEREFORE, it is hereby mutually covenanted and agreed between Landlord and Tenant as follows:

1.    **Remodeling and Decor**.  The same terms and conditions of the Lease shall apply to this Addendum regarding Tenant's installation.

2.**Assignment**.  In no event shall any permitted sublessee assign or encumber its sublease, further sublet all or any portion of its sublet space, or otherwise suffer or permit the sublet space, or any part thereof, to be used or occupied by others, without Landlord's prior written consent in each instance.  Articles 11 and 63 of the Lease shall apply to this Addendum.

3.    **Default and Notice**.

(a)    In the event there is a default or violation by Tenant under the terms of the Lease, Landlord shall give Lessee and PJI notice of such default or violation within a reasonable time after Landlord receives knowledge of its occurrence.

(b)    All notices to PJI shall be sent by registered or certified mail, postage prepaid, to the following address:

> Papa John's International, Inc.
> P.O. Box 99900
> Louisville, Kentucky 40269-0900
> Attn:  General Counsel

PJI may change its address for receiving notices by giving Landlord written notice of such new address.  Landlord agrees that it will notify both Tenant and PJI of any change in Landlord's mailing address to which notices should be sent.

4.    **Termination or Expiration**.  Upon the expiration or termination of either the Lease, Landlord will allow PJI to enter the Premises, without being guilty of trespass and without incurring any liability to Landlord, to remove all signs and other items identifying the Premises as a Papa John's restaurant and to make such other modifications as are reasonably necessary to protect PJI's proprietary marks and the Papa John's System, and to distinguish the Premises from Papa John's restaurants.  Provided, however, (i) that this obligation of Landlord shall be conditioned upon PJI giving Landlord prior notice of the modifications to be made and the items to be removed and (ii) the PJI shall have 48 hours to remove said signs and other items as referred to hereinabove.

5.    **Consideration; No Liability**.

(a)    Landlord hereby acknowledges that the provisions of this Addendum to Lease are required pursuant to the Franchise Agreement under which Lessee plans to operate its business and that Lessee would not lease the Premises without this Addendum.

(b)    Landlord further acknowledges that Lessee is not an agent or employee of PJI and that Lessee has no authority or power to act for, or to create any liability on behalf of, or to in any way bind PJI or any Affiliate of PJI, and that Landlord has entered into this Addendum to Lease with full understanding that it creates no duties, obligations or liabilities of or against PJI or any Affiliate of PJI.

6.    **Amendments**.  No amendment or variation of the terms of this Addendum to Lease shall be valid unless made in writing and signed by the parties hereto.

7.    **Reaffirmation of Lease**.  Except as amended or modified herein, all of the terms, conditions and covenants of the Lease shall remain in full force and effect and are incorporated herein by reference and made a part hereof as though copied herein in full.

8.   **Affiliate**.  As used in this Agreement, the term "Affiliate" shall mean any person or entity that is owned or controlled by PJI or which owns or controls PJI or is under common control with PJI, directly or through one or more intermediaries.

**IN TESTIMONY WHEREOF,** witness the signatures of the parties hereto as of the day, month and year first written above.

Parker 24 Commercial Associates
By: 305 East 24th Commercial Corp.

By: _____

Title: _____Vice President_____

("Landlord")

By: _____

Title: _____

("Tenant")

8.    **Affiliate**.  As used in this Agreement, the term "Affiliate" shall mean any person or entity that is owned or controlled by PJI or which owns or controls PJI or is under common control with PJI, directly or through one or more intermediaries.

**IN TESTIMONY WHEREOF,** witness the signatures of the parties hereto as of the day, month and year first written above.

_____

By: _____

Title: _____

                       ("Landlord")

By: ___*KAIS Abid*_____

Title: ___*Franchisee*_____

                       ("Tenant")