## Expert Report

Prepared by Howard Cannon of Restaurant Operations Institute ["ROI"], Inc.

Pertaining to TODD KREISLER (Plaintiff), v. KAIS ABID d/b/a PAPA JOHN'S, PARKER EAST 24TH APARTMENTS, LLC, a New York limited liability company and 305 EAST 24TH OWNERS CORP., a New York corporation, (Defendants) – Civil Action No.: 12 Civ. 4052 (PAE) ECF CASE – UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK.

Report Dated – February 8, 2013

---

I was retained to provide an unbiased opinion regarding only certain aspects pertaining to the above-referenced matter, and was asked to provide this opinion in the form of a written report.

I have provided my unbiased opinion and the basis for such herein.

## Basis of Opinion

I was asked to create the basis of my opinion from my understanding of only certain details relating specifically to this matter and based on the standards, policies, procedures, and practices that are reasonably and customarily relied upon across the restaurant, bar, and hospitality industry as it pertains to this matter.

Confidential

Written Report

Most specifically, I was asked to opine on the following:

- The American Disabilities Act ("ADA")[1] and whether or not the subject establishment was or was not in violation or compliance of the "ADA" as it pertains to this particular matter.

I reached my unbiased opinions contained herein based on my restaurant, bar, and hospitality industry experience and expertise derived from more than twenty-five years of professional restaurant, bar, and hospitality industry consulting, speaking, writing, analyses, operations, marketing, management, and leadership, while serving a wide variety of national, regional, and local chains, as well as, independent owners/operators and others, in both an independent contractor and a W-2 employee capacity [CV provided separately].

I reached my unbiased opinions from my independent onsite review and assessment of the subject establishment, personally conducted by me on February 1, 2013, at the Papa John's restaurant located at 432 Second Avenue, New York, New York (hereinafter referred to as "Papa John's).

---

[1] Americans with Disabilities Acts of 1990: "The ADA is a wide-ranging civil rights law that prohibits, under certain circumstances, discrimination based on disability. It affords similar protections against discrimination to Americans with disabilities as the Civil Rights Act of 1964, which made discrimination based on race, religion, sex, national origin, and other characteristics illegal. Disability is defined by the ADA as "...a physical or mental impairment that substantially limits a major life activity." The determination of whether any particular condition is considered a disability is made on a case by case basis. Certain specific conditions are excluded as disabilities, such as current substance abuse and visual impairment that is correctable by prescription lenses.";
en.wikipedia.org/wiki/Americans_with_Disabilities_Act_of_1990; 01/31/2013; DC-2

Written Report

I reached my unbiased opinions from my independent review and consideration of the documents provided specifically for this matter, consisting of only the Amended Complaint[2] (8 pages) and the Omnibus Motion[3] (18 pages). It should be noted that these two documents that were provided to me for consideration were not sufficient enough to be used as evidence to help me formulate an opinion in this matter. I requested evidential documents several times but did not receive any. I did, however, receive documents from counsel that were received too late for consideration of this report; and, as it would change the report deadline and associated costs, counsel requested that I provide my opinion without further document consideration. Therefore, they remain unopened and have not been considered in the forming of my opinion. My opinion is provided herein solely based upon the evidence that I observed during my onsite inspection on February 1, 2013, in addition to the independent review of the "ADA" guidelines[4], my years of experience in dealing with and managing "ADA" compliance in a wide variety of restaurants and bars across the United States and that which would be considered reasonable and customary in the restaurant industry, and "ADA" research conducted by my firm specifically for this and other like matters, in consideration for my basis, assumptions, and conclusions. [Documents Considered List provided separately].

---

[2] Amended Complaint; 8/31/2012; DC-1
[3] Omnibus Motion; 1/24/2013; DC-7
[4] 2010 ADA Standards for Accessible Design; Department of Justice; ada.gov; 9/15/2010; DC-3

Written Report

## Statement of Opinion

It is my opinion that the subject establishment, "Papa John's", at the center of this matter and located at 432 Second Avenue, New York, New York, based on the limited amount of evidence that I have been provided, is not in violation and is not out of compliance with "ADA" guidelines.

I reach my opinions for the following reasons:

- I see no evidence that the consumer was denied reasonably requested access to reasonably requested products and/or services that would be reasonably offered by the subject establishment. I would surmise that the subject establishment derives a majority of its revenues (more than 50-percent) from pizza delivery; and, therefore, the consumer should easily be able to order a pizza and have the pizza delivered to his/her location of choice within the subject marketplace and without incident. In fact, on my onsite visit, I witnessed a sign in a highly-prominent location on the outside of the establishment that stated, among other things: *Free Delivery.* This sign - though not ideal as it pertains to "ADA" notice, does take away a consumer's ability to say that they were not provided products and services, as a delivery concept is provided significant leeway in markets across the country as it pertains to specific "ADA" accommodations. In fact, home delivery is one

way that many restaurants provide accommodation when other options are either limited or do not exist.

Furthermore, I see no specific evidence provided by the complainant that an order was actually even attempted. Traditionally, a complainant is required to provide dates, times, and specifics about the order attempt and, in turn, the restaurant's denial of service at that specific time and location.

- I see no evidence that the consumer would not have been provided reasonably requested accommodations by the subject establishment, if such an order and such an accommodation request would have been requested by the consumer and actually brought to the attention of those working at and managing the subject establishment.

As quoted from the ADA Guide For Small Businesses: "When it is not readily achievable to provide an accessible entrance, the goods and services must be provided in some other way, if doing so is readily achievable. For example, if a restaurant has several steps at the entrance and no accessible entry is possible, providing home delivery or some alternative service may be required. In other cases, it may be possible to receive an order by telephone and to have a clerk bring the order to the customer outside the store or

business."[5]  Nothing indicates to me that such a request - had it been made - would have been denied.

Further, the ADA Guide states: "If alternative service is provided, it is important that it be publicized so a customer knows how the goods and services are offered."[6]  Once again, during my onsite inspection of "Papa John's", I made note of a sign posted on the storefront signage, which clearly stated: *Free Delivery*.  This is clear notice to the public that "Papa John's" offers its goods and services via delivery to anyone who requests/orders their products.

- It is my opinion that the owners of the subject establishment and the owners of the subject property would be required to incur excessive expenses that could harm the business in order to make changes to the establishment and business to make the facility "ADA" compliant by today's most up-to-date standards.  In my opinion, it would be ill-advised to do such, as it could injure, harm, and destroy the subject business.

It should be noted that within the "ADA" guidelines, it clearly states that one is neither required nor advised to make such changes to one's building or

---

[5] ADA Guide For Small Businesses; ada.gov; 10/9/2008; DC-5
[6] ADA Guide For Small Businesses; ada.gov; 10/9/2008; DC-5

Written Report

business if it places the success of the business in jeopardy or if the expense or the risk to the business is too high to do so.

The ADA Guide states: "While it is not possible for many businesses, especially small businesses, to make their facilities fully accessible, there is much that can be done without much difficulty or expense to improve accessibility. Therefore, the ADA requires that accessibility be improved without taking on excessive expenses that could harm the business."[7]

In regard to alterations, "ADA" guidelines do not require changes to an existing restaurant if the cost and scope of the overall alterations is disproportionate to the cost and scope of the overall alterations. "The cost is disproportionate if it exceeds 20-percent of the cost of the underlying alteration."[8]

In addition, "in recognition that many small businesses can not [sic] afford to make significant physical changes to their stores or places of business to provide accessibility to wheelchair users and other people with disabilities, the ADA has requirements for existing facilities built before 1993 that are less strict than ones built after early 1993 or modified after early 1992."[9] Based on what I visually verified from my aforementioned onsite visit,

---

[7] ADA Guide For Small Businesses; ada.gov; 10/9/2008; DC-5
[8] OLR Research Report – Restaurants and Handicapped Accessibility; cga.ct.gov/2006/rpt/2006-R-0335.htm; 5/17/2006; DC-4
[9] ADA Guide For Small Businesses; ada.gov; 10/9/2008; DC-5

Written Report

including the look of the facility and the surrounding establishments and marketplace, I would surmise that the subject establishment was built prior to 1993.

It is my opinion that the significant expense and the extraordinary risk to the business by the business and property owners to make such adjustments to its facility is neither reasonable nor customary, and could cause this business not only an unreasonable financial burden, but a higher than customary likelihood of business failure and therefore would not be prudent.

Further, my opinions pertaining to this particular matter are as follows:

- That the cost of construction to redesign and rebuild the storefront of this particular establishment would be cost prohibitive and would be more than what the business could reasonably bear.
- A permanent ramp built to fit inside the current framework of the current store front would not be feasible, as the size of available space is not conducive to such. The slope and landings that would need to be created to meet code within the available space would not work within the available space. The building interior would need to be expanded out towards the road and onto the city sidewalks, or the kitchen would need to be completely redesigned to accommodate moving the interior pass-thru wall and door back – neither scenario is ideal or an affordable solution. I see no options

    where one could create a permanent ramp inside the current confines that would meet code and make it a safe environment for other customers and employees to enter. Further, the landing area at the bottom of such slope would not be able to be large enough to accommodate what would be deemed to be a standard landing.

- A portable ramp would be neither reasonable nor prudent, as it would make the establishment less safe for both customers and employees and would, therefore, cause the establishment to be out of compliance with Occupational Safety and Health ("OSHA") among others.

It is my opinion that this establishment is well within "ADA" compliance guidelines; and, if additional actions are required of it, it would be best advised to close the business operation and seek to become a tenant elsewhere.

## **Report Limitations and Considerations**

With regard to all information and documents utilized by Restaurant Operations Institute ["ROI"], Inc. in connection with this report, analysis and opinion, ROI has assumed that all information and documents that have been provided and reviewed are correct and accurate. ROI has made no attempt to independently audit or verify the information or documents provided or contained therein. ROI has no way of knowing if it has received all of the documents regarding this matter, and its opinion is based only on the documents that it has reviewed.

Written Report

In accordance with ROI's standard business practices and recognized professional ethics, the fee for conducting this analysis and providing this opinion is in no way contingent upon or impacted by ROI's conclusions. Neither ROI, nor any of its employees, agents or representatives, has a present or contemplated future interest or bias with respect to any parties in this matter and accepts no liability or responsibility, for any reason, for either party's outcome regarding this matter.

Although ROI has no responsibility to update this report, or its opinions, for events, circumstances, and/or information occurring or being shared during the discovery process, which may become known to ROI after this report date, ROI reserves the right to do so, if it so desires. In addition, ROI reserves the right to analyze and/or critique any future expert witness reports that may be prepared on behalf of either party in connection with this matter.

## Expert Witness Information

Attached to this report is information related to ROI, Inc. and Howard Cannon, as well as a listing of all Documents Considered in preparing this report, including the facts or data that I considered in forming my opinions and statements and the listing of exhibits and documents that were used to summarize or support them. We provide them under separate cover.

Written Report

This report has been prepared in an unbiased manner and to the best of my knowledge using what I believe to be restaurant, bar and hospitality industry standard operating practices and procedures.

Best regards,

Howard L. Cannon
CEO
Restaurant Operations Institute ["ROI"], Inc.
Author of – *The Complete Idiot's Guide to Starting a Restaurant© - volumes I & II*

Mailing Address;
60 Chelsea Corners #201
Chelsea, AL 35043
800-300-5764

# HOWARD CANNON
## Restaurant, Bar, and Hospitality Industry Expert
Author, Speaker, Analyst, Consultant, Expert Witness, Mediator, CEO
Restaurant Operations Institute (ROI), Inc.
Corporate Headquarters
800-300-5764

## PROFESSIONAL BUSINESS EXPERIENCE
**07/1987 to Present**
**Restaurant Operations Institute (ROI), Inc.** – *Restaurant, Bar, and Hospitality Industry*
*Author, Speaker, Analyst, Consultant, Expert Witness, Mediator, CEO*

ROI, in conjunction with its associated brands, is one of America's most highly-visible and highly-recognizable restaurant, bar, and hospitality industry consulting, expert witness, and advisory firms - providing restaurant, bar, and hospitality industry analysis, consultation, expertise, opinions, advice, management, mediation, content, and expert witness services to clients of all types and sizes, and in markets across the country and around the globe.

ROI has served dozens of the world's largest restaurant brands since its inception and has worked in virtually every type and style of restaurant, bar, and hospitality industry environment, from convenience food and fast food to fine dining, and on behalf of nearly every type, size, and style of company, from Fortune 500 international companies to independent "mom-and-pop" operations.

ROI was founded by and is solely-owned by Howard Cannon. Mr. Cannon's expertise in the restaurant, bar, and hospitality industry is derived from his unique and broad-based industry experience during the length of his career. He has held positions ranging from hourly staff to executive-level; employee to employer; consultant to analyst; industry speaker to trade magazine publisher; and author to expert witness. It is this unique scope of expertise across the restaurant, bar, and hospitality industry that makes Mr. Cannon uniquely qualified to provide his opinion as an expert witness in restaurant, bar, and hospitality industry-related matters.

ROI and/or Howard Cannon either owns or has previously owned the following companies, brands, and/or intellectual properties including but not limited to: Restaurant Consultants of America; Restaurant Expert Witness; Restaurant Profitability Magazine©; 1 Smart Duck Management Group; Four Star Pizza; Restaurant Rhino; The Complete Idiot's Guide to Starting Your Own Restaurant©; The Complete Idiot's Guide to Starting a Restaurant©- second edition; Stretch Yourself – Getting Promoted©; 24 Minutes of Motivation©; 4,383 Days©

## AUTHORED BOOKS
*To date, restaurant-industry books authored by Howard Cannon have been available in seventy-six countries around the world and have been published by the following reputable publishing firms:*
- Penguin Group (USA) Inc., 375 Hudson Street, New York, New York 10014, USA
- Penguin Group (Canada), 90 Eglinton Avenue East, Suite 700, Toronto, Ontario M4P 2Y3, Canada - a division of Pearson Penguin Canada Inc.
- Penguin Books Ltd., 80 Strand, London WC2R ORL, England
- Penguin Ireland, 25 St. Stephen's Green, Dublin 2, Ireland - a division of Penguin Books Ltd
- Penguin Group (Australia), 250 Camberwell Road, Camberwell, Victoria 3124, Australia - a division of Pearson Australia Group Pty. Ltd

- Penguin Books India Pvt. Ltd., 11 Community Centre, Panchsheel Park, New Delhi – 110 017, India
- Penguin Group (NZ), 67 Apollo Drive, Rosedale, North Shore, Auckland 1311, New Zealand - a division of Pearson New Zealand Ltd
- Penguin Books (South Africa) (Pty.) Ltd., 24 Sturdee Avenue, Rosebank, Johannesburg 2196, South Africa
- Penguin Books Ltd., Registered Offices: 80 Strand, London WC2R 0RL, England
- Alpha Books, 375 Hudson Street, New York, New York 10014, USA
- Pearson Education, Inc., 75 Arlington Street, Suite 300, Boston, MA 02116

*Book Titles Include –*
- *The Complete Idiot's Guide to Starting Your Own Restaurant*© (2001; Alpha Books) ISBN 0-02-864168-X; Library of Congress Catalog Card Number: 2001095862
- *Stretch Yourself – Getting Promoted*© (2003; Pearson Books) – ISBN 0-536-72823-2
- *The Complete Idiot's Guide to Starting a Restaurant*©- *Second Edition* (2005; Alpha Books) ISBN 978-1-59257-416-2; Library of Congress Catalog Card Number: 2005930931
- *We Are a For Profit Restaurant – Any Questions?* © (projected 2013 release date); portions of this content are currently being released through articles, speeches, and videos

**INDUSTRY EXPERIENCE AND POSITIONS HELD**
*Howard Cannon started his restaurant industry career washing dishes and bussing tables in Boaz, Wisconsin in 1978 and has since held the following restaurant industry positions. It is this unique experience across the entirety of the restaurant, bar and hospitality industry that makes Mr. Cannon's expertise reliable. To date, and during this more-than thirty-four year restaurant, bar, and hospitality industry career he has held the following positions:*

- Dishwasher; busboy; host; waiter; line-cook; fry cook; prep cook; bar back; bar tender; bouncer; Shift Manager; Assistant Manager; General Manager; Delivery Manager; Catering Manager; Multi-Unit Manager; District Manger; Marketing Manager; Human Resources Manager; Special Projects Manager; Director of Operations; Regional Vice President; Vice President; Chief Operating Officer; President; Chief Executive Officer; Board Member; Chairman of the Board; Operations Executive Committee Member; Restaurant Consultant; Restaurant Expert Witness; Restaurant Mediator; Restaurant Trade Magazine Publisher; Author

**CORE INDUSTRY EXPERTISE** – Operations; Surveillance Videos; Marketing; Human Resources; Industry Trends; Private Investigations; Start-ups; Turnarounds; Branding; Concept Design; Franchising; Systems Development; Purchasing; Construction; Site Selection; Training; Safety; Security; Risk Management; Point of Sale; Furnishings; Fixtures; Equipment; Facilities; Management; Leadership; Business Planning; Funding; Intellectual Property; Forensic Analysis; Food Safety; OSHA; FACTA; ADA Compliance; Contract Management; Alcohol Management; Finance; Accounting; Premises Liability; Valuation; Food and Beverage Contamination; Entertainment, Travel, and Unique Venue Food and Beverage Concept Creation, Development, Assessment and Performance Improvement.

**CLIENTS, PROJECTS AND RECOGNIZABLE BRANDS SERVED** – [client and work confidentiality required – partial listing]
- Types of Clients served – Entrepreneurs; Corporate Chains; Franchisees; Franchisors; Investors; Bankers; Lawyers; Insurance Companies; Developers; City and County Government Agencies

- Types of Restaurants served – Fast Food; Quick Casual; Casual Dining; Fine Dining; Kiosk's; Food Courts; Corporate Dining; Sports Venues; Arenas; Casinos; Buffets; Delivery; Catering; Cafeteria Dining; Contract Foodservice; Convenience Foods; Bars; Lounges; Clubs; Prisons; Schools; Hotels
- Size of Restaurant Companies served – Independent Operators; Regional Chains; National Chains; International Chains
- Geographic Areas served – Every State of the United States; Canada; Mexico; England; France; India; Asia; Jamaica; the Philippines; Haiti; Egypt.
- Scope of Work served – Operational and Financial Improvement; Private Investigations; Video Surveillance; Bench Marking; Region and Unit Turnarounds; Logo Design; Marketing; Branding Design; Site Selection; Strategy; Concept Development; Point of Sale; Equipment; Facilities; Building Design; Funding Strategy; Human Resources; Business Planning; International Brand Penetration; US Brand Penetration; Merger and Acquisition; Valuations; Capital Acquisition; Contract Negotiation; Menu Design; Exit Strategy; Food & Beverage Purchasing; Vendor Selection; Cost Controls; Investor Evaluation; Recruiting; Training; Franchise Development; Franchise Sales; Industry Trend Analysis; Employee Productivity Improvement; Buying and Selling Processes; Industry Assessment; Leadership Assessment; Concept Compliance; Premises Liability; Food and Beverage Liability; Mediation; Expert Witness

**CLIENTS & RECOGNIZABLE BRANDS (partial listing)** – Pizza Hut; Taco Bell; Arby's; PepsiCo; Compass Group; Aramark; Wall Street Deli; TCBY; IBM; Otis Elevator; Swarovski Helicopter; The Hartford; Carrier; The Houston Astrodome; ENRON Field; Harrah's Horseshoe Casino; KFC; RTM Restaurant Group; Sodexho; Seattle's Best Coffee; Starbuck's; Mrs. Fields; Papa John's; Hot-n-Now; Lone Star Steakhouse; Subway; Wendy's; Burger King; Dominoes; Little Caesars; Chow King; Greenwich Pizza; AmSouth Bank; Jollibee Corporation; Lamppost Pizza; Wachovia Bank; Sbarro Pizza; Shari's Restaurants; The Mill Restaurant; Quiznos; American Food Distributors; Apple Lane Farms; On Tap Sports Bar & Grill; Caney Fork Restaurants; Fat Burger; Swift Pork; Harrah's Casinos; Healthy Taco Corp.; Chicken King Corporation; Frontier Bank; Applebee's; Atlanta Bread Company; Harvey's Casino; ConAgra Foods;  Perkins Coie Law; Cochran & Edwards Law; Cici's Pizza; Outback Steakhouse; Gator's Dockside Restaurants; Paradise Restaurant & Bar; Plush Bar; The Cole Law Firm; Golden Corral Restaurants; Semmes, Bowen & Semmes Law; Phillip's Seafood Restaurants; Lattimore, Black, Morgan, & Cain, P.C.; Waffle House Restaurants; Hard Rock Café; Wing It; Denny's Restaurants; Barton Warren Law; O' Charley's Restaurants; Niagra Bottling; Buckhorn Grill; Solomon & Collins, P.A.; Selective Insurance Company; Gammon, Anderson & McFall; Page, Eichenblatt, Burnbaum, Bennett; Oregon Mutual Insurance; Caruso Excavating; Wilson Mutual Insurance; Amco Insurance; Nationwide Mutual Insurance; Liberty Mutual Insurance; The Wynn Hotel & Casino; The Plaza Hotel & Casino; Old Town Buffet; PlayLV Gaming Operations; Weingarten Realty; Buffalo Wild Wings; World of Beer; Fireman's Fund Insurance; Expert Witness case list provided under separate cover.

**CORPORATE INDUSTRY EXPERIENCE**
*Howard Cannon has held several corporate industry positions over the length of his career, including, but not limited to:*

Restaurant Operations Institute (ROI), Inc – CEO; 1987 to present; founder and sole owner of ROI – the company was founded and began operation on July 14, 1987 as a part-time venture and, after several business relocations and plan revisions, the company progressed to what it is today.

Pizza Hut – District Manager; Multi-Unit Manager; Delivery Manager; General Manager; 1987 to 1991 – responsible for 7 restaurants doing approximately $6.3 million in annual sales and managing approximately 250 employees for multiple franchisees of Pizza Hut, Inc.

Taco Bell Inc. – Multi-Unit TMU Manager, Marketing Manager, Human Resources Manager, Special Projects Manager; 1991 to 1993 – responsible for 7 restaurants directly and 17 restaurants indirectly, doing approximately $9 million and $19 million, respectively, in annual sales and managing 300 and 750 employees, respectively, for Taco Bell Corporate and the franchisor of the Taco Bell brand.

Arby's – Regional Vice President; Director of Operations; Co-op Marketing Manager; District Manager; Area Supervisor; 1995 to 1999 – responsible for 73 restaurants doing approximately $59 million in annual sales and managing approximately 2,400 employees for a franchisee of Arby's Inc.

Compass Group PLC– Regional Vice President; 1999 – responsible for 70 corporate dining and subsidized dining locations, and several hundred contract employees for the world's largest food-service company - doing business in sports venues, corporate dining, prisons, manufacturing plants and educational facilities.

Wall Street Deli, Inc. – Chief Operating Officer; 2000 – responsible for 121 corporate restaurants and several franchisees, offering several different brands across 21 different states - doing approximately $65 million in annual sales and managing approximately 1,800 employees for this publically-held restaurant company.

Restaurant Profitability Magazine – Publisher/CEO; 2004 to 2008 – the founder and publisher of this restaurant-industry trade magazine with content targeted at independent restaurant owners and operators, with print publications being licensed and distributed in 20 different states and several different countries around the world, and supported by restaurant industry product and service providers of varying types.

## ARTICLES, SPEECHES, INTERVIEWS, MEDIA & SEMINARS

*Howard Cannon has had dozens of restaurant-industry articles published and has produced more than one hundred restaurant-industry interviews, speeches, articles, workshops, and seminars during the length of his career. This content has been distributed in trade magazines, newspapers, newsletters, non-industry publications, television, radio, high-schools, universities, trade shows, corporate events, annual meetings, training classes, internet distribution and company functions in markets across the United States and in countries around the world.*

*The following is a partial listing of content authored, presented, or contributed to over the last ten years:*

- *Dirty Little Restaurant Secrets –Anderson Cooper Live*
- *We are a For-Profit Franchisor! –Any Questions? Using Experts to Drive Real Results seminar– International Franchise Association*
- *13+ Things You Shouldn't Eat at a Restaurants –Readers' Digest*
- *With Food Service Equipment Cheap Can Be Costly –Convenience Store Decisions*
- *Profit and Loss Closed King George Inn –The Morning Call*
- *Dirty Restaurant Secrets the Kitchen Crew Won't Tell You –Reader's Digest*

- *Does Becoming a Franchisor Make $$? –National Restaurant Association Show*
- *You Have to Make Green to Be Green – The Independent Restaurateur Magazine*
- *The Marketing Hot Stove Theory I and II – Bar and Nightclub Magazine*
- *The State of the Restaurant Industry – Canadian Public Radio*
- *Executive/Entrepreneur Interview – Fox TV News*
- *Building Green Restaurants – Fox TV News, 303 the Magazine, QSR Magazine*
- *5 Secrets to Pocketing More Profits – My Food Service News*
- *Restaurant Purchasing – The Birmingham News*
- *Restaurant Industry Analysis – Blue Shift Research Reports*
- *6 Prescriptions for Restaurant Failure – My Food Service News*
- *Spring Cleaning Starting with Your Bad Habits – Independent Restaurateur Magazine*
- *Restaurant Start-up, Turnaround & Profit Improvement Boot Camps*
- *We Are a FOR-PROFIT Restaurant! – Any Questions seminars*
- *The Mouse Training Theory seminars*
- *Hoosiers Training seminars*
- *Stretch Yourself – How to get Promoted in the Restaurant Business*
- *Shake the Money Tree*
- *An Apple Made You Fat – Not a Big Mac*
- *10 Obvious Ways to Control Food Cost*
- *Restaurant Best Practices*
- *Angel Investors Have Money for Restaurants*
- *Why is Hands-On Floor Management Important to Profit Ability?*
- *6 Management Basics for Restaurants*
- *Servers Leave Money On The Table*
- *Fast Start Tips for New Hires*
- *Stolen Profit Preventing Theft*
- *Are You Promoting Failure?*
- *The Workplace Generation Gap*
- *Recruiting & Keeping Key Employees*
- *Impact –speeches, seminars, and videos*
- *Start-Up –speeches, seminars, and videos*
- *Shake the Money Tree – speeches, seminars, and videos*
- *Site Selection – speeches, seminars, and videos*
- *Restaurant Boost – speeches, seminars, and videos*
- *Don't Go Sit On a Mountain – speeches, seminars, and videos*

**EDUCATION, TRAINING & ACADEMIC ACHIEVEMENTS** [partial listing]

University of Wisconsin
B.S., Business Administration – Hamilton
Masters in Business Administration – Hamilton
Professional Commercial Mediation and Conflict Resolution Certification (PCM)
Occupational Safety and Health Administration Act – Federal Certification # 2301944 (OSHA)
American College of Forensic Examiners International – Certified Forensic Consultant (CFC)
Hazard Analysis & Critical Control Points Manager Certification (HACCP)
The National Environmental Health Association Certification
Occupational Safety and Health Administration Act – Federal Certification with 29 CFR 1910
OSHA – Inspections, Citations, and Penalties
OSHA – Walking and Working Surfaces

OSHA – Means of Egress and Fire Protection
OSHA – Flammable and Combustible Liquids
OSHA – Fire Prevention and Protection
OSHA – Machine Guarding and Material Handling
OSHA – Hazard Communication
OSHA – Industrial Hygiene and Blood-borne Pathogens
OSHA –Health and Safety Programs
Washington State University Hotel Restaurant Division seminars
University of Nevada Las Vegas Hotel Restaurant Division seminars
University of Kentucky; industry surveys
Anthony Robbins – Awaken the Giant from Within; seminars
Dale Carnegie – How to Win Friends and Influence People; seminars
Dale Carnegie – Leadership and Communication; seminars
ServSafe and Food Safety Training
TIPS On-premise Alcohol Training 2.0
National Restaurant Association Member
American College of Forensic Examiners International Member

## **NOTABLE OPINION**

At ROI, we feel it is imperative that we maintain the absolute highest level of credibility, reliability, and integrity as it pertains to the restaurant, bar, and hospitality industry related matters. We believe that the best way to accomplish this is to be in the trenches of restaurants, bars, and foodservice establishments on a consistent and ongoing basis and by putting forth the necessary time and effort to talk with and listen to owners, operators, mangers, employees, customers, executives, vendors, educators, and media members. It is this real life, hands-on experience that allows us to provide opinions that are based on what is reasonable and customary across the industry, so that others can rely on our opinions and understand our basis for them. The opinions provided by Howard Cannon of ROI, Inc. are based on what is reasonable and customary across the restaurant, bar, and hospitality industry using what are considered to be restaurant, bar, and hospitality industry standard policies, procedures, and practices. All opinions provided are completely unbiased as Howard Cannon and ROI, Inc. has no vested interest in the outcome pertaining to the matter.