UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Todd KREISLER,

            Plaintiff,

            v.

Kais ABID,
*d/b/a PAPA JOHN'S;*
KAM FOUR INC,
*A New York Corporation d/b/a/ Papa John's,*
PARKER EAST 24TH APARTMENTS LLC,
*A New York Limited Liability Company;*
PARKER COMMERCIAL 24TH ASSOCIATES*,*
*A New York Limited Partnership,*
305 EAST 24TH OWNERS CORP.,
*A New York Corporation*
            Defendants.

12 civ. 4052 (PAE)

RULE 12(B) MOTION

TO:    Adam Shore, Esq.

          Gary Ehrlich, Esq.

          John Egan, Esq.

Via ECF filing

        Defendants Kais Abid & Kam Four Inc. (hereinafter, "the PJ Defendants"), by their attorney Barry Frank Esq., submit this affirmation in support of their motion for dismissal, or in the alternative, for partial Summary Judgment.

## **<u>EXISTING COURT ORDER, CURRENTLY STAYED, MAY BE DISPOSITIVE OF THIS CASE</u>**

## **<u>UNDER THE *LUJAN* STANDARD</u>**

1. Previously, this Court issued an Order directing the installation of a portable ramp (Dkt 34).

2. That was at the specific request of the Plaintiff, who assured this Court that said ramp would not affect the interest of the ultimate owner (Dkt 40 at pages 8-9).

3. Subsequently, this Court stayed that portion of its Order directing the installation of a portable ramp (Dkt 60).

4. Should this Court lift the stay, this case would be moot since there would no longer be any case or controversy; the Plaintiff having obtained court orders granting him all the relief he sought.

5. By definition, if the Plaintiff obtained a favorable decision granting him every bit of relief sought back in December, there is no redressable injury under the *Lujan* standard, *Lujan v Defenders of Wildlife*, 504 U.S. 555 (1992).

6. It may be that an Order of a court is not complied with, but the appropriate remedy in such a case is to bring a motion to hold in contempt, not to continue with the case-in-chief.

7. For the reasons discussed earlier (Dkt 54-2 at ¶¶50 thru 106 and 150 thru 154), your Affirmant respectfully submits that the Order should be permanently vacated. However, we bring this matter up at the outset since it is a threshold issue.

8. We also respectfully note that the Order (Dkt. 34) granting Todd Kreisler judgment and requiring the defaulting defendant to remedy violations of the ADA is improper to the

extent that Kreisler lacks Article III standing to enforce any provisions of the ADA except those which violations (if any) which have caused individually particularized harm to Kreisler. (see also discussion infra at ¶21).

## "PARASITIC" MOTIVES ARE INSUFFICIENT TO MEET THE *O'SHEA* REQUIREMENTS FOR INJUNCTIVE RELIEF

9. The next threshold issue is whether the Plaintiff has standing.

10. In referring to attorney Adam Shore's conduct as "indicative of a parasite disguised as a social engineer," (*Costello v. Flatman* LLC, [E.D.N.Y] 1:11-cv-00287-SJ, Document 41 filed 3/28/13), Judge Johnson explained that one reason for his finding was that when the Court visited eight of the premises previously sued by Mr. Shore, the Court discovered that no remedial action had been taken, Id. at 17-18

11. Although the Plaintiff in the instant case is different, the attorney and the tactics here are the same.

12. As this Court is aware, we addressed this very issue previously (Dkt. 54-2 at ¶¶ 88-95)

13. Past exposure is insufficient to satisfy requirements for injunctive relief—a plaintiff must demonstrate a "real or immediate threat of repeated injury," *O'Shea v. Littleton*, 414 U.S. 488, 495-6 (1974); there must be a showing of "continuing, present adverse effects," *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983).

14. The *O'Shea* requirement " is based on the obvious proposition that a prospective remedy will provide no relief for an injury that is, and likely will remain, entirely in the past," *American Postal Workers Union v. Frank,* 968 F.2d 1373, 1376 (1st Cir. 1992)

15. As discussed infra at ¶¶ 31 thru 42, the Plaintiff does not make a showing of continuing adverse effects.

16. This is reinforced by the fact that the instant Plaintiff (Todd Kreisler) is a serial litigant who admitted that he has not returned to over two-thirds of the establishments which he has previously sued, Brief & Special Appendix for Appellants at 15/46, *Kreisler v. Second Ave. Diner Corp*. (2d Cir. 2012) (No. 12-4093).

17. Under New York law, it is well-settled that "establishment of a plaintiff's good faith in instituting an action…may properly be explored as bearing on his right to recovery," *Knapp Engraving Co. v. Keystone Photo Engraving Corp*., 1 A.D.2d 170, 172 (1 Dept. 1956)

18. Therefore, the question of whether Todd Kreisler has a genuine intention of returning to the Papa John's location is one which should be determined <u>prior</u> to deciding an ADA (or related state-law) case on the merits, *Harty v. Simon Property Group LP*, 428 Fed. Appx.69, 72 (2d Cir. 2011); a mere intent to return "some day" is insufficient, *Steger v. Franco*, 228 F.3d 889, 893 (8th Cir. 2000), citing *Lujan*, 504 U.S. 555, 564 (1992).

19. Such examination of Mr. Kreisler's intent is a credibility determination for this Court, and the Court may properly consider his litigation history, *Harris v. Stonecrest Care Auto Center*, 472 F.Supp.2d 1208, 1216-17 (S.D. Cal. 2007).

20. As to the injunctive relief sought (Dkt. 64 at ¶26): we respectfully note that a litigant may allege violations of law, but if the litigant does not have standing, the case must be dismissed.

21. As such, the demand that there be a finding of statutory violation and an Order to comply "to the full extent" for all individuals covered under ADA Title III is improper to the extent that the statute covers many instances in which Todd Kreisler (plaintiff in this case) lacks standing, *Parr v. L&L Drive-Inn Restaurant* 96 F.Supp.2d 1065, 1082 (D. Hawaii 2000) citing *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 100 (1979).

22. To the extent that any of the specific claims have been mooted by subsequent events and/or the Plaintiff lacks standing, any request for declaratory relief (Dkt. 64 ¶26(A)) would only serve as an advisory opinion, and the Court lacks jurisdiction to hear such a claim, *Baltimore Neighborhoods Inc. v. LOB Inc*, 92 F.Supp.2d 456, 462 (D. Md. 2000).

## WHERE THE MOTIVATION FOR LITIGATION IS PECUNIARY ENRICHMENT OF THE ATTORNEY, THE COURT MAY PROPERLY GRANT DISMISSAL

23. The matter of "drive-by" litigation has become a significant concern in ADA litigation nationwide; as one court noted, attorney fees "have become more important and more desirable than 'accessibility for the disabled'", *Brother v. Tiger Partner LLC*, 331 F.Supp.2d 1368, 1375 (M.D. Fla. 2004), citing *Rodriguez v. Investco LLC*, 305 F.Supp.2d 1278, 1285 (M.D. Fla 2004) [discussing vexatious ADA litigants and their attorneys].

24. Judge Johnson's discussion of attorney Shore's conduct and litigation history and the "modus operandi" of ADA litigations echoes that of another federal judge discussing the pattern of utilizing the judicial system to extort monies under the guise of "settlement":

> The overwhelming majority settle… [The plaintiff's] m.o. is clear: sue, settle, and move on to the next suit." *Molski v. Mandarin Touch Restaurant*, 347 F.Supp.2d 860, 866 (C.D. Calif. 2004)

25. The *Molski* court said that the serial litigations were "part of a scheme of systematic extortion, designed to harass and intimidate owners into agreeing to cash settlements," Id. at 864.

26. Attorney Shore discusses settlement in his Opposition to Vacate (Dkt. 90 at page 9/10).

27. Mr. Shore states that he requested the parties mediate through JAMS Resolution Experts. (Id.) *N.B.:* In actuality, in an email on March 19, Mr. Shore specifically requested Simeon Baum of Resolve Mediation Services, not JAMS.

28. Mr Shore then goes on in his Opposition to Vacate by discussing that:

> Gary Ehrlich's client has insurance coverage. Barry Frank, Esq.'s clients have insurance… (Id.).

29. The Opposition to Vacate then states:

> Counsel for the defendants should be well aware that the cost of resolving this case through a neutral mediator would be far less expensive for their client's [sic] than proceeding to trial.
>
> The defendants should also be more consciousness [sic] of the Court's interest in resolving cases prior to trial based on judicial economy. (Id.)

30. While counsel's communications skills may be in doubt, the motivation for litigation is clear.

## FOUR OF THE FIVE ALLEGED VIOLATIONS NO LONGER EXIST; THAT PORTION OF THE CASE IS MOOT

31. There is no justiciable controversy where the matter has been mooted by subsequent developments, *Flast v. Cohen*, 392 U.S. 83, 95 (1968).

32. Plaintiff's Second Amended Complaint states 5 specific violations (Dkt. 64 at ¶14):

    i. Failure to provide an accessible entrance due to two steps and the failure to install a ramp with appropriate slope, or otherwise provide an accessible and properly designated entrance.

    ii. Failure to provide signage addressing people with disabilities telling them that accessible services are provided.

    iii. Failure to provide adequate directional and accurate informational signage.

    iv. Failure to provide any accessible seating within the restaurant due to fixed seating within the restaurant at inaccessible heights.sa

    v. Failure to provide an accessible counter, at an accessible height, where patrons dine in the subject facility.

33. The PJ Defendants deny that there has ever been a violation of the ADA.

34. However, assuming *arguendo* that the seating was previously an issue, it is not an issue at the present time, as the Plaintiff's report by Michael Tobias admits (Dkt 98-2 at FN 2).

35. Therefore, items" iv" and "v" are moot, since interim events have eradicated those alleged violations, *DeFunis v. Odegaard*, 416 U.S. 312, 314 (1974).

36. Parenthetically, we note that contrary to the assertion in "iv" that there was fixed seating, there <u>never</u> was fixed seating within the premises.

37. To the extent that the assertion in "v" is referring to a dining counter, that point is now moot.

38. To the extent that the assertion in "v" is referring to the assertion in the report of Michael Tobias regarding the "transaction counter": The Tobias report (Dkt. 98-2 at page 2 ¶ 2) cites to 28 C.F.R. 36 § 7.2(1).

39. However, reliance on § 7.2(1) in the restaurant context was considered and rejected in *Shalto v. Bay of Bengal Kabob Corp.*, 2013 WL 867429 at * 6 (E.D.N.Y. 2013).

40. There is signage on-site, rendering items "ii" and "iii" moot, assuming *arguendo* that there was ever non-compliance.

41. Parenthetically, we note that the alleged signage requirement is not based on any specific provision of the ADA or the Accessibility Guidelines ("ADAAAG"). The ADAAG signage standards in § 4.30 do not provide specifications relating to signage for portable ramps or specific requirements for assistance in entering existing non-ADA accessible facilities.

42. This leaves the entry way (item "i), which is discussed below in the sections relating to "readily achievable" barrier removal and "alternative methods" of service.

## PLAINTIFF'S ATTORNEY FEE-SHIFTING APPLICATION IS PROPERLY DENIED UNDER *BUCKHANNON*

43. In order to be granted attorney fees under the fee-shifting provisions of the ADA, it is not sufficient that a party has been a catalyst, *Buckhannon Board & Care Home Inc v. West Virginia Dept. of Health & Human Resources*, 532 U.S. 598 (2001).

44. In 2007, Congress has responded to *Buckhannon* by passing the Openness Promotes Effectiveness in our National ("OPEN") Government Act, 5 U.S.C. § 552(a)(4)(E) which overturns *Buckhannon* with regard to the FOIA.

45. But with regard to the ADA, Congress left undisturbed the ruling of the *Buckhannon* Court, *American Ass'n of People With Disabilities v. Harris*, 647 F.3d 1093 at FN 33 (11 Cir. 2011).

46. So not only is there a ruling of the US Supreme Court which is directly on point, the Congress of the United States has seen fit to take no action to alter the Supreme Court decision.

47. In the instant case, *Buckhannon* applies, and:

> A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change, *Buckhannon* at 605.

48. ***N.B.:*** The matter of Mr. Shore's candor with regard to attorney fees which we raised (Dkt. 54-2 at ¶¶115-119) was also addressed by Judge Johnson in footnote 10 of his decision last month.

49. Assuming *arguendo* that this Court entertains a fee application, we respectfully draw the Court's attention to the fact that (as Judge Johnson observed) the pleadings submitted by Plaintiff's counsel (and the legal "research" allegedly performed) is duplicative of prior pleadings.

50. Such work is therefore not compensable, *Luessenhop v. Clinton County NY*, 324 Fed.Appx. 125, 127 (2d Cir. 2009).

51. Moreover, the actions of attorney Shore in requesting redundant or otherwise unnecessary hours raise ethical questions, *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (pre-ADA case involving Civil Rights Attorney's Fees Award Act).

## PLAINTIFF FAILS TO MEET *TWOMBLY* STANDARDS

52. The Second Amended Complaint contains mostly boilerplate assertions. What it does <u>not</u> contain is any information which would enable the defendants to determine when the plaintiff allegedly visited the location and what reasonable accommodations were requested/offered/refused.

53. Failure to meet the pleading requirements of FRCP 8 and *Twombly* renders the Second Amended Complaint fatally deficient, *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007).

54. Plaintiff fails to provide a date of the alleged visit, nor is there any specification as to what good or service was sought, nor is there any allegation that there was no statutorily-

compliant accommodation offered. The lack of specificity in the Second Amended Complaint makes it impossible for the PJ Defendants to adequately prepare their defense.

55. As Justice Holmes might say, three inchoate iterations are enough. Given that Plaintiff continues to submit boilerplate generalized allegations, the Complaint is properly dismissed.

## PLAINTIFF FAILS TO MEET ITS *PASCUITI* BURDEN AS TO BARRIER REMOVAL BEING "READILY ACHIEVABLE"

56. "Plaintiffs have the initial burden of suggesting a method of barrier removal and proffering evidence that their suggested method meets the statutory definition of 'readily achievable'," *Pascuiti v. New York Yankees*, 1999 WL 1102748 at *1 (S.D.N.Y. 1999).

57. Despite extensive filings and 3 iterations of a Complaint, the Plaintiff simply ignores *Pascuiti*, and we respectfully submit that dismissal is warranted of those portions of the Complaint which involve barrier removal;

58. Assuming arguendo that the Court does not dismiss those causes of action relating to barrier removal on *Pascuiti* grounds, the Court should still dismiss on the grounds that:

    a. The removal of existing barriers is not "readily achievable" as that term is used in the statute, and

    b. The goods and services are being provided through "alternative methods" of delivery which are compliant with applicable provisions of the C.F.R.

59. The term "readily achievable" is not a model of clarity, and it is helpful to look to what was meant by those who drafted and passed the ADA.

60. The key persons involved in the formulation of the ADA were Justin Dart and Robert Burgdorf, according to the original sponsor of the ADA, Senator Lowell P. Weicker, Jr, *Historical Background of the Americans With Disabilities Act*, 64 TEMP. L.R. 387, 390 (1991).

61. According to Professor. Burgdorf, the disability rights advocates said that there should be a requirement that "**easy**" barrier removal would be required, Robert L. Burgdorf Jr, *Equal Members of the Community: The Public Accommodations of the Americans With Disabilities Act*, 64 TEMP. L.R. 551, 562 (1991).

62. The General Counsel of the Senate Subcommittee on Disability offered to "buy dinner for anybody who came up with an appropriate way of wording such a requirement," Id. at 563

63. Prof. Burgdorf won the dinner, and "readily achievable" was used as the "appropriate wording" for "**easy**."

64. According to the official Council report, "concerns for cost shaped the new approach to barrier removal," NATIONAL COUNCIL ON DISABILITY, EQUALITY OF OPPORTUNITY: THE MAKING OF THE AMERICANS WITH DISABILITIES ACT 25 (1997).

65. As examples of "readily achievable,", the Council report gives: "installing grab bars, ramping a few steps, lowering telephones, adding raised letter and braille markings on elevator controls, and adding flashing alarm lights," Id.

66. "Readily achievable" is very different from the "readily accessible" standard; the primary difference being that the latter standard requires accommodation regardless of cost,

*Colorado Cross-Disability Coalition v. Too (Delaware) Inc,* 344 F.Supp.2d 707, 709 (D. Colo. 2004).

67. Congress deliberately set the "far lower standard":

> Because retrofitting existing structures to make them fully accessible is costly, a far lower standard of accessibility has been adopted for existing structures, H.R. REP. NO. 101-485 (III), 2d Sess. p.60 (1990)

68. In fact, the "readily achievable" standard in the 1990 legislation explicitly replaced a requirement in the legislation proposed in 1988, which would have required removal; Professor Burgdorf says that the sponsors considered the 1990 language "more practically and politically realistic," Burgdorf, *supra* ¶ 61, at 569

69. In the House, Steny Hoyer (D-Md.) was the lead sponsor of the ADA.

70. In discussing the meaning of "readily achievable" Rep. Hoyer said:

> In one case, we had to develop a new definition. This was done to ensure that business has leeway that is reasonable.
>
> Let me quote from this bill's definition of 'readily achievable': 'easily accomplishable without much difficulty or expense.'.
>
> This language is clearly intended to ensure that what is expected of business is reasonable and proper, and that businesses are not threatened by this legislation. 136 CONG. REC. 10856 (1990)

71. Later in the floor debate, Rep. Hoyer assured Rep. Upton (R-Mich.):

> We believe, of course, as we have said throughout the course of this debate, and will do so in the future, that this bill requires minimal costs, readily achievable costs, a cost that does not create

>   either an undue burden or an undue hardship on the private sector,
>   <u>Id</u>. at 10869

72. Rep Hoyer reinforced the point:

    > If the changes are not readily achievable, then the business can provide its services through an alternative method, if that is not burdensome or disruptive to the business, <u>Id</u>. at 10897

73. "Readily achievable" is now codified at 42 U.S.C. § 12181(9).

74. While your Movant respectfully seeks dismissal pursuant to *Pascuiti*, in the alternative the burden is on the Plaintiff to propose a plan which is "readily achievable."

## <u>DEFENDANTS' PROVISION OF SERVICES BY "ALTERNATIVE METHODS" COMPORTS WITH THE ADA</u>

75. Professor Burgdorf noted the presence in the legislative history of the provision of goods by "alternative methods" where barrier removability is not "readily achievable" and he cites the example of "coming to the door to receive or return drycleaning," Burgdorf, *supra* at ¶61, at 564, <u>citing</u> S.REP. NO. 116 (1989) and H.R. REP. NO. 485 (1989)

76. As we have noted previously (Dkt. 54-2 at ¶ 104), the implementing regulations ultimately specified that alternative methods are permissible, and one (non-exclusive) example is "curb service or home delivery," 28 C.F.R. 36.305(b)(1).

77. "Alternative methods" is now codified at 42 U.S.C. § 12182(b)(2)(A)(v).

78. This case involves a pizzeria.

79. Virtually all of the business was take-out or delivery; there were only 3 bar stools (which are now removed).

80. To the extent that any patron seeks delivery, that patron is accommodated with delivery within the delivery area of the pizzeria.

81. To the extent that any patron seeks to pick up their pizza in person, the patron is accommodated with curbside delivery.

82. The pizzeria is compliant with both the letter of the C.F.R. and the legislative intent of the A.D.A.

83. As such, those portions of the Complaint dealing with barrier removal should be dismissed to the extent that alternative methods of delivery are provided.

## DISMISSAL OF STATE LAW CLAIMS IS WARRANTED

84. Supplemental jurisdiction is governed by 28 U.S.C. §1367.

85. Pursuant to 1367(c)(3), if this Motion is granted with respect to the federal claims, we respectfully submit that dismissal of the supplemental claims is proper.

**WHEREFORE**, Movant seeks that this Court dismiss the Complaint with prejudice, or in the alternative, to grant partial Summary Judgment as to the claim pertaining to barrier removal, and dismissing the other claims as moot, and for such other and further relief as this Court deems just and proper.

Dated: Fort Lee, New Jersey
April 3, 2013

**Law Firm of Barry N. Frank & Associates PC**
*Attorneys for the Defendant, Kais Abid*

BY:_____/s/  Barry N. Frank, Esq.
 440 West Street, 3rd Floor
 Fort Lee, New Jersey   07024-5028
(201) 461-2500